UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHEMTECH ROYALTY ASSOCIATES, L.P., by DOW EUROPE, S.A. as Tax Matters Partner** | **CIVIL ACTION** |
| | **NUMBER 05-944-RET-DLD** |
| **VERSUS** | **Consolidated with:** |
| **UNITED STATES OF AMERICA** | Number 06-258-RET-DLD and Number 07-405-RET-DLD |

### ORDER

This matter is before the court on a referral from the district court on the United States' motion to compel (rec. doc. 46). The motion is opposed.

### Background

Chemtech Royalty Associates, LP ("Chemtech") by its sole general partner, Dow Europe SA ("DESA"), as Tax Matters Partner ("TMP") filed suit against the United States, challenging the Internal Revenue Services' proposed adjustments to partnership items of Chemtech for federal tax returns from 1993-1997. According to the government, Chemtech is an abusive tax shelter for Dow, designed for the avoidance of income taxes. The government also construes certain Chemtech partnership transactions as "lending transactions" for Dow rather than transactions with real, non-tax economic benefits.[1] Chemtech asserts that its partnership met the "economic substance" test, including joint

---

[1] DESA is a wholly owned, controlled foreign corporation of Dow. DESA had an approximate 1.05% ownership in Chemtech's capital assets. The other partners of Chemtech included five (5) foreign banks with a 19% interest in Chemtech's capital assets (the "Class A" partners), and DTPC ("Class B" partner) with an 80% interest in Chemtech's capital assets. The Class A partners contributed $200 million. Chemtech and Dow entered into a non-exclusive license agreement wherein Dow paid arms-length royalties to Chemtech each year for use of the patent assets, and these royalties consisted of both fixed royalties and variable royalties.

investment in the material capital contributions of all partners and sharing of the pretax results, and that the partnership items met all IRS requirements; therefore, there should be no adjustment to its partnership items as the partnership was created for legitimate business purposes.[2]  The issue in this lawsuit is whether the IRS correctly adjusted certain partnership items of Chemtech.

The Motion to Compel

At issue in the present motion to compel is Chemtech's response to interrogatory number 16 and its non-production of numerous documents contained on Chemtech's original and amended privilege logs.  The parties have come to an agreement on many of the documents, but the government contends that the privilege log is not detailed enough for it to determine whether or not Chemtech's remaining documents are truly privileged.  Chemtech maintains that its privilege log meets or exceeds the standards set forth in the federal rules and in this district.  Chemtech further asserts that it reviewed its privilege logs on several occasions, produced many documents originally contained on those logs, and that all remaining documents are privileged.  Chemtech has withheld documents under the attorney-client privilege, the tax practitioner's privilege, and the work-product doctrine.

## **The Law**

The objections

With respect to tax advice, and with some exceptions, the attorney-client privilege applies to communications between taxpayers and federally authorized practitioners. I.R.C.

---

[2]The "economic substance" doctrine is a judicially developed doctrine that permits transactions lacking in economic substance to be disregarded for tax purposes, and is one tool used by the IRS when dealing with tax shelter issues.

2

Sec. 8525(a)(1). Tax advice is advice given with respect to a matter within the federally authorized practitioner's scope of his authority to practice before the IRS. I.R.C. Sec. 8525 (a)(3)(B). Communications between a taxpayer-client and an attorney-accountant, however, are subject to the rules governing attorney-client privilege, not the tax practitioner's privilege. *U.S. v. Frederick, Richard A., et al.*, 83 AFTR 2d 99-1870, 99-1 USTC ¶50465. Therefore, information disclosed to a CPA, enrolled agent, or enrolled actuary is not privileged under the IRS rules because such information is not privileged when disclosed to an attorney. *Joint Comm Staff, Gen Expln of '98 Tax Legis* (JCS-6-08), 11/24/98, p. 87.

