UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHEMTECH ROYALTY ASSOCIATES, L.P., by DOW EUROPE, S.A., as Tax Matters Partner )<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No.: 05-944-BAJ-DLD<br><br>Case No.: 06-258-BAJ-DLD<br><br>Case No.: 07-405-BAJ-DLD |

**FINAL PRETRIAL ORDER**

The Court having convened a status conference December 8, 2010, and pursuant to the revised scheduling Order dated December 12, 2010, the following actions are taken:

**(1)** This action is a federal income tax case governed by the comprehensive rules for the audit and litigation of partnership tax issues that were enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") and are codified at 26 U.S.C. §§ 6221 et seq. Jurisdiction over the tax years 1993 to 2003 is proper in this consolidated proceeding pursuant to 26 U.S.C. § 6226(a) and 28 U.S.C. § 1346(e).

**(2)** The following stipulations and statements are submitted and are attached to and made a part of this Order:

    (a)    Fact Stipulations.

        (1)    Attached as Exhibit A is the parties' Joint Stipulations of Fact: 1993-2003, which will become part of the evidentiary record in the case.

        (2)      Attached as Exhibit B is the parties' Joint Financial Stipulations: 1993-2003, which include partnership book financial results; tax financial results; GAAP financial results; and cash flow details. These financial stipulations will become part of the evidentiary record in the case.

        (3)      <u>2004-2006 Tax Years</u>. On August 25, 2010, the Internal Revenue Service mailed a Notice of Final Partnership Administrative Adjustment to Plaintiff for its 2004 through 2006 tax years. Plaintiff filed its complaint petitioning for readjustment of partnership items with this Court on November 19, 2010 (Case No. 3:10-cv-00791-BAJ-CN). Defendant answered Plaintiff's complaint on January 27, 2011. The legal and factual matters at issue in the 2004 through 2006 partnership tax years are similar to matters at issue in the 1993 through 2003 partnership tax years. Plaintiff has produced documents that it represents to be a complete production of documents related to Case No. 3:10-cv-00791-BAJ-CN. Defendant may pursue limited discovery from RBDC. RBDC already has produced documents covering time periods through April 2008 and is finalizing its production of documents that range from May 2008 through December 2008. To the extent Defendant believes additional discovery is necessary after receiving this latter production, Defendant will commence discovery once permitted under the Federal Rules of Civil Procedure, after which it is anticipated that the parties will request that the Court hold that case in abeyance pending the final determinations in this case.

    (b)    <u>Contested Issues of Law and Fact</u>.

        (1)    <u>Agreed Contested Issues of Law</u>.

            (i)    Whether for tax purposes the Chemtech I and/or Chemtech II transactions should be disregarded as "shams" lacking economic substance.

(ii) Whether for tax purposes the Chemtech Partnership[1] was a valid partnership and, if so, whether the Class A Investors[2] were partners in the partnership;

(iii) If the Chemtech Partnership was a valid partnership, whether the Class A Investor interests in the Chemtech Partnership were in substance loans (debt) rather than limited partner equity investments;

(iv) If the Class A Investors were partners, whether the allocations of partnership book and tax items to them under the Chemtech Partnership agreements complied with I.R.C.[3] § 704 and the regulations thereunder;

(v) Whether the partnership anti-abuse rule, which is limited to transactions occurring after May 12, 1994, can be applied to the Chemtech I transactions;

---

[1] Throughout this Order, "Chemtech Partnership" refers to a Delaware limited partnership formed in 1993 as Chemtech Royalty Associates, L.P., which later was renamed Chemtech II, L.P. "Chemtech I" refers to transactions entered into by the Chemtech Partnership from its formation in 1993 up to its 1998 restructuring; "Chemtech II" refers to transactions engaged in by the Chemtech Partnership in connection with its restructuring in 1998 and thereafter, through and including 2003. For purposes of this Order, terms such as "partnership" and "partners" are used for the convenience of the Court and do not indicate that Defendant respects them as such. Likewise, references to partnership allocations made by Plaintiff pursuant to the Internal Revenue Code and regulations do not mean that Defendant accepts that such allocations were properly made.

[2] Throughout this Order, "Class A Investors" refers to the third-party investors who purchased Class A Limited partnership interests in Chemtech I and Chemtech II, as appropriate.

[3] References to "I.R.C." are to the Internal Revenue Code, as in effect during the tax years at issue.

