## PLAINTIFF'S PRE-TRIAL BRIEF

# EXHIBIT E

tax**analysts**
DOCUMENT SERVICE
Doc 2011-10927 (6 pgs)

**Internal Revenue Service**

Number: **201120003**
Release Date: 5/20/2011

Index Number:  385.03-00

Department of the Treasury
Washington, DC 20224

Third Party Communication: None
Date of Communication: Not Applicable
Person To Contact:
                    , ID No.
Telephone Number:

Refer Reply To:
CC:CORP:B06
PLR-105558-11
Date:
February 16, 2011

Legend

Fund          =


Interest      =

$x            =

State X       =

y             =

Dear              :

This letter responds to the letter from your authorized representative, dated February 4, 2011, requesting a ruling that the Interest, as described below, constitutes equity for Federal income tax purposes.

Fund is a closed-end management company that qualifies as a regulated investment company within the meaning of section 851 of the Internal Revenue Code.  Assets of Fund consist predominantly of debt instruments generating interest exempt from Federal income tax and state income tax and other investments that are incidental to Fund's business of investing in such debt instruments.  Fund's common shares are listed on the New York Stock Exchange.

Fund intends to issue the Interest, which will be similar to auction rate or remarketed preferred stock (i.e., auction rate preferred stock) except that the Interest will have features intended to make it an eligible investment for money market funds under the

tax**analysts**
DOCUMENT SERVICE™
Doc 2011-10927 (6 pgs)

Securities and Exchange Commission's Rule 2a-7, 17 C.F.R. 270.2a-7, issued under the Investment Company Act of 1940 (the "Investment Company Act"). In particular, the Interest will offer its holders the benefit of a liquidity facility that will be provided by a bank or other financial institution (the "Bank"). Bank will not be related to Fund under Section 267(b) or Section 707(b) of the Code.

Holders of the Interest will be entitled to tender their shares of the Interest for remarketing periodically or, in the event of a failed remarketing, for purchase by Bank, in either case, at the liquidation preference of the Interest plus accumulated but unpaid dividends (the "Purchase Price").

Each share of the Interest will have a fixed liquidation preference of $x and a dividend rate that will normally be reset every seven days (each reset period, a "Rate Period"). Fund will be able to pay dividends on the Interest only if dividends are duly declared by Fund's Board of Directors (the "Board") and paid out of legally available funds, as provided under State X law. An unaffiliated remarketing agent (the "Remarketing Agent") will be responsible for setting the dividend rate for each Rate Period. The dividend rate for any particular Rate Period will be the lowest rate, as determined by the Remarketing Agent, which results in the Interest, on the first day of the Rate Period, having a market value equal to the Purchase Price. At no time, however, may the Interest dividend rate exceed the maximum dividend rate (the "Maximum Rate") calculated for each Rate Period in a manner spelled out in the organizational documents establishing the Interest. For any Rate Period in which Bank holds Interest acquired under the liquidity facility, the dividend rate will be the Maximum Rate.

For any particular Rate Period, the Maximum Rate will be the applicable percentage (the "Applicable Percentage") of the applicable base rate (the "Applicable Base Rate") plus the applicable spread (the "Applicable Spread"). In general, the Applicable Percentage will vary depending on the long-term credit rating (if any) assigned to the Interest and will also be adjusted upwards with respect to any part of any Interest distribution that is characterized as taxable income rather than as income exempt from regular federal income tax. The Applicable Base Rate will vary depending on the length of the rate period and the Applicable Spread will vary depending on how long Bank holds Interest purchased under the liquidity facility, if any. The actual range of the Applicable Percentage, the Applicable Base Rate and the Applicable Spread will depend on market conditions at the time the Interest is issued. In no event will the Maximum Rate on the Interest exceed a designated ceiling rate (disregarding adjustments for any part of any Interest distribution that is characterized as taxable income rather than as tax-exempt income). As in the case of the Applicable Percentage, the Applicable Base Rate and the Applicable Spread, the actual ceiling rate will depend on market conditions at the time the Interest is issued.

