# **PLAINTIFF'S PRE-TRIAL BRIEF**

# **EXHIBIT F**

Case 3:05-cv-00944-BAJ-EWD    Document 107-7    05/27/11   Page 2 of 5

82d Congress, 1st Session - - - - - - - House Report No. 586

# REVENUE ACT OF 1951

## REPORT

OF THE

## COMMITTEE ON WAYS AND MEANS HOUSE OF REPRESENTATIVES

TO ACCOMPANY

## H. R. 4473

A BILL TO PROVIDE REVENUE, AND FOR OTHER PURPOSES



JUNE 18, 1951.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1951

85221

HeinOnline -- 7 Internal Revenue Acts of the United States: 1950-1951 Legislative Histories, Laws and Administrative Documents (Bernard D. Reams, Jr. ed.) I 1982

Section 307 extends to the recipients of coal royalties the capital-gains treatment now available to timber under section 117 (k) (2) of the Internal Revenue Code. It is intended by this provision that coal royalties receive the same treatment as timber royalties. In the case of timber coming under this section, percentage depletion is not allowed, and it also will not be available in the case of these coal royalties.

Section 307 applies to taxable years ending after December 31, 1950, but only with respect to amounts received or accrued after such date.

The revenue loss involved is estimated to be about $10 million annually.

### L. SALES OF LIVESTOCK USED FOR BREEDING, DAIRY OR DRAFT PURPOSES

Section 306 of the bill adds a new sentence at the end of section 117 (j) (1) which defines property used in the trade or business as including "livestock held by the taxpayer for draft, breeding, or dairy purposes for 12 months or more."

Your committee believes that the term "livestock" in this new sentence should be given a broad, rather than a narrow, interpretation; and that the gains from sales of livestock should be computed in accordance with the method of livestock accounting used by the taxpayer and presently recognized by the Bureau of Internal Revenue.

The revenue loss under this provision is expected to be $15 million in a full year of operation.

### M. FAMILY PARTNERSHIPS

Section 312 of your committee's bill is intended to harmonize the rules governing interests in the so-called family partnership with those generally applicable to other forms of property or business. Two principles governing attribution of income have long been accepted as basic: (1) income from property is attributable to the owner of the property; (2) income from personal services is attributable to the person rendering the services. There is no reason for applying different principles to partnership income. If an individual makes a bona fide gift of real estate, or of a share of corporate stock, the rent or dividend income is taxable to the donee. Your committee's amendment makes it clear that, however the owner of a partnership interest may have acquired such interest, the income is taxable to the owner, if he is the real owner. If the ownership is real, it does not matter what motivated the transfer to him or whether the business benefited from the entrance of the new partner.

Although there is no basis under existing statutes for any different treatment of partnership interests, some decisions in this field have ignored the principle that income from property is to be taxed to the owner of the property. Many court decisions since the decision of the Supreme Court in *Commissioner* v. *Culbertson* (337 U. S. 733) have held invalid for tax purposes family partnerships which arose by virtue of a gift of a partnership interest from one member of a family to another, where the donee performed no vital services for the partnership. Some of these cases apparently proceed upon the theory that a partnership cannot be valid for tax purposes unless

the intrafamily gift of capital is motivated by a desire to benefit the partnership business. Others seem to assume that a gift of a partnership interest is not complete because the donor contemplates the continued participation in the business of the donated capital. However, the frequency with which the Tax Court, since the Culbertson decision, has held invalid family partnerships based upon donations of capital, would seem to indicate that, although the opinions often refer to "intention," "business purpose," "reality," and "control," they have in practical effect reached results which suggest that an intrafamily gift of a partnership interest, where the donee performs no substantial services, will not usually be the basis of a valid partnership for tax purposes. We are informed that the settlement of many cases in the field is being held up by the reliance of the field offices of the Bureau of Internal Revenue upon some such theory. Whether or not the opinion of the Supreme Court in *Commissioner* v. *Tower* (327 U. S. 280) and the opinion of the Supreme Court in *Commissioner* v. *Culbertson* (337 U. S. 733), which attempted to explain the Tower decision, afford any justification for the confusion is not material—the confusion exists.

