## PLAINTIFF'S PRE-TRIAL BRIEF

# EXHIBIT G

Calendar No. 737

| 82D CONGRESS<br>*1st Session* | SENATE | REPORT<br>No. 781 |
|---|---|---|

# THE REVENUE ACT OF 1951

### REPORT

OF THE

## COMMITTEE ON FINANCE
## UNITED STATES SENATE

TO ACCOMPANY

# H. R. 4473

### A BILL TO PROVIDE REVENUE,
### AND FOR OTHER PURPOSES



SEPTEMBER 18 (legislative day, SEPTEMBER 13), 1951.—Ordered
to be printed

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1951

89079

HeinOnline -- 7 Internal Revenue Acts of the United States: 1950-1951 Legislative Histories, Laws and Administrative Documents (Bernard D. Reams, Jr. ed.) I 1982

The House bill added to the list of nonmetallic minerals, to which percentage depletion is available at a 15-percent rate, borax, fuller's earth, tripoli, refractory and fire clay, quartzite, perlite, diatomaceous earth, and metallurgical and chemical grade limestones. Your committee's bill, on the other hand, provides that these items added by the House are to receive percentage depletion at the same 10-percent rate accorded coal and asbestos. In addition to these items, your committee has added a 10-percent rate for wollastonite, which is important as an insulating and fireproofing material and thus competitive with other items presently accorded similar treatment, and the magnesium compounds magnesite, dolomite, and brucite.

Your committee's bill adds to the nonmetallic minerals presently receiving 15-percent depletion, aplite. This material, which is found in only small quantities in this country, is closely related to feldspar, which already receives 15-percent depletion.

Your committee has also made two technical revisions in the 15-percent depletion section of the House bill. The latter includes at the 15-percent rate "thenardite (including thenardite from brines or mixtures of brine)." Your committee has eliminated the parenthetical limitation as unnecessary and because it might give rise to doubt as to certain other of the enumerated products. For example potash, trona, and borax are also frequently recovered from brines or mixtures of brine. The phrase "mines and other natural deposits" is clearly broad enough to include brines as well as all other natural sources. The particular type of source is immaterial.

The names of all the various enumerated minerals are of course intended to have their commonly understood commercial meaning. For example, the term "thenardite" applies to sodium sulphate, also known as salt cake; the term "trona" to sodium carbonate and sodium bicarbonate, also known as soda ash; and the term "borax" to boron minerals generally.

Your committee has also amended the House provision which reads "ball and sagger clay" to read "ball clay, sagger clay" in order to remove the implication of the House bill that these are not separate types of clay.

Many of the above changes were provided in the House version of the bill which became the Revenue Act of 1950 but they were eliminated by your committee and from the final legislation largely because of the revenue loss involved. It is apparent, however, that the need for equalization is substantially greater now because of the additional taxes imposed under the legislation of 1950 and under this bill. Therefore, the committee believes that the proposed extension of the percentage depletion system is necessary in spite of the revenue loss involved. The latter is estimated to be about $76 million in a full year's operation.

The amendments made by this section of the bill apply to taxable years beginning after December 31, 1950.

*7. Family partnerships*

Section 339 of your committee's bill is intended to harmonize the rules governing interests in the so-called family partnership with those generally applicable to other forms of property or business. Two principles governing attribution of income have long been accepted as basic: (1) income from property is attributable to the owner of the

HeinOnline -- 7 Internal Revenue Acts of the United States: 1950-1951 Legislative Histories, Laws and Administrative Documents (Bernard D. Reams, Jr. ed.) 38 1982

property; (2) income from personal services is attributable to the person rendering the services. There is no reason for applying different principles to partnership income. If an individual makes a bona fide gift of real estate, or of a share of corporate stock, the rent or dividend income is taxable to the donee. Your committee's amendment makes it clear that, however the owner of a partnership interest may have acquired such interest, the income is taxable to the owner, if he is the real owner. If the ownership is real, it does not matter what motivated the transfer to him or whether the business benefited from the entrance of the new partner.