It is well established that documents prepared in anticipation of litigation are protected by the work product doctrine. F.R.C.P. Rule 26(b)(3), *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L.Ed. 451 (1947). This doctrine is broader and distinct from the attorney-client privilege. *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (*citing Hickman*, 329 U.S. at 508, 67 S.Ct. 385). The party asserting protection under the work product doctrine has the burden of proving that the documents were prepared in anticipation of litigation. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir.2000) Also, the anticipated litigation must be identified and it must be proven that the communication in question was in preparation of that litigation. *In Re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789 (E.D. La 2007). In the Fifth Circuit, while litigation need not necessarily be imminent, the primary motivating purpose behind the creation of the document must be to aid in possible future litigation. *United States v. Davis*, 636 F. 2d 1028, 1040 (5th Cir. 1981). For example, work papers generated by an attorney who prepares a tax return are not protected by the work product

3

doctrine "simply because there is always a possibility that the IRS might challenge a given return." *Davis*, citing to *Colton v. United States*, 2 Cir. 1962, 306 F.2d 633, 639-40, *cert. denied*, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499. There must be evidence to expect "future trouble with the IRS," or the documents will be outside the scope of the work product doctrine. *Id.*

"Generally, a reasonable anticipation of litigation requires existence of an identifiable specific claim or impending litigation at the time the materials were prepared." *Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.*, Civ. A. No. 00-CV-3683, 2001 WL 605199, at *4, 2001 U.S. Dist. LEXIS 7145, at *13 (E.D.Pa. May 31, 2001). When determining the applicability of the work product doctrine, the court must consider the nature of the document, and the facts surrounding its creation and distribution. *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir.1993). Based upon these factors, the court then determines whether "the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 803 (3d Cir.1979).

### The Privilege Log

Fed.R.Civ.P. 26(b)(5) governs the production of privilege logs where discoverable information is withheld by a party on grounds of privilege and provides the following:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that without revealing information itself privileged or

protected, will enable other parties to assess the applicability of the privilege or protection.[3]

In order to claim the protection of either attorney-client privilege or the work product doctrine, a privilege log must contain sufficient information that would allow a court or party to assess the applicability of the privilege or protection. Fed.R.Civ.P. 26(b)(5); *Coes v. World Wide Revival, Inc.*, Not Reported in F.Supp.2d, 2007 WL 2774205 (M.D.Fla. 2007) The standard for testing the adequacy of the privilege log is whether, as to each document, the entry sets forth facts that " would suffice to establish each element of the privilege or immunity that is claimed. " The focus is on the specific descriptive portion of the log, and "not on conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be discharged by mere conclusory" assertions. *Golden Trade S.r.L. v. Lee Apparel Co.*, 1992 WL 367070 at *5, 1992 Dist. LEXIS 17739 at **12-13 (S.D.N.Y.1992) (*quoting von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), cert. denied, 481 U.S. 1015 (1987)). Other courts have similarly held that a privilege log should provide "a specific explanation of why the document is privileged." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D.Ill.1992).

Moreover, Rule 26 "does not attempt to define for each case what information must be provided .... [d]etails concerning time, persons, general subject matter, etc. may be appropriate." Id., advisory committee notes.  Additional detail in the privilege log or supporting affidavits for the allegedly privileged documents may be necessary to provide facts relating to the individuals listed on the privilege log, including their job titles. *Muro v.*

---

[3]The definition for attorney-client privilege my be found in "*In Re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975)

5

*Target Corp.*, 243 F.R.D. 301, 308 (N.D. Ill 2007)  A proper assertion that documents are attorney-client privileged or protected by the work product doctrine means that a party must describe those documents it contends are privileged to the best of its ability without revealing the privileged information, even if doing so is difficult to do without revealing the confidential nature of the documents.  *Estate of Manship v. U.S.,* 232 F.R.D. 552, 561 (M.D. La. 2005) Where descriptions in the privilege log fail to meet this standard, "then disclosure is an appropriate sanction." *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534 (N.D.Ill., 2000)