3

      (vi)    Whether, to the extent it may be applicable to the Chemtech Partnership transactions, the partnership anti-abuse rule permits the government to reallocate income among the partners of the Chemtech Partnership from 1995 through 2003 and to deny the basis adjustments resulting from the Chemtech Partnership's 1998 election under I.R.C. § 754;

      (vii)    Whether the Chemtech Partnership's distribution of the stock of Chemtech Portfolio, Inc. ("CPI") to Dow in 1998 resulted in I.R.C. § 731 gain; and

      (viii)    Whether, if the government's adjustments are sustained, accuracy-related penalties are applicable to the Chemtech Partnership's 1997 through 2003 years.

(2)    <u>Agreed Contested Factual Issues</u>.

      (i)    Whether the Chemtech Partnership transaction had a legitimate business purpose other than tax avoidance;

      (ii)    Whether the Chemtech Partnership materially affected the objective economic position of Dow;

      (iii)    Whether Dow and the Class A Investors in the Chemtech Partnership in good faith and acting with a business purpose intended to join together for the purpose of carrying on a business, financial operation, or venture;

> (iv) Whether the Class A Investor interests were capital interests in the Chemtech Partnership;
>
> (v) Whether capital was a material income-producing factor in the Chemtech Partnership;
>
> (vi) Whether at the time of its distribution from the Chemtech Partnership to Dow in 1998 the stock of CPI was a "marketable security" within the meaning of I.R.C. § 731(c);
>
> (vii) Whether the principal purpose of the Chemtech I transaction was to avoid or evade federal income tax within the meaning of I.R.C. § 6662(d)(2)(C)(iii) as in effect in 1993; and
>
> (viii) Whether a significant purpose of the Chemtech II restructuring was to avoid or evade federal income tax within the meaning of I.R.C. § 6662(d)(2)(C)(iii), as amended effective for items with respect to transactions entered into after August 1997.

(3) <u>Plaintiff's contested factual issues</u>.

> (i) Whether the rights and obligations of the Class A Investors under the partnership agreements were substantially similar to the rights and obligations of limited partners in many commonly structured limited partnerships;
>
> (ii) Whether the interests of the Class A Investors were substantially similar to preferred stock and preferred partnership interests routinely recognized as equity for tax purposes; and

    (iii) Whether the Chemtech Partnership's book and accounting statements prepared under section 704(b) reflect the economic results of the Partnership.

 (4) <u>Defendant's contested factual issues</u>.

    (i) Whether the Class A Investors had a meaningful stake in the success or failure of the Chemtech Partnership.

    (ii) Whether the Class A Investors had any meaningful right to participate in management of the Chemtech Partnership;

    (iii) Whether there was any realistic chance that the Class A Investors would receive less than the reimbursement of their initial investment plus a promised rate of return.

(c) <u>Exhibits</u>.

 (1) Attached as Exhibit C is the parties' Joint Exhibit Stipulation. Pursuant to this stipulation, the exhibits will become part of the evidentiary record in the case.

    (i) Attached as Exhibit D is Plaintiff's Unagreed Exhibit List noting the reasons why the parties have been unable to stipulate to the admissibility of the listed exhibits.

    (ii) Attached as Exhibit E is Defendant's Unagreed Exhibit List noting the reasons why the parties have been unable to stipulate to the admissibility of the listed exhibits.

        (iii)    Attached as Exhibit F is the parties' Expert Reports Stipulation. Pursuant to this stipulation, the expert reports will become part of the evidentiary record in the case.

   (2)    <u>Demonstrative Exhibits</u>. The parties' experts have incorporated or appended to their reports a number of exhibits that may be used as demonstrative exhibits during the trial. The parties disagree on the deadline for exchange of any further demonstrative exhibits. Plaintiff proposes that additional demonstrative exhibits to be used with witnesses during the trial should be exchanged on or before June 13, 2011. Defendant was prepared to exchange additional demonstrative exhibits on March 31, 2011, but given Plaintiff's objection to that date, offered to exchange additional demonstrative exhibits by April 29, 2011. Defendant proposes April 29, 2011, as the date by which additional demonstrative exhibits shall be exchanged.

(d)    <u>Potential witnesses</u>.

   (1)    Plaintiff intends to or may call the following fact witnesses at trial:

<u>Fact Witnesses (Will Call)</u>

        (i)    Enrique Falla

        (ii)    Geoffery Merszei

        (iii)    Andrew Sherman

        (iv)    Ed Valenzuela

<u>Fact Witnesses (May Call)</u>

        (i)    Phil Barnett

    (ii)  Berthold Bonanni

    (iii)  William Curry

    (iv)  Alfonso Escudero

    (v)  Stephan Klier

    (vi)  William Norris

    (vii)  Sharon Oriel

    (viii)  Pedro Reinhard

    (ix)  Sipko Schat

 (2)  Defendant may call the following fact witnesses at trial:

Fact Witnesses (May Call)

    (i)  Kristi Campbell

    (ii)  Patrick McGuire

    (iii)  Any witness listed by Plaintiff

Any objection to the calling or qualification of any witness identified on the list will be set forth by the April 22, 2011, deadline for motions in limine.