Fund may redeem Interest shares at its option at any time. Interest shares must be redeemed either (A) as a whole on a specified date that is y years after issuance or (B)

tax**analysts**
DOCUMENT SERVICE
Doc 2011-10927 (6 pgs)

to the extent the asset coverage ratio (i.e., the ratio of the value of Fund's assets to the aggregate liquidation preference of the Interest) falls below 200% (or higher asset coverage ratio that, depending on market conditions, may be established at the time the liquidity facility is entered into). (Section 18(a) of the Investment Company Act effectively requires minimum asset coverage of 200% with respect to closed-end fund preferred stock.) Fund, like other closed-end fund issuers of preferred stock, may also be required to redeem Interest in order to maintain asset coverage requirements imposed by nationally recognized statistical rating organizations ("NRSROs") in connection with their long-term ratings of the Interest (if any). Under NRSRO guidelines, Fund may be required to maintain assets having in the aggregate a discounted value at least equal to a basic maintenance amount. The discounted value of Fund's underlying assets is calculated based on credit ratings, diversification and other criteria provided by the NRSROs. The basic maintenance amount equals the liquidation preference of the Interest plus certain of Fund's accrued and projected obligations. In addition, as discussed below, any Interest shares acquired by Bank pursuant to the liquidity facility and held by Bank for a continuous period of at least six months (during which period continuing efforts will be made to remarket the shares) will be subject to mandatory redemption by Fund. The redemption price for each Interest share in each case will equal the Purchase Price. All redemptions of Interest are subject to applicable State X law restrictions on stock redemptions.

Interest shareholders will have the option at any time to tender their Interest for remarketing at the Purchase Price on a specified purchase date (the "Purchase Date"). Generally, the Purchase Date will be any business day that is not less than seven days after the Interest shareholder delivers a notice of tender. In addition, the Interest will be subject to mandatory tender for remarketing by the Remarketing Agent at the Purchase Price upon any of the following events (the "Mandatory Tender Events"): (a) a failure by Fund to make a scheduled payment of dividends on the Interest; (b) a failure by Bank to maintain short-term debt ratings in one of the two highest ratings categories; (c) a failure by Fund to pay Bank any liquidity fee due in advance by seven business days before the start of the month to which the fee relates if Bank (in its sole discretion) provides written notice to Fund that such failure will trigger a mandatory tender; (d) the eighth day prior to the scheduled occurrence of an "extraordinary corporate event" with respect to Bank; (e) Fund having obtained a liquidity facility with a party other than Bank by the fifteenth day prior to the scheduled (or other type of) termination of the liquidity facility with Bank; (f) Fund having provided notice of a proposed special Rate Period (i.e., a Rate Period longer than Fund's ordinary seven-day Rate Period); or (g) if the liquidation preference of the Interest (and Fund's other "senior securities" (if any) as defined in the Investment Company Act, and certain other liabilities (if any)) exceeds a designated percentage of the value of Fund's assets if Bank (in its sole discretion) provides written notice to Fund that such failure will trigger a mandatory tender. An "extraordinary corporate event" with respect to Bank means a dissolution of Bank. It also means the consolidation or merger of Bank into another entity or the transfer of all or substantially all of the assets of Bank to another entity unless before the consolidation, merger or

**tax**analysts
DOCUMENT SERVICE
Doc 2011-10927 (6 pgs)

PLR-105558-11                              4

transfer Bank confirms that the surviving entity or transferee (a) will assume all of Bank's obligations under the liquidity facility and (b) have short-term debt ratings in one of the two highest categories.

Based on Fund's experience and discussions with investors, it is believed that the Mandatory Tender Events described above represent situations in which Interest holders will want to dispose of their Interest and will ordinarily do so through the remarketing mechanism.  By making these situations Mandatory Tender Events, Fund is assuring investors that their Interest shares will be remarketed (or sold to Bank in the event of a failed remarketing) in these situations whether or not the investors are aware that situations have occurred.  Investors are free to re-acquire the remarketed shares if they choose.  Investors have come to expect such accommodations in respect of previously issued, similar remarketed preferred securities as well as variable rate demand obligations issued by municipalities.