The amendment leaves the Commissioner and the courts free to inquire in any case whether the donee or purchaser actually owns the interest in the partnership which the transferor purports to have given or sold him. Cases will arise where the gift or sale is a mere sham. Other cases will arise where the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away, as was held by the Supreme Court in an analogous trust situation involved in the case of *Helvering* v. *Clifford* (309 U. S. 351).' The same standards apply in determining the bona fides of alleged family partnerships as in determining the bona fides of other transactions between family members. Transactions between persons in a close family group, whether or not involving partnership interests, afford much opportunity for deception and should be subject to close scrutiny. All the facts and circumstances at the time of the purported gift and during the periods preceding and following it may be taken into consideration in determining the bona fides or lack of bona fides of a purported gift or sale.

Not every restriction upon the complete and unfettered control by the donee of the property donated will be indicative of sham in the transaction. Contractual restrictions may be of the character incident to the normal relationships among partners. Substantial powers may be retained by the transferor as a managing partner or in any other fiduciary capacity which, when considered in the light of all the circumstances, will not indicate any lack of true ownership in the transferee. In weighing the effect of a retention of any power upon the bona fides of a purported gift or sale, a power exercisable for the benefit of others must be distinguished from a power vested in the transferor for his own benefit.

Since legislation is now necessary to make clear the fundamental principle that, where there is a real transfer of ownership, a gift of a family partnership interest is to be respected for tax purposes without regard to the motives which actuated the transfer, it is considered appropriate at the same time to provide specific safeguards—whether or not such safeguards may be inherent in the general rule—against

34          REVENUE ACT OF 1951

the use of the partnership device to accomplish the deflection of income from the real owner.

Therefore the bill provides that in the case of any partnership interest created by gift the allocation of income according to the terms of the partnership agreement shall be controlling for income tax purposes except when the shares are allocated without proper allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the allocation to the donated capital is proportionately greater than that attributable to the donor's capital. In such cases a reasonable allowance will be made for the services rendered by the partners, and the balance of the income will be allocated according to the amount of capital which the several partners have invested. However, the distributive share of a partner in the earnings of the partnership will not be diminished because of absence due to military service.

When more than one member of a family is a member of a partnership all interests purchased by one member of the family from another will be treated as though the transfer were made by gift. For this purpose the family of an individual includes his spouse, ancestors, lineal descendants, and any trust for the primary benefit of such persons.

Section 313 applies to taxable years beginning after December 31, 1950. No inferences are to be drawn from its enactment with respect to taxable years beginning prior to January 1, 1951.

### N. VENTURE CAPITAL COMPANIES

Section 312 of this bill will permit certain so-called venture capital companies to qualify as regulated investment companies. Under Supplement Q of the Internal Revenue Code regulated investment companies which distribute currently at least 90 percent of their income, and meet certain other tests set out in section 361 (b) of the code are not taxed upon amounts distributed to shareholders. One of these tests is that the company must not invest more than 50 percent of its assets in companies in which it holds more than 10 percent of the value of the voting securities. This rule has the effect of denying special treatment to companies which undertake to control the enterprises in which the bulk of their funds are placed. It clearly excludes a holding company in the ordinary sense of the word.

In the public hearings on this bill it was brought to the attention of this committee that the 10-percent stock-ownership limitation constituted a serious impediment to the development of so-called venture capital companies. These are investment companies which are used principally to provide capital for other companies engaged in the development or exploitation of inventions, technological improvements, new processes and products which were not previously generally available. In such cases the investment company must provide most of the capital needed to finance the venture and will frequently hold more than 50 percent of its assets in stock representing more than 10 percent of the voting stock of the operating companies. As a result it cannot qualify under Supplement Q if it invests more than 50 percent of its assets in such companies. Unless this rule is amended, it will not be possible for an investment company to devote itself princi-

HeinOnline -- 7 Internal Revenue Acts of the United States: 1950-1951 Legislative Histories, Laws and Administrative Documents (Bernard D. Reams, Jr. ed.) 34 1982