Although there is no basis under existing statutes for any different treatment of partnership interests, some decisions in this field have ignored the principle that income from property is to be taxed to the owner of the property. Many court decisions since the decision of the Supreme Court in *Commissioner* v. *Culbertson* (337 U. S. 733) have held invalid for tax purposes family partnerships which arose by virtue of a gift of a partnership interest from one member of a family to another, where the donee performed no vital services for the partnership. Some of these cases apparently proceed upon the theory that a partnership cannot be valid for tax purposes unless the intrafamily gift of capital is motivated by a desire to benefit the partnership business. Others seem to assume that a gift of a partnership interest is not complete because the donor contemplates the continued participation in the business of the donated capital. However, the frequency with which the Tax Court, since the *Culbertson* decision, has held invalid family partnerships based upon donations of capital, would seem to indicate that, although the opinions often refer to "intention," "business purpose," "reality," and "control," they have in practical effect reached results which suggest that an intrafamily gift of a partnership interest, where the donee performs no substantial services, will not usually be the basis of a valid partnership for tax purposes. We are informed that the settlement of many cases in the field is being held up by the reliance of the field offices of the Bureau of Internal Revenue upon some such theory. Whether or not the opinion of the Supreme Court in *Commissioner* v. *Tower* (327 U. S. 280) and the opinion of the Supreme Court in *Commissioner* v. *Culbertson* (337 U. S. 733), which attempted to explain the *Tower* decision, afford any justification for the confusion is not material—the confusion exists.

The amendment leaves the Commissioner and the courts free to inquire in any case whether the donee or purchaser actually owns the interest in the partnership which the transferor purports to have given or sold him. Cases will arise where the gift or sale is a mere sham. Other cases will arise where the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away, as was held by the Supreme Court in an analogous trust situation involved in the case of *Helvering* v. *Clifford* (309 U. S. 351). The same standards apply in determining the bona fides of alleged family partnerships as in determining the bona fides of other transactions between family members. Transactions between persons in a close family group, whether or not involving partnership interests, afford much opportunity for deception and should be subject to close scrutiny. All the facts and circumstances at the time of the purported

**40**                    REVENUE ACT OF 1951

gift and during the periods preceding and following it may be taken into consideration in determining the bona fides or lack of bona fides of a purported gift or sale.

Not every restriction upon the complete and unfettered control by the donee of the property donated will be indicative of sham in the transaction. Contractual restrictions may be of the character incident to the normal relationships among partners. Substantial powers may be retained by the transferor as a managing partner or in any other fiduciary capacity which, when considered in the light of all the circumstances, will not indicate any lack of true ownership in the transferee. In weighing the effect of a retention of any power upon the bona fides of a purported gift or sale, a power exercisable for the benefit of others must be distinguished from a power vested in the transferor for his own benefit.

Since legislation is now necessary to make clear the fundamental principle that, where there is a real transfer of ownership, a gift of a family partnership interest is to be respected for tax purposes without regard to the motives which actuated the transfer, it is considered appropriate at the same time to provide specific safeguards—whether or not such safeguards may be inherent in the general rule—against the use of the partnership device to accomplish the deflection of income from the real owner.

Therefore, the bill provides that in the case of any partnership interest created by gift the allocation of income, according to the terms of the partnership agreement, shall be controlling for income-tax purposes except when the shares are allocated without proper allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the allocation to the donated capital is proportionately greater than that attributable to the donor's capital. In such cases a reasonable allowance will be made for the services rendered by the partners, and the balance of the income will be allocated according to the amount of capital which the several partners have invested. However, the distributive share of a partner in the earnings of the partnership will not be diminished because of absence due to military service.

When more than one member of a family is a member of a partnership, all interests purchased by one member of the family from another will be treated as though the transfer were made by gift. For this purpose the family of an individual includes his spouse, ancestors, lineal descendants, and any trust for the primary benefit of such persons.

The amendment made by the House bill was made applicable only to taxable years beginning after December 31, 1950, with the express intention that no inferences were to be drawn from the enactment of the amendment with respect to taxable years beginning prior to January 1, 1951. Apparently with respect to prior taxable years the House amendment would have left the status of family partnerships to be determined under existing law. As the above discussion clearly indicates, the application of existing law has been extremely uncertain. Your committee believes that it is equally important to establish a rule which can be used with respect to those prior years, thus minimizing the necessity for litigation in this area. Therefore, your committee has provided that the amendment shall, at the election of any member of such a partnership, be effective with respect to any

HeinOnline -- 7 Internal Revenue Acts of the United States: 1950-1951 Legislative Histories, Laws and Administrative Documents (Bernard D. Reams, Jr. ed.) 40 1982

·open taxable year since December 31, 1938, that date being just prior to the enactment of the Code. Such an election will be valid only if any other members of the partnership whose taxable income would be increased consents to the assessment and collection of such ·deficiency, or if the taxpayer who would be entitled to a refund or re- ·duction of his tax liability consents· to the reduction of such refund or tax decrease by the amount of the related taxpayer's additional tax.

*8. Gains from sales of livestock*

Section 117 (j) of the code provides, in effect, that a net gain from ·sales of "property used in the trade or business" of a taxpayer and held ·for more than 6 months is to be treated as a capital gain. In the case ·of a loss, it is to be treated as an ordinary loss. However, section 117 (j) states that this treatment is not to apply to "property of a kind ·which would be properly includible in the inventory of the taxpayer if ·on hand at the close of the taxable year, or property held by the tax- payer primarily for sale to customers in the ordinary course of his trade ·or business." In the case of farmers there has been considerable con- fusion and dispute for several years as to whether all livestock held for ·draft, dairy, or breeding purposes is "property used in the trade or business," or whether in some cases the livestock should be deemed held "primarily for sale to customers in the ordinary course of his trade or business."

Rulings of the Treasury Department issued in 1944 and 1945 held that the capital gains treatment was applicable only in the case of unusual sales such as those which would reduce the normal size of the herd or those resulting from a change of breed or other special circum- stances, and that the capital gains treatment would not apply to the ·customary sale by a farmer of old or disabled animals culled from the breeding herd and replaced by young animals produced by the breed- ing herd. Early in 1949 the United States Court of Appeals, Eighth ·Circuit, held in the *Albright* case (173 F. 2d 399) that animals used for breeding purposes, whether or not sold as culls in the ordinary course of business, constituted "property used in the trade or business" within the meaning of section 117 (j). That decision specifically applied to ·dairy cattle and hogs but was applicable by implication to other types of livestock.

Notwithstanding the *Albright* decision, the Treasury Department continued to adhere to its position initiated in the 1944 and 1945 rulings, pending possible contrary decisions in other courts which might result in a conclusive decision by the Supreme Court. The Revenue Act of 1950 as passed by the Senate contained a provision intended to clarify this situation, but this was rejected in conference, principally because it referred to "cattle" and thus did not clear up the situation with respect to other forms of livestock such as sheep and hogs. However, the conference committee expressed the hope that the Treasury would follow the *Albright* decision.

In January 1951 the United States Court of Appeals, Fifth Circuit, decided the *Bennett* case (186 F. (2d) 407) in a manner similar to the *Albright* decision. Subsequently the Bureau of Internal Revenue issued a ruling, Mim. 6660, stating that the capital gains treatment provided by section 117 (j) would be applied to sales of culls. How- ever, this ruling contained a statement that this treatment might not be applied in the case of animals "not used for substantially their full

HeinOnline -- 7 Internal Revenue Acts of the United States: 1950-1951 Legislative Histories, Laws and Administrative Documents (Bernard D. Reams, Jr. ed.) 41 1982