For example, privilege log entries that state the documents concerned "legal advice" lack sufficient information for the court or other parties to determine the applicability of the privilege. *United Investors Life Insurance Company v. Nationwide Life Insurance Company*, 23 F.R.D. 483 (N.D. MS 2006) .  Further, "the mere assertion of a lawyer that responsive materials or information are attorney-client privileged or protected by the work product doctrine is not evidence establishing that the information is privileged." *Estate of Manship at* 561. Blanket assertions are unacceptable.  *United States v. Hodgson*, 10 Cir. 1974, 492 F.2d 1175, 1177; *United States v. Roundtree*, 5 Cir. 1969, 420 F.2d 845, 852.  Asserting privilege for an entire e-mail thread in the privilege log, but only describing the last message in the thread is deficient.  *In Re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789 (E.D. La 2007) Moreover, business advice which is unrelated to legal advice is not protected by the attorney-client privilege even when it is between an attorney and a client. *Id.*  Also, documents relating to the preparation of a tax return are not privileged.  *United States v. Davis*, 636 F. 2d 1028, 1043 (5th Cir. 1981)

## DISCUSSION

The first issue raised in the motion to compel are 379 documents which the plaintiff has withheld based on claims of attorney-client privilege, the work product doctrine, and the tax-practitioner's privilege. Defendant asserts that the plaintiff failed to meet its burden of proof regarding the privileged or protected nature of the withheld documents, and asks this court to compel the production of same. Alternatively, the defendant requests this court for an *in camera* review of those documents.

Plaintiff asserts that it has met its burden of proof under the federal rules and the rules of this district. For those documents it claims are protected under the work product doctrine, plaintiff contends that litigation "need not be imminent, or even certain to occur, for work product to apply," (rec. doc. 52), and cites to *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) for this proposition. The doctrine is not so amorphous. *Davis* goes on to say that there must still be evidence *to expect* there may be litigation in order for the documents to enjoy the protection of the work product doctrine. As plaintiff points out, there has been widespread adoption for the standard in *United States v. Adlman*, 134 F.3d 1194 (2nd Cir. 1998), which "asks instead whether a document was prepared 'because of' the prospect of litigation." (rec.doc. 52) Plaintiff also states that the Fifth Circuit has not "revisited its applicable test for work product, but *Vioxx*, a recent Fifth Circuit case, found that the anticipated litigation must be identified and it must be proven that the communication in question was in preparation of that litigation, all in keeping with the standard set forth in *Hickman*. The key is identifying the anticipated litigation first, then explaining the facts regarding the document's creation as it relates to the identified litigation.

In reviewing the privilege logs, the court is at a loss as to how one could determine the application of the privilege from viewing the log alone. The subject matter is vague and repetitious, and lacks enough detail. For example, there are sixteen general subject matter descriptions, and some examples are "tax advice relating to Chemtech partnership. "the basis, depreciation, fair market value and/or royalty rates of the Chemtech patent portfolios," "government filing requirements of the Chemtech partnership," "the formation of the Chemtech partnership," and "the structure and/or operation of Chemtech." Plaintiff claims for several pages that its descriptions are sufficient, but has cited to no cases wherein government filing requirements, partnership formation data, or the structure of a partnership has constituted information inherently protected by the attorney-client privilege or the work product doctrine, or identified the litigation which generated the need for the protection of the work product doctrine. Plaintiff has acknowledged that the sixteen subject matter descriptions "set forth the topic of communication at a general level." (rec. doc. 52) This "general level" description is not in keeping with the intent of Rule 26, or the cases cited herein, and this is where plaintiff's protests fall short. Based on the log alone, the court could override most, if not all, of the objections.

Also, there are email strings without explanation as to each part of the email, documents without recipients, documents sent to several individuals without identifying titles, and documents claiming both attorney-client privilege and work product doctrine. It is not possible to tell from the entries whether these entries truly enjoy both the privilege and the protection of the work product doctrine without useless speculation. Moreover, the author of some of these documents is "Dow Chemical Company," which is an entity and not an individual, and "Dow Chemical Company" prepared memoranda to the file.

The plaintiff also attempts to convince this court that an order by the undersigned in another case which required a privilege log to contain the date, author, recipient(s), general statement regarding the document, and the specific basis for the privilege claim, is all that is required of plaintiff. On the contrary, the sufficiency of privilege log descriptions are decided on a case-by-case basis, and it is well within the discretion of this court to determine what constitutes enough information in a privilege log. The case cited by plaintiff was a simple matter, very much unlike this one. In this case, due to the complicated and intricate financial and business transactions involved, the entries need far more detail, such as the title of the memorandum or legal opinion, the kind of tax advice issue involved, etc. This does not mean that the description has to repeat the entirety of the document's contents, but it does need a more accurate and specific description of its contents. In this matter, neither the court nor any other party can determine the merits of the documents by reviewing the log entries themselves, as is required under the "four corners" test, because plaintiff only provided "general level" subject matter descriptions.

Thus, the court will order the plaintiff to revise its privilege log entries for the outstanding 379 documents to include each element of a claimed privilege or protection, and in a manner sufficient for the defendant and this court to "test the merits." At this juncture, the court will not order that any of the 379 documents be produced, and will not conduct an *in camera* review of the documents. Obviously, such a log will require some work, but an *in camera* inspection of 379 documents is no substitute for an informative log. There is not enough information at this point for the parties to present any merits-based argument for the individual documents or to challenge anything other than the log is insufficient.

Since the parties obviously are very familiar with the litigation and its complexities, it would be beneficial if they discussed the necessary information to be included in a privilege log that would enable the defendant and the court to reasonably assess the claimed privilege. A deficient log entry will be grounds for waiver in the future. At a minimum, the identity and title (including, for example, in-house or outside attorney) of all authors and recipients, the date of the document, the beginning and ending Bates numbers, a title and specific description and subject matter of the document, the purpose for which it was created, and the reason the document was withheld should be included. In the case of work product, the date the document was created and the identity of the specific litigation anticipated should be provided along with the other required information.

The court now addresses the second issue in the motion to compel, which is that the defendant finds plaintiff's answer to interrogatory no. 16, to be inadequate. The question read as follows:

> Describe the method in which the NPV and Risk Adjusted NPV of the Chemtech and Chemtech II projects were calculated (as referenced at CT 00073365), including in your answer a description of all risk factors that were taken into account in making those computations and a description of the weight accorded to each of those risk factors.

Plaintiff's response was as follows:

> See General Objections. Without waiving the foregoing objections, the apparent author of the referenced document, Paul Janicki, is no longer employed at Dow. The government has deposed two of the recipients of the document (Geoffrey Merszei and Charles Hahn, both of whom were examined specifically and extensively on its contents (see Merszei Tr. 102:8-118:3; Hahn Tr. 145; 6-148:19)) and is scheduled to depose the third recipient of the document (Pedro Reinhard, identified by Mr. Merszei as the individual who would have made the ultimate decision, as CFO, what "risk factor" to use with respect to Chemtech II). Plaintiff currently does not have any basis for further elaborating on the "risk factors" taken into account in making the computations set forth in the referenced document.

Defendant argues that answering an interrogatory by referring to deposition testimony is improper, and cites to two cases in support of this proposition. In response, plaintiff cites to a case in this district which found that referring to deposition testimony is acceptable, so long as there is a page/line reference. Defendant also contends that the three recipients who have been deposed were not involved in the calculation of the NVP and Risk Adjusted NPV. In its opposition, plaintiff asserts that, while these individuals were not involved in this particular calculation, they have some knowledge of other calculations which were similar in nature. Defendant further contends that the plaintiff did not undertake a reasonable inquiry before responding. In its opposition, the plaintiff explains the inquiry it undertook to respond to this interrogatory.

In reviewing the plaintiff's explanations contained within the opposition, the court finds that the response to the interrogatory should be supplemented to include this additional information.

Accordingly,

**IT IS ORDERED** that defendant's motion to compel is **GRANTED in part** and **DENIED in part** as follows:

1. All claims for protection on the basis of attorney-client privilege, tax practitioner's privilege, or under the work product doctrine, shall be accompanied by a revised privilege log.

2. Plaintiff shall provide a revised privilege log to defendant within thirty (30) days of this Order.

3. Defendant shall have fifteen (15) days from receipt of the revised privilege log to challenge any remaining entries on that log.

4. Plaintiff shall have five (5) days from receipt of the challenge to respond, after which defendant has the option to file a renewed motion to compel, if necessary.

4. Plaintiff shall supplement interrogatory no. 16 within fifteen (15) days.

5. In all other respects, the motion is denied.

Signed in Baton Rouge, Louisiana, on March 30, 2009.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**