 (e)  Expert witness stipulations.  As the Court agreed during the December 8, 2010, status conference, the expert witness reports of the parties' expert witnesses listed in Exhibit F will be admitted as evidence.  The parties will limit their direct examination of expert witnesses accordingly.  At the conclusion of the trial, the parties will provide the Court with selected source documents referenced by the expert witnesses in order for the Court to review these documents if it so chooses.  These selected source documents will not be admitted as evidence in this case.

Plaintiff and Defendant intend to call the following expert witnesses at trial:

<u>Plaintiff's Expert Witness Descriptions</u>

(1) <u>Prof. Merle Erickson</u> is a professor of accounting at the Graduate School of Business at the University of Chicago. Professor Erickson submitted three (3) expert reports during discovery. He will provide testimony related to the GAAP accounting treatment of the Chemtech Partnership, the "partnership book" accounting treatment of the Chemtech Partnership, the accounting evidence supporting Dow's business purpose for raising capital through the Chemtech Partnership, the economic advantage Dow obtained by treating the capital raised in the Chemtech Partnership as minority interest financing, and the distinction between debt and equity for financial accounting purposes.

(2) <u>Dr. Andrew Carron</u> is an economist and President of NERA Economic Consulting. Dr. Carron submitted two (2) expert reports during discovery. He will provide testimony related to the distinctions between debt and equity from an economic perspective, the business benefits Dow achieved by entering into the Chemtech Partnership, and a quantitative analysis demonstrating the non-tax financial benefits of the Chemtech Partnership to Dow.

(3) <u>Prof. Daniel Kleinberger</u> is a professor of law at William Mitchell College of Law in St. Paul, Minnesota, and a recognized expert in the use of limited partnerships and other business associations. Professor Kleinberger submitted one (1) expert report during discovery. He will provide testimony that the structure and operation of the Chemtech Partnership was consistent with the norms and conventional practices observed in a wide range of limited partnership arrangements.

(4) <u>Mr. Gilbert Schwartz</u> is an attorney at Schwartz & Ballen LLP in Washington, DC, and is an expert in bank regulatory law, custom, and practice. Mr. Schwartz

submitted two (2) expert reports during discovery. He will provide testimony related to the impact of bank regulatory considerations on third-party investments in the Chemtech Partnership and the relevance of bank regulatory considerations to the treatment of those investments as equity rather than loans.

<u>Defendant's Expert Witness Descriptions</u>

(1) <u>Dr. Glenn Hubbard</u> is the Dean of the Graduate School of Business at Columbia University, where he is also Russell L. Carson Professor of Economics and Finance, and Professor of Economics in the Faculty of Arts and Sciences. He is also a visiting scholar at the American Enterprise Institute in programs on tax policy and financial markets. From 2001 through 2003, Dr. Hubbard was Chairman of the Council of Economic Advisors under President George W. Bush. Dr. Hubbard submitted two (2) expert reports and will provide testimony that—from a substantive economic and financial perspective—the investments the foreign and domestic banks made in the Chemtech Partnership transactions were, in substance, more akin to debt than equity, and that it was not reasonable for Dow to believe that it would receive a net economic advantage from the Chemtech Partnership transaction, apart from the claimed tax benefits.

(2) <u>Mr. Joel Finard</u> is an expert in capital markets and financial risk management in capital markets. He will provide testimony regarding how the banks participating in the Chemtech Partnership transaction would have viewed their participation from a risk management perspective and how transactions like the Chemtech Partnership transaction would be viewed generally within the banking industry.

(3) <u>Mr. Steven Henning</u> is an accountant and partner in Marks Paneth & Shron LLP, a public accounting and business consulting firm. He will testify regarding the

proper accounting treatment of the banks' interests in the Chemtech Partnership. Specifically, he will testify that, under United States generally accepted accounting principles ("GAAP"), the banks' funding of the Chemtech Partnership transaction should have been reported as debt on Dow's balance sheets.

(4)   Mr. Kenneth Stern is a Senior Managing Director of FTI Consulting Inc. He is an expert in matters related to the chemical industry, having acted for over 35 years as a business advisor in the chemical and petroleum industries. He will testify concerning Dow's claim to have intended to use its patent assets to generate incremental licensing revenue and will explain why there is no evidence to support Dow's claim that the Chemtech Partnership facilitated that supposed goal.

(f)   Deposition designations. The parties will exchange a list of witnesses who will testify by way of deposition no later than April 29, 2011. Along with that list, the parties will exchange designations of those portions of the deposition testimony they propose to be admitted in evidence. On or before May 16, 2011, the parties shall file those excerpted deposition transcripts with the Court, along with a statement of any portions of those designations describing objections thereto.

(g)   Damages. Because this is a TEFRA action, this Court has jurisdiction to determine the so-called "partnership items" related to the Chemtech Partnership, as well as the applicability of penalties for the Chemtech Partnership's 1997 through 2003 tax years. (A change in law in 1996 added certain penalty determinations to partnership-level proceedings under I.R.C. § 6226, effective beginning with the Chemtech Partnership's 1997 taxable year.) This Court's jurisdiction with respect to penalties is limited to partnership-level determinations and defenses and does not extend to any partner-level determinations or defenses.

(h) Neither party has waived or otherwise abandoned any claims or defenses.

(i) Subparagraph (i) of the Court's pretrial order is inapplicable because this case involves a bench, and not jury, trial.

(j) <u>Proposed findings and conclusions</u>. The parties' proposed Findings of Fact and Conclusions of Law have been separately filed by the Plaintiff and Defendant contemporaneously with this filing.

(k) <u>Settlement negotiations</u>. The parties have discussed settlement numerous times since the filing of the original action. Most recently, the parties (including executives from Dow and senior officials of the Department of Justice Tax Division) met in April 2010 to discuss settlement. Following that meeting, Plaintiff made a formal offer of settlement by letter dated May 13, 2010. Plaintiff received a formal written rejection from a delegate of the Attorney General on March 28, 2011.

(l) <u>Discovery</u>. General fact and expert discovery in Case Nos. 05-944-BAJ-DLD, 06-258-BAJ-DLD, and 07-405-BAJ-DLD concluded in 2009.

(m) <u>Motions in limine</u>. Pursuant to the December 12, 2010, Order, the deadline for the filing of motions in limine is April 22, 2011.

**(3)** At the December 8, 2010, status conference, the parties informed the Court that the trial of this case is expected to consume more than the five days that has been allotted by the Court in its August 31, 2010 Order (Docket No. 82). At this December 8, 2010, status conference, the Court indicated that it would not place time limits on the presentation of either party's case and that trial may occur from 8:00AM to 7:00PM beginning Monday, June 20, 2011, through Saturday, June 25, 2011, and thereafter as would be appropriate and necessary. The Court also

indicated that when it reviewed this Joint Pretrial Order, it may add additional trial days to the calendar if it deemed such days necessary.

**(4)** The Court confirmed at the December 8, 2010, status conference that the case will be tried as a bench trial.

**(5)** Paragraph 5 of this Court's pretrial order is inapplicable because this is a bench trial.

**(6)** Neither party requests bifurcation of this proceeding.

**(7)** The parties do not consent to this case being reassigned to a magistrate judge for trial.

**(8)** This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**(9)** Possibility of settlement of this case was considered by the parties.

_____
Brian A. Jackson
United States District Judge

Date:_____

Respectfully submitted, this 31st day of March, 2011.

| PLAINTIFF | UNITED STATES OF AMERICA, by |
|---|---|
| CHEMTECH ROYALTY ASSOCIATES, L.P., DOW EUROPE, S.A., as Tax Matters Partner | DONALD J. CAZAYOUX, JR. UNITED STATES ATTORNEY |
| /s/David M. Bienvenu<br>David M. Bienvenu, Jr.<br>TAYLOR, PORTER, BROOKS & PHILLIPS<br>Post Office Box 2471<br>Baton Rouge, LA  70821<br>Telephone:  (225) 387-3221<br>Facsimile:  (225) 346-8049 | s/John J. Gaupp<br>John J. Gaupp, LBN 14976<br>Assistant United States Attorney<br>777 Florida Street, Suite 208<br>Baton Rouge, Louisiana 70801<br>Telephone: (225) 389-0443<br>Fax: (225) 389-0685 |
| John B. Magee<br>Hartman E. Blanchard, Jr.<br>BINGHAM MCCUTCHEN, LLP<br>2020 K Street, N.W.<br>Washington, D.C.  20006<br>Telephone:  (202) 373-6000<br>Facsimile:  (202) 373-6001 | s/ Thomas J. Sawyer<br>Thomas J. Sawyer<br>Robert L. Welsh<br>Thomas F. Koelbl<br>Philip M. Schreiber<br>Trial Attorneys, Tax Division<br>U.S. Department of Justice<br>Post Office Box 14198<br>Washington, D.C.  20044<br>Telephone: (202) 514-8129<br>Fax:  (202) 514-4963 |