In each case, the Remarketing Agent will use its best efforts to remarket any Interest shares tendered.  A remarketing "fails" to the extent that any Interest shares tendered for remarketing remain unsold on the Purchase Date, in which case the Interest shares will be delivered to Bank for purchase under the liquidity facility.  In addition, all outstanding Interest shares must be tendered to and purchased by Bank (a "Mandatory Purchase") upon a failure to renew, replace, or extend the liquidity facility either with Bank or another liquidity provider at least 15 days before the liquidity facility is scheduled to terminate.  All current and future holders of Interest will be designated third-party beneficiaries of the liquidity facility and will have the right to enforce the liquidity facility directly against Bank.

Even if Bank purchases Interest pursuant to the liquidity facility, efforts to remarket the Interest (including both shares tendered by investors and shares purchased by Bank) will continue.  If Bank holds any share of Interest acquired pursuant to the liquidity facility for a continuous period of at least six months, however, Fund will be required to redeem that share of Interest from Bank at a price equal to the Purchase Price. Redemptions of Bank's Interest by Fund will be subject to the State X law restrictions applicable to all stock redemptions.

Except for the special redemption right provided to Bank as liquidity provider, neither Bank nor any subsequent holder of Interest will have any greater rights with respect to the Interest than other holders of the Interest under the terms of the liquidity facility or the terms of the Interest, and neither Bank nor any subsequent holder of Interest will have any greater rights with respect to the Interest than other holders of the Interest under State X law.

Fund has requested a ruling that Interest will be treated as equity for Federal income tax purposes.

PLR-105558-11                               5

In connection with this submission, Fund makes the following representations:

(a)     Fund is authorized under its corporate charter to issue Interest.

(b)     The shares of Interest, as required by the Investment Company Act, will rank on a parity with any other series of preferred shares of Fund as to the payment of dividends and the distribution of assets upon dissolution, liquidation or winding up of the affairs of Fund.

(c)     Interest will have preference with respect to the payment of dividends and as to the distribution of assets upon dissolution, liquidation or winding up of the affairs of Fund over the common shares of Fund, as described in the appropriate documents.

(d)     No holder of Interest will have, solely by reason of being such a holder, any preemptive or other right to acquire, purchase or subscribe for any common or preferred shares or other securities of Fund which it may hereafter issue or sell.

(e)     The holders of Interest will be entitled to receive, when, as and if declared by, or under the authority granted by, the Board, out of funds legally available therefore and in preference to dividends and distributions on common shares of Fund, cumulative cash dividends and distributions on each share of such Interest.

(f)     In the event of any liquidation, dissolution or winding up of the affairs of Fund, whether voluntary or involuntary, the holders of Interest will be entitled to receive a liquidation distribution out of the assets of Fund available for distribution to shareholders after Fund satisfies claims of creditors but before Fund makes any distribution or payment in respect of the common shares.

(g)     Fund will redeem all shares of Interest at a price per share described in the appropriate documents, but only out of funds legally available therefore under State X corporate law.

(h)     As required by the Investment Company Act, the holders of Interest will possess voting rights that are at least as extensive as the voting rights possessed by holders of Fund's common shares.

Based on the information submitted and the representations provided, we rule that the Interest will be treated as equity for Federal income tax purposes.

The ruling contained in this letter is based upon information and representations submitted by the taxpayer and accompanied by a penalty of perjury statement executed

tax**analysts**
DOCUMENT SERVICE
Doc 2011-10927 (6 pgs)

PLR-105558-11                          6

by an appropriate party.   While this office has not verified any of the material submitted in support of the request for a ruling, it is subject to verification on examination.

Except as expressly provided herein, no opinion is expressed or implied concerning the tax consequences of any aspect of any transaction or item discussed or referenced in this letter.

This ruling is directed only to the taxpayer requesting it.  Section 6110(k)(3) of the Code provides that it may not be used or cited as precedent.

In accordance with the Power of Attorney on file with this office, a copy of this letter is being sent to your authorized representative.

A copy of this letter must be attached to any income tax return to which it is relevant. Alternatively, taxpayers filing their returns electronically may satisfy this requirement by attaching a statement to their return that provides the date and control number of the letter ruling.

                    Sincerely,



                    Alfred C. Bishop, Jr.
                    Branch Chief, Branch 6
                    (Corporate)


cc: