# PLAINTIFF'S PRE-TRIAL BRIEF

# EXHIBIT L

# CODE OF FEDERAL REGULATIONS
## TITLE 26--INTERNAL REVENUE
### CHAPTER I--INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY
### SUBCHAPTER A--INCOME TAX
### PART 1--INCOME TAX; TAXABLE YEARS BEGINNING AFTER DECEMBER 31, 1953
### NORMAL TAXES AND SURTAXES
### ESTATES, TRUSTS, BENEFICIARIES, AND DECEDENTS
### PARTNERS AND PARTNERSHIPS

s 1.704-1 Partner's distributive share.

**(a) Effect of partnership agreement.** A partner's distributive share of any item or class of items of income, gain, loss, deduction, or credit of the partnership shall be determined by the partnership agreement, unless otherwise provided by section 704 and paragraphs (b) through (e) of this section. For definition of partnership agreement see section 761(c).

**(b) Determination of partner's distributive share--(0) Cross-references.**

| Heading | Section |
| --- | --- |
| Cross-references | 1.704-1(b)(2)(iv)(d)(2) |
| In general | 1.704-1(b)(2)(iv)(d)(3) |
| Basic principles | 1.704-1(b)(1)(i) |
| Effective dates | 1.704-1(b)(2)(iv)(e)(1) |
| Effect of other sections | 1.704-1(b)(2)(iv)(e)(2) |
| Other possible tax consequences | 1.704-1(b)(1)(iv) |
| Purported allocations | 1.704-1(b)(1)(v) |
| Section 704(c) determinations | 1.704-1(b)(1)(vi) |
| Bottom line allocations | 1.704-1(b)(1)(vii) |
| Substantial economic effect | 1.704-1(b)(2) |
| Two-part analysis | 1.704-1(b)(2)(i) |
| Economic effect | 1.704-1(b)(2)(ii) |
| Fundamental principles | 1.704-1(b)(2)(ii)(a) |
| Three requirements | 1.704-1(b)(2)(ii)(b) |
| Obligation to restore deficit | 1.704-1(b)(2)(ii)(c) |
| Alternate test for economic effect | 1.704-1(b)(2)(ii)(d) |
| Partial economic effect | 1.704-1(b)(2)(ii)(e) |
| Reduction of obligation to restore | 1.704-1(b)(2)(ii)(f) |
| Liquidation defined | 1.704-1(b)(2)(ii)(g) |
| Partnership agreement defined | 1.704-1(b)(2)(ii)(h) |
| Economic effect equivalence | 1.704-1(b)(2)(ii)(i) |
| Substantiality | 1.704-1(b)(2)(iii) |
| General rules | 1.704-1(b)(2)(iii)(a) |
| Shifting tax consequences | 1.704-1(b)(2)(iii)(b) |

Transitory allocations ............................... 1.704-1(b)(2)(iii)(c)
Maintenance of capital accounts ....................... 1.704-1(b)(2)(iv)
 In general .......................................... 1.704-1(b)(2)(iv)(a)
 Basic rules ......................................... 1.704-1(b)(2)(iv)(b)
 Treatment of liabilities ............................ 1.704-1(b)(2)(iv)(c)
 Contributed property ................................ 1.704-1(b)(2)(iv)(d)
  In general ........................................ 1.704-1(b)(2)(iv)(d)(1)
  Contribution of promissory notes ................... 1.704-1(b)(2)(iv)(d)(2)
  Section 704(c) considerations ...................... 1.704-1(b)(2)(iv)(d)(3)
 Distributed property ................................ 1.704-1(b)(2)(iv)(e)
  In general ........................................ 1.704-1(b)(2)(iv)(e)(1)
  Distribution of promissory notes ................... 1.704-1(b)(2)(iv)(e)(2)
 Revaluations of property ............................ 1.704-1(b)(2)(iv)(f)
 Adjustments to reflect book value ................... 1.704-1(b)(2)(iv)(g)
  In general ........................................ 1.704-1(b)(2)(iv)(g)(1)
  Payables and receivables ........................... 1.704-1(b)(2)(iv)(g)(2)
  Determining amount of book items ................... 1.704-1(b)(2)(iv)(g)(3)
 Determinations of fair market value ................. 1.704-1(b)(2)(iv)(h)
 Section 705(a)(2)(B) expenditures ................... 1.704-1(b)(2)(iv)(i)
  In general ........................................ 1.704-1(b)(2)(iv)(i)(1)
  Expenses described in section 709 .................. 1.704-1(b)(2)(iv)(i)(2)
  Disallowed losses .................................. 1.704-1(b)(2)(iv)(i)(3)
 Basis adjustments to section 38 property ............ 1.704-1(b)(2)(iv)(j)
 Depletion of oil and gas properties ................. 1.704-1(b)(2)(iv)(k)
  In general ........................................ 1.704-1(b)(2)(iv)(k)(1)
  Simulated depletion ................................ 1.704-1(b)(2)(iv)(k)(2)
  Actual depletion ................................... 1.704-1(b)(2)(iv)(k)(3)
  Effect of book values .............................. 1.704-1(b)(2)(iv)(k)(4)
 Transfers of partnership interests .................. 1.704-1(b)(2)(iv)(l)
 Section 754 elections ............................... 1.704-1(b)(2)(iv)(m)
  In general ........................................ 1.704-1(b)(2)(iv)(m)(1)
  Section 743 adjustments ............................ 1.704-1(b)(2)(iv)(m)(2)
  Section 732 adjustments ............................ 1.704-1(b)(2)(iv)(m)(3)
  Section 734 adjustments ............................ 1.704-1(b)(2)(iv)(m)(4)
  Limitations on adjustments ......................... 1.704-1(b)(2)(iv)(m)(5)
 Partnership level characterization .................. 1.704-1(b)(2)(iv)(n)
 Guaranteed payments ................................. 1.704-1(b)(2)(iv)(o)
 Minor discrepancies ................................. 1.704-1(b)(2)(iv)(p)
 Adjustments where guidance is lacking ............... 1.704-1(b)(2)(iv)(q)
 Restatement of capital accounts ..................... 1.704-1(b)(2)(iv)(r)
Partner's interest in the partnership ............... 1.704-1(b)(3)
 In general .......................................... 1.704-1(b)(3)(i)
 Factors considered .................................. 1.704-1(b)(3)(ii)
 Certain determinations .............................. 1.704-1(b)(3)(iii)
Special rules ....................................... 1.704-1(b)(4)

Allocations to reflect revaluations ................. 1.704-1(b)(4)(i)
Credits ............................................ 1.704-1(b)(4)(ii)
Excess percentage depletion ......................... 1.704-1(b)(4)(iii)
Allocations attributable to nonrecourse liabilities . 1.704-1(b)(4)(iv)
Allocations under section 613A(c)(7)(D) ............. 1.704-1(b)(4)(v)
Amendments to partnership agreement ................. 1.704-1(b)(4)(vi)
Recapture .......................................... 1.704-1(b)(4)(vii)
Examples ........................................... 1.704-1(b)(5)

**(1) In general--(i) Basic principles.** Under section 704(b) if a partnership agreement does not provide for the allocation of income, gain, loss, deduction, or credit (or item thereof) to a partner, or if the partnership agreement provides for the allocation of income, gain, loss, deduction, or credit (or item thereof) to a partner but such allocation does not have substantial economic effect, then the partner's distributive share of such income, gain, loss, deduction, or credit (or item thereof) shall be determined in accordance with such partner's interest in the partnership (taking into account all facts and circumstances). If the partnership agreement provides for the allocation of income, gain, loss, deduction, or credit (or item thereof) to a partner, there are three ways in which such allocation will be respected under section 704(b) and this paragraph. First, the allocation can have substantial economic effect in accordance with paragraph (b)(2) of this section. Second, taking into account all facts and circumstances, the allocation can be in accordance with the partner's interest in the partnership. See paragraph (b)(3) of this section. Third, the allocation can be deemed to be in accordance with the partner's interest in the partnership pursuant to one of the special rules contained in paragraph (b)(4) of this section and s 1.704-2. To the extent an allocation under the partnership agreement of income, gain, loss, deduction, or credit (or item thereof) to a partner does not have substantial economic effect, is not in accordance with the partner's interest in the partnership, and is not deemed to be in accordance with the partner's interest in the partnership, such income, gain, loss, deduction, or credit (or item thereof) will be reallocated in accordance with the partner's interest in the partnership (determined under paragraph (b)(3) of this section).

**(ii) Effective dates.** The provisions of this paragraph are effective for partnership taxable years beginning after December 31, 1975. However, for partnership taxable years beginning after December 31, 1975, but before May 1, 1986, (January 1, 1987, in the case of allocations of nonrecourse deductions as defined in paragraph (b)(4)(iv)(a) of this section) an allocation of income, gain, loss, deduction, or credit (or item thereof) to a partner that is not respected under this paragraph nevertheless will be respected under section 704(b) if such allocation has substantial economic effect or is in accordance with the partners' interests in the partnership as those terms have been interpreted under the relevant case law, the legislative history of section 210(d) of the Tax Reform Act of 1976, and the provisions of this paragraph in effect for partnership taxable years beginning before May 1, 1986.

**(iii) Effect of other sections.** The determination of a partner's distributive share of income, gain, loss, deduction, or credit (or item thereof) under section 704(b) and this paragraph is not conclusive as to the tax treatment of a partner with respect to such distributive share. For example, an allocation of loss or deduction to a partner that is respected under section 704(b) and this paragraph may not be deductible by such partner if the partner lacks the requisite motive for economic gain (see, e.g., Goldstein v. Commissioner, 364 F.2d 734 (2d Cir.1966)), or may be disallowed for that taxable year (and held in suspense) if the limitations of section 465 or section 704(d) are applicable. Similarly, an allocation that is respected under section 704(b) and this paragraph nevertheless may be reallocated under other provisions, such as section 482, section 704(e)(2), section 706(d) (and related assignment of income principles), and paragraph (b)(2)(ii) of s 1.751-1. If a partnership has a section 754 election in effect, a partner's distributive share of partnership income, gain, loss, or deduction may be affected as provided in s 1.743-1 (see paragraph (b)(2)(iv)(m)(2) of this section). A deduction

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

that appears to be a nonrecourse deduction deemed to be in accordance with the partners' interests in the partnership may not be such because purported nonrecourse liabilities of the partnership in fact constitute equity rather than debt. The examples in paragraph (b)(5) of this section concern the validity of allocations under section 704(b) and this paragraph and, except as noted, do not address the effect of other sections or limitations on such allocations.

**(iv) Other possible tax consequences.** Allocations that are respected under section 704(b) and this paragraph may give rise to other tax consequences, such as those resulting from the application of section 61, section 83, section 751, section 2501, paragraph (f) of s 1.46-3, s 1.47-6, paragraph (b)(1) of s 1.721- 1 (and related principles), and paragraph (e) of s 1.752-1. The examples in paragraph (b)(5) of this section concern the validity of allocations under section 704(b) and this paragraph and, except as noted, do not address other tax consequences that may result from such allocations.

**(v) Purported allocations.** Section 704(b) and this paragraph do not apply to a purported allocation if it is made to a person who is not a partner of the partnership (see section 7701(a)(2) and paragraph (d) of s 301.7701-3) or to a person who is not receiving the purported allocation in his capacity as a partner (see section 707(a) and paragraph (a) of s 1.707-1).

**(vi) Section 704(c) determinations.** Under section 704(c) if property is contributed by a partner to a partnership, the partners' distributive shares of income, gain, loss, and deduction, as computed for tax purposes, with respect to such property are determined so as to take account of the variation between the adjusted tax basis and fair market value of such property. Although section 704(b) does not directly determine the partners' distributive shares of tax items governed by section 704(c), the partners' distributive shares of tax items are determined under section 704(c) with reference to the partners' distributive shares of the corresponding book items, as determined under section 704(b) and this paragraph. (See paragraphs (b)(2)(iv)(d) and (b)(4)(i) of this section.) Section 704(c), as cited in this paragraph, refers to such section as in effect for property contributed to a partnership after March 31, 1984. See example (13)(i) of paragraph (b)(5) of this section.

**(vii) Bottom line allocations.** Section 704(b) and this paragraph are applicable to allocations of income, gain, loss, deduction, and credit, allocations of specific items of income, gain, loss, deduction, and credit, and allocations of partnership net or "bottom line" taxable income and loss. An allocation to a partner of a share of partnership net or "bottom line" taxable income or loss shall be treated as an allocation to such partner of the same share of each item of income, gain, loss, and deduction that is taken into account in computing such net or "bottom line" taxable income or loss. See example (15)(i) of paragraph (b)(5) of this section.

**(2) Substantial economic effect--(i) Two-part analysis.** The determination of whether an allocation of income, gain, loss, or deduction (or item thereof) to a partner has substantial economic effect involves a two-part analysis that is made as of the end of the partnership taxable year to which the allocation relates. First, the allocation must have economic effect (within the meaning of paragraph (b)(2)(ii) of this section). Second, the economic effect of the allocation must be substantial (within the meaning of paragraph (b)(2)(iii) of this section).

**(ii) Economic effect**--(a) Fundamental principles. In order for an allocation to have economic effect, it must be consistent with the underlying economic arrangement of the partners. This means that in the event there is an economic benefit or economic burden that corresponds to an allocation, the partner to whom the allocation is made must receive such economic benefit or bear such economic burden.

(b) Three requirements. Based on the principles contained in paragraph (b)(2)(ii)(a) of this section, and except as otherwise provided in this paragraph, an allocation of income, gain, loss, or deduction (or item thereof) to a partner will have economic effect if, and only if, throughout the full term of the partnership, the partnership agreement provides--

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(1) For the determination and maintenance of the partners' capital accounts in accordance with the rules of paragraph (b)(2)(iv) of this section;

(2) Upon liquidation of the partnership (or any partner's interest in the partnership), liquidating distributions are required in all cases to be made in accordance with the positive capital account balances of the partners, as determined after taking into account all capital account adjustments for the partnership taxable year during which such liquidation occurs (other than those made pursuant to this requirement (2) and requirement (3) of this paragraph (b)(2)(ii)(b)), by the end of such taxable year (or, if later, within 90 days after the date of such liquidation), and

(3) If such partner has a deficit balance in his capital account following the liquidation of his interest in the partnership, as determined after taking into account all capital account adjustments for the partnership taxable year during which such liquidation occurs (other than those made pursuant to this requirement (3)), he is unconditionally obligated to restore the amount of such deficit balance to the partnership by the end of such taxable year (or, if later, within 90 days after the date of such liquidation), which amount shall, upon liquidation of the partnership, be paid to creditors of the partnership or distributed to other partners in accordance with their positive capital account balances (in accordance with requirement (2) of this paragraph (b)(2)(ii)(b)).

For purposes of the preceding sentence, a partnership taxable year shall be determined without regard to section 706(c)(2)(A). Requirements (2) and (3) of this paragraph (b)(2)(ii)(b) are not violated if all or part of the partnership interest of one or more partners is purchased (other than in connection with the liquidation of the partnership) by the partnership or by one or more partners (or one or more persons related, within the meaning of section 267(b) (without modification by section 267(e)(1)) or section 707(b)(1), to a partner) pursuant to an agreement negotiated at arm's length by persons who at the time such agreement is entered into have materially adverse interests and if a principal purpose of such purchase and sale is not to avoid the principles of the second sentence of paragraph (b)(2)(ii)(a) of this section. In addition, requirement (2) of this paragraph (b)(2)(ii)(b) is not violated if, upon the liquidation of the partnership, the capital accounts of the partners are increased or decreased pursuant to paragraph (b)(2)(iv)(f) of this section as of the date of such liquidation and the partnership makes liquidating distributions within the time set out in that requirement (2) in the ratios of the partners' positive capital accounts, except that it does not distribute reserves reasonably required to provide for liabilities (contingent or otherwise) of the partnership and installment obligations owed to the partnership, so long as such withheld amounts are distributed as soon as practicable and in the ratios of the partners' positive capital account balances. See examples (1)(i) and (ii), (4)(i), (8)(i), and (16)(i) of paragraph (b)(5) of this section.

(c) Obligation to restore deficit. If a partner is not expressly obligated to restore the deficit balance in his capital account, such partner nevertheless will be treated as obligated to restore the deficit balance in his capital account (in accordance with requirement (3) of paragraph (b)(2)(ii)(b) of this section) to the extent of--

(1) The outstanding principal balance of any promissory note (of which such partner is the maker) contributed to the partnership by such partner (other than a promissory note that is readily tradable on an established securities market), and

(2) The amount of any unconditional obligation of such partner (whether imposed by the partnership agreement or by State or local law) to make subsequent contributions to the partnership (other than pursuant to a promissory note of which such partner is the maker),

provided that such note or obligation is required to be satisfied at a time no later than the end of the partnership taxable year in which such partner's interest is liquidated (or, if later, within 90 days after the date of such liquidation). If a promissory note referred to in the previous sentence is negotiable, a partner will be considered required to satisfy such note within the time period specified in such sentence if the partnership agreement provides that, in lieu of actual satis-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

faction, the partnership will retain such note and such partner will contribute to the partnership the excess, if any, of the outstanding principal balance of such note over its fair market value at the time of liquidation. See paragraph (b)(2)(iv)(d)(2) of this section. See examples (1)(ix) and (x) of paragraph (b)(5) of this section. A partner in no event will be considered obligated to restore the deficit balance in his capital account to the partnership (in accordance with requirement (3) of paragraph (b)(2)(ii)(b) of this section) to the extent such partner's obligation is not legally enforceable, or the facts and circumstances otherwise indicate a plan to avoid or circumvent such obligation. See paragraphs (b)(2)(ii)(f), (b)(2)(ii)(h), and (b)(4)(vi) of this section for other rules regarding such obligation. For purposes of this paragraph (b)(2), if a partner contributes a promissory note to the partnership during a partnership taxable year beginning after December 29, 1988 and the maker of such note is a person related to such partner (within the meaning of s 1.752-1T(h), but without regard to subdivision (4) of that section), then such promissory note shall be treated as a promissory note of which such partner is the maker.

(d) Alternate test for economic effect. If--

(1) Requirements (1) and (2) of paragraph (b)(2)(ii)(b) of this section are satisfied, and

(2) The partner to whom an allocation is made is not obligated to restore the deficit balance in his capital account to the partnership (in accordance with requirement (3) of paragraph (b)(2)(ii)(b) of this section), or is obligated to restore only a limited dollar amount of such deficit balance, and

(3) The partnership agreement contains a "qualified income offset,"

such allocation will be considered to have economic effect under this paragraph (b)(2)(ii)(d) to the extent such allocation does not cause or increase a deficit balance in such partner's capital account (in excess of any limited dollar amount of such deficit balance that such partner is obligated to restore) as of the end of the partnership taxable year to which such allocation relates. In determining the extent to which the previous sentence is satisfied, such partner's capital account also shall be reduced for--

(4) Adjustments that, as of the end of such year, reasonably are expected to be made to such partner's capital account under paragraph (b)(2)(iv)(k) of this section for depletion allowances with respect to oil and gas properties of the partnership, and

(5) Allocations of loss and deduction that, as of the end of such year, reasonably are expected to be made to such partner pursuant to section 704(e)(2), section 706(d), and paragraph (b)(2)(ii) of s 751-1, and

(6) Distributions that, as of the end of such year, reasonably are expected to be made to such partner to the extent they exceed offsetting increases to such partner's capital account that reasonably are expected to occur during (or prior to) the partnership taxable years in which such distributions reasonably are expected to be made (other than increases pursuant to a minimum gain chargeback under paragraph (b)(4)(iv)(e) of this section or under s 1.704- 2(f); however, increases to a partner's capital account pursuant to a minimum gain chargeback requirement are taken into account as an offset to distributions of nonrecourse liability proceeds that are reasonably expected to be made and that are allocable to an increase in partnership minimum gain) under s 1.704-2(f).

For purposes of determining the amount of expected distributions and expected capital account increases described in (6) above, the rule set out in paragraph (b)(2)(iii)(c) of this section concerning the presumed value of partnership property shall apply. The partnership agreement contains a "qualified income offset" if, and only if, it provides that a partner who unexpectedly receives an adjustment, allocation, or distribution described in (4), (5), or (6) above, will be allocated items

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

of income and gain (consisting of a pro rata portion of each item of partnership income, including gross income, and gain for such year) in an amount and manner sufficient to eliminate such deficit balance as quickly as possible. Allocations of items of income and gain made pursuant to the immediately preceding sentence shall be deemed to be made in accordance with the partners' interests in the partnership if requirements (1) and (2) of paragraph (b)(2)(ii)(b) of this section are satisfied. See examples (1)(iii), (iv), (v), (vi), (viii), (ix), and (x), (15), and (16)(ii) of paragraph (b)(5) of this section.

(e) Partial economic effect. If only a portion of an allocation made to a partner with respect to a partnership taxable year has economic effect, both the portion that has economic effect and the portion that is reallocated shall consist of a pro-portionate share of all items that made up the allocation to such partner for such year. See examples (15)(ii) and (iii) of paragraph (b)(5) of this section.

(f) Reduction of obligation to restore. If requirements (1) and (2) of paragraph (b)(2)(ii)(b) of this section are satisfied, a partner's obligation to restore the deficit balance in his capital account (or any limited dollar amount thereof) to the partnership may be eliminated or reduced as of the end of a partnership taxable year without affecting the validity of prior allocations (see paragraph (b)(4)(vi) of this section) to the extent the deficit balance (if any) in such partner's capital account, after reduction for the items described in (4), (5), and (6) of paragraph (b)(2)(ii)(d) of this section, will not exceed the partner's remaining obligation (if any) to restore the deficit balance in his capital account. See example (1)(viii) of paragraph (b)(5) of this section.

(g) Liquidation defined. For purposes of this paragraph, a liquidation of a partner's interest in the partnership occurs upon the earlier of (1) the date upon which there is a liquidation of the partnership, or (2) the date upon which there is a liquidation of the partner's interest in the partnership under paragraph (d) of s 1.761-1. For purposes of this paragraph, the liquidation of a partnership occurs upon the earlier of (3) the date upon which the partnership is terminated under section 708(b)(1), or (4) the date upon which the partnership ceases to be a going concern (even though it may continue in existence for the purpose of winding up its affairs, paying its debts, and distributing any remaining balance to its partners). Requirements (2) and (3) of paragraph (b)(2)(ii)(b) of this section will be considered unsatisfied if the liquidation of a partner's interest in the partnership is delayed after its primary business activities have been terminated (for example, by continuing to engage in a relatively minor amount of business activity, if such actions themselves do not cause the partnership to terminate pursuant to section 708(b)(1)) for a principal purpose of deferring any distribution pursuant to requirement (2) of paragraph (b)(2)(ii)(b) of this section or deferring any partner's obligations under requirement (3) of paragraph (b)(2)(ii)(b) of this section.

(h) Partnership agreement defined. For purposes of this paragraph, the partnership agreement includes all agreements among the partners, or between one or more partners and the partnership, concerning affairs of the partnership and responsibilities of partners, whether oral or written, and whether or not embodied in a document referred to by the partners as the partnership agreement. Thus, in determining whether distributions are required in all cases to be made in accordance with the partners' positive capital account balances (requirement (2) of paragraph (b)(2)(ii)(b) of this section), and in determining the extent to which a partner is obligated to restore a deficit balance in his capital account (requirement (3) of paragraph (b)(2)(ii)(b) of this section), all arrangements among partners, or between one or more partners and the partnership relating to the partnership, direct and indirect, including puts, options, and other buy-sell agreements, and any other "stop-loss" arrangement, are considered to be part of the partnership agreement. (Thus, for example, if one partner who assumes a liability of the partnership is indemnified by another partner for a portion of such liability, the indemnifying partner (depending upon the particular facts) may be viewed as in effect having a partial deficit makeup obligation as a result of such indemnity agreement.) In addition, the partnership agreement includes provisions of Federal, State, or local law that govern the affairs of the partnership or are considered under such law to be a part of the partnership agreement (see the last sentence of paragraph (c) of s 1.761-1). For purposes of this paragraph (b)(2)(ii)(h), an agreement with

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

a partner or a partnership shall include an agreement with a person related, within the meaning of section 267(b) (without modification by section 267(e)(1)) or section 707(b)(1), to such partner or partnership. For purposes of the preceding sentence, sections 267(b) and 707(b)(1) shall be applied for partnership taxable years beginning after December 29, 1988 by (1) substituting "80 percent or more" for "more than 50 percent" each place it appears in such sections, (2) excluding brothers and sisters from the members of a person's family, and (3) disregarding s 267(f)(1)(A).

(i) Economic effect equivalence. Allocations made to a partner that do not otherwise have economic effect under this paragraph (b)(2)(ii) shall nevertheless be deemed to have economic effect, provided that as of the end of each partnership taxable year a liquidation of the partnership at the end of such year or at the end of any future year would produce the same economic results to the partners as would occur if requirements (1), (2), and (3) of paragraph (b)(2)(ii)(b) of this section had been satisfied, regardless of the economic performance of the partnership. See examples (4)(ii) and (iii) of paragraph (b)(5) of this section.

**(iii) Substantiality**--(a) General rules. Except as otherwise provided in this paragraph (b)(2)(iii), the economic effect of an allocation (or allocations) is substantial if there is a reasonable possibility that the allocation (or allocations) will affect substantially the dollar amounts to be received by the partners from the partnership, independent of tax consequences. Notwithstanding the preceding sentence, the economic effect of an allocation (or allocations) is not substantial if, at the time the allocation becomes part of the partnership agreement, (1) the after-tax economic consequences of at least one partner may, in present value terms, be enhanced compared to such consequences if the allocation (or allocations) were not contained in the partnership agreement, and (2) there is a strong likelihood that the after-tax economic consequences of no partner will, in present value terms, be substantially diminished compared to such consequences if the allocation (or allocations) were not contained in the partnership agreement. In determining the after-tax economic benefit or detriment to a partner, tax consequences that result from the interaction of the allocation with such partner's tax attributes that are unrelated to the partnership will be taken into account. See examples (5) and (9) of paragraph (b)(5) of this section. The economic effect of an allocation is not substantial in the two situations described in paragraphs (b)(2)(iii)(b) and (c) of this section. However, even if an allocation is not described therein, its economic effect may be insubstantial under the general rules stated in this paragraph (b)(2)(iii)(a). References in this paragraph (b)(2)(iii) to allocations include capital account adjustments made pursuant to paragraph (b)(2)(iv)(k) of this section.

(b) Shifting tax consequences. The economic effect of an allocation (or allocations) in a partnership taxable year is not substantial if, at the time the allocation (or allocations) becomes part of the partnership agreement, there is a strong likelihood that--

(1) The net increases and decreases that will be recorded in the partners' respective capital accounts for such taxable year will not differ substantially from the net increases and decreases that would be recorded in such partners' respective capital accounts for such year if the allocations were not contained in the partnership agreement, and

(2) The total tax liability of the partners (for their respective taxable years in which the allocations will be taken into account) will be less than if the allocations were not contained in the partnership agreement (taking into account tax consequences that result from the interaction of the allocation (or allocations) with partner tax attributes that are unrelated to the partnership).

If, at the end of a partnership taxable year to which an allocation (or allocations) relates, the net increases and decreases that are recorded in the partners' respective capital accounts do not differ substantially from the net increases and decreases that would have been recorded in such partners' respective capital accounts had the allocation (or allocations) not been contained in the partnership agreement, and the total tax liability of the partners is (as described in (2) above) less

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

than it would have been had the allocation (or allocations) not been contained in the partnership agreement, it will be presumed that, at the time the allocation (or allocations) became part of such partnership agreement, there was a strong likelihood that these results would occur. This presumption may be overcome by a showing of facts and circumstances that prove otherwise. See examples (6), (7)(ii) and (iii), and (10)(ii) of paragraph (b)(5) of this section.

(c) Transitory allocations. If a partnership agreement provides for the possibility that one or more allocations (the "original allocation(s)") will be largely offset by one or more other allocations (the "offsetting allocation(s)"), and, at the time the allocations become part of the partnership agreement, there is a strong likelihood that--

(1) The net increases and decreases that will be recorded in the partners' respective capital accounts for the taxable years to which the allocations relate will not differ substantially from the net increases and decreases that would be recorded in such partners' respective capital accounts for such years if the original allocation(s) and offsetting allocation(s) were not contained in the partnership agreement, and

(2) The total tax liability of the partners (for their respective taxable years in which the allocations will be taken into account) will be less than if the allocations were not contained in the partnership agreement (taking into account tax consequences that result from the interaction of the allocation (or allocations) with partner tax attributes that are unrelated to the partnership) the economic effect of the original allocation(s) and offsetting allocation(s) will not be substantial. If, at the end of a partnership taxable year to which an offsetting allocation(s) relates, the net increases and decreases recorded in the partners' respective capital accounts do not differ substantially from the net increases and decreases that would have been recorded in such partners' respective capital accounts had the original allocation(s) and the offsetting allocation(s) not been contained in the partnership agreement, and the total tax liability of the partners is (as described in (2) above) less than it would have been had such allocations not been contained in the partnership agreement, it will be presumed that, at the time the allocations became part of the partnership agreement, there was a strong likelihood that these results would occur. This presumption may be overcome by a showing of facts and circumstances that prove otherwise. See examples (1)(xi), (2), (3), (7), (8)(ii), and (17) of paragraph (b)(5) of this section. Notwithstanding the foregoing, the original allocation(s) and the offsetting allocation(s) will not be insubstantial (under this paragraph (b)(2)(iii)(c)) and, for purposes of paragraph (b)(2)(iii)(a), it will be presumed that there is a reasonable possibility that the allocations will affect substantially the dollar amounts to be received by the partners from the partnership if, at the time the allocations become part of the partnership agreement, there is a strong likelihood that the offsetting allocation(s) will not, in large part, be made within five years after the original allocation(s) is made (determined on a first-in, first-out basis). See example (2) of paragraph (b)(5) of this section. For purposes of applying the provisions of this paragraph (b)(2)(iii) (and paragraphs (b)(2)(ii)(d)(6) and (b)(3)(iii) of this section), the adjusted tax basis of partnership property (or, if partnership property is properly reflected on the books of the partnership at a book value that differs from its adjusted tax basis, the book value of such property) will be presumed to be the fair market value of such property, and adjustments to the adjusted tax basis (or book value) of such property will be presumed to be matched by corresponding changes in such property's fair market value. Thus, there cannot be a strong likelihood that the economic effect of an allocation (or allocations) will be largely offset by an allocation (or allocations) of gain or loss from the disposition of partnership property. See examples (1)(vi) and (xi) of paragraph (b)(5) of this section.

**(iv) Maintenance of capital accounts**--(a) In general. The economic effect test described in paragraph (b)(2)(ii) of this section requires an examination of the capital accounts of the partners of a partnership, as maintained under the partnership agreement. Except as otherwise provided in paragraph (b)(2)(ii)(i) of this section, an allocation of income, gain, loss, or deduction will not have economic effect under paragraph (b)(2)(ii) of this section, and will not be deemed to be in accordance with a partner's interest in the partnership under paragraph (b)(4) of this section, unless the capital accounts of the partners are determined and maintained throughout the full term of the partnership in accordance with the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

capital accounting rules of this paragraph (b)(2)(iv).

(b) Basic rules. Except as otherwise provided in this paragraph (b)(2)(iv), the partners' capital accounts will be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) if, and only if, each partner's capital account is increased by (1) the amount of money contributed by him to the partnership, (2) the fair market value of property contributed by him to the partnership (net of liabilities secured by such contributed property that the partnership is considered to assume or take subject to under section 752), and (3) allocations to him of partnership income and gain (or items thereof), including income and gain exempt from tax and income and gain described in paragraph (b)(2)(iv)(g) of this section, but excluding income and gain described in paragraph (b)(4)(i) of this section; and is decreased by (4) the amount of money distributed to him by the partnership, (5) the fair market value of property distributed to him by the partnership (net of liabilities secured by such distributed property that such partner is considered to assume or take subject to under section 752), (6) allocations to him of expenditures of the partnership described in section 705(a)(2)(B), and (7) allocations of partnership loss and deduction (or item thereof), including loss and deduction described in paragraph (b)(2)(iv)(g) of this section, but excluding items described in (6) above and loss or deduction described in paragraphs (b)(4)(i) or (b)(4)(iii) of this section; and is otherwise adjusted in accordance with the additional rules set forth in this paragraph (b)(2)(iv). For purposes of this paragraph, a partner who has more than one interest in a partnership shall have a single capital account that reflects all such interests, regardless of the class of interests owned by such partner (e.g., general or limited) and regardless of the time or manner in which such interests were acquired.

(c) Treatment of liabilities. For purposes of this paragraph (b)(2)(iv), (1) money contributed by a partner to a partnership includes the amount of any partnership liabilities that are assumed by such partner (other than liabilities described in paragraph (b)(2)(iv)(b)(5) of this section that are assumed by a distributee partner) but does not include increases in such partner's share of partnership liabilities (see section 752(a)), and (2) money distributed to a partner by a partnership includes the amount of such partner's individual liabilities that are assumed by the partnership (other than liabilities described in paragraph (b)(2)(iv)(b)(2) of this section that are not assumed by the partnership) but does not include decreases in such partner's share of partnership liabilities (see section 752(b)). For purposes of this paragraph (b)(2)(iv)(c), liabilities are considered assumed only to the extent the assuming party is thereby subjected to personal liability with respect to such obligation, the obligee is aware of the assumption and can directly enforce the assuming party's obligation, and, as between the assuming party and the party from whom the liability is assumed, the assuming party is ultimately liable.

(d) Contributed property--(1) In general. The basic capital accounting rules contained in paragraph (b)(2)(iv)(b) of this section require that a partner's capital account be increased by the fair market value of property contributed to the partnership by such partner on the date of contribution. See examples (13)(i) and (v) of paragraph (b)(5) of this section. Consistent with section 752(c), section 7701(g) does not apply in determining such fair market value.

(2) Contribution of promissory notes. Notwithstanding the general rule of paragraph (b)(2)(iv)(b)(2) of this section, except as provided in this paragraph (b)(2)(iv)(d)(2), if a promissory note is contributed to a partnership by a partner who is the maker of such note, such partner's capital account will be increased with respect to such note only when there is a taxable disposition of such note by the partnership or when the partner makes principal payments on such note. See example (1)(ix) of paragraph (b)(5) of this section. The first sentence of this paragraph (b)(2)(iv)(d)(2) shall not apply if the note referred to therein is readily tradable on an established securities market. See also paragraph (b)(2)(ii)(c) of this section. Furthermore, a partner whose interest is liquidated will be considered as satisfying his obligation to restore the deficit balance in his capital account to the extent of (i) the fair market value, at the time of contribution, of any negotiable promissory note (of which such partner is the maker) that such partner contributes to the partnership on or after the date his interest is liquidated and within the time specified in paragraph (b)(2)(ii)(b)(3) of this section, and (ii) the fair market value, at the time of liquidation, of the unsatisfied portion of any negotiable promissory note (of which such partner is

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD    Document 107-13    05/27/11    Page 12 of 62

the maker) that such partner previously contributed to the partnership. For purposes of the preceding sentence, the fair market value of a note will be no less than the outstanding principal balance of such note, provided that such note bears interest at a rate no less than the applicable federal rate at the time of valuation.

(3) Section 704(c) considerations. Section 704(c) governs the determination of the partner's distributive shares of income, gain, loss, and deduction, as computed for tax purposes, with respect to property contributed to a partnership (see paragraph (b)(1)(vi) of this section). In cases where section 704(c) applies to partnership property, the capital accounts of the partners will not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) unless the partnership agreement requires that the partners' capital accounts be adjusted in accordance with paragraph (b)(2)(iv)(g) of this section for allocation to them of depreciation, depletion, amortization, and gain and loss, as computed for book purposes, with respect to such property. See example (13)(i) of paragraph (b)(5) of this section.

(e) Distributed property--(1) In general. The basic capital accounting rules contained in paragraph (b)(2)(iv)(b) of this section require that a partner's capital account be decreased by the fair market value of property distributed by the partnership (without regard to section 7701(g)) to such partner (whether in connection with a liquidation or otherwise). To satisfy this requirement, the capital accounts of the partners first must be adjusted to reflect the manner in which the unrealized income, gain, loss, and deduction inherent in such property (that has not been reflected in the capital accounts previously) would be allocated among the partners if there were a taxable disposition of such property for the fair market value of such property (taking section 7701(g) into account) on the date of distribution. See example (14)(v) of paragraph (b)(5) of this section.

(2) Distribution of promissory notes. Notwithstanding the general rule of paragraph (b)(2)(iv)(b)(5), except as provided in this paragraph (b)(2)(iv)(e)(2), if a promissory note is distributed to a partner by a partnership that is the maker of such note, such partner's capital account will be decreased with respect to such note only when there is a taxable disposition of such note by the partner or when the partnership makes principal payments on the note. The previous sentence shall not apply if a note distributed to a partner by a partnership who is the maker of such note is readily tradable on an established securities market. Furthermore, the capital account of a partner whose interest in a partnership is liquidated will be reduced to the extent of (i) the fair market value, at the time of distribution, of any negotiable promissory note (of which such partnership is the maker) that such partnership distributes to the partner on or after the date such partner's interest is liquidated and within the time specified in paragraph (b)(2)(ii)(b)(2) of this section, and (ii) the fair market value, at the time of liquidation, of the unsatisfied portion of any negotiable promissory note (of which such partnership is the maker) that such partnership previously distributed to the partner. For purposes of the preceding sentence, the fair market value of a note will be no less than the outstanding principal balance of such note, provided that such note bears interest at a rate no less than the applicable federal rate at time of valuation.

(f) Revaluations of property. A partnership agreement may, upon the occurrence of certain events, increase or decrease the capital accounts of the partners to reflect a revaluation of partnership property (including intangible assets such as goodwill) on the partnership's books. Capital accounts so adjusted will not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) unless--

(1) The adjustments are based on the fair market value of partnership property (taking section 7701(g) into account) on the date of adjustment, and

(2) The adjustments reflect the manner in which the unrealized income, gain, loss, or deduction inherent in such property (that has not been reflected in the capital accounts previously) would be allocated among the partners if there were a taxable disposition of such property for such fair market value on that date, and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(3) The partnership agreement requires that the partners' capital accounts be adjusted in accordance with paragraph (b)(2)(iv)(g) of this section for allocations to them of depreciation, depletion, amortization, and gain or loss, as computed for book purposes, with respect to such property, and

(4) The partnership agreement requires that the partners' distributive shares of depreciation, depletion, amortization, and gain or loss, as computed for tax purposes, with respect to such property be determined so as to take account of the variation between the adjusted tax basis and book value of such property in the same manner as under section 704(c) (see paragraph (b)(4)(i) of this section), and

(5) The adjustments are made principally for a substantial non-tax business purpose--

(i) In connection with a contribution of money or other property (other than a de minimis amount) to the partnership by a new or existing partner as consideration for an interest in the partnership, or

(ii) In connection with the liquidation of the partnership or a distribution of money or other property (other than a de minimis amount) by the partnership to a retiring or continuing partner as consideration for an interest in the partnership, or

(iii) Under generally accepted industry accounting practices, provided substantially all of the partnership's property (excluding money) consists of stock, securities, commodities, options, warrants, futures, or similar instruments that are readily tradable on an established securities market.

See examples 14 and 18 of paragraph (b)(5) of this section. If the capital accounts of the partners are not adjusted to reflect the fair market value of partnership property when an interest in the partnership is acquired from or relinquished to the partnership, paragraphs (b)(1)(iii) and (b)(1)(iv) of this section should be consulted regarding the potential tax consequences that may arise if the principles of section 704(c) are not applied to determine the partners' distributive shares of depreciation, depletion, amortization, and gain or loss as computed for tax purposes, with respect to such property.

(g) Adjustments to reflect book value--(1) In general. Under paragraphs (b)(2)(iv)(d) and (b)(2)(iv)(f) of this section, property may be properly reflected on the books of the partnership at a book value that differs from the adjusted tax basis of such property. In these circumstances, paragraphs (b)(2)(iv)(d)(3) and (b)(2)(iv)(f)(3) of this section provide that the capital accounts of the partners will not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) unless the partnership agreement requires the partners' capital accounts to be adjusted in accordance with this paragraph (b)(2)(iv)(g) for allocations to them of depreciation, depletion, amortization, and gain or loss, as computed for book purposes, with respect to such property. In determining whether the economic effect of an allocation of book items is substantial, consideration will be given to the effect of such allocation on the determination of the partners' distributive shares of corresponding tax items under section 704(c) and paragraph (b)(4)(i) of this section. See example (17) of paragraph (b)(5) of this section. If an allocation of book items under the partnership agreement does not have substantial economic effect (as determined under paragraphs (b)(2)(ii) and (b)(2)(iii) of this section), or is not otherwise respected under this paragraph, such items will be reallocated in accordance with the partners' interests in the partnership, and such reallocation will be the basis upon which the partners' distributive shares of the corresponding tax items are determined under section 704(c) and paragraph (b)(4)(i) of this section. See examples 13, 14, and 18 of paragraph (b)(5) of this section.

(2) Payables and receivables. References in this paragraph (b)(2)(iv) and paragraph (b)(4)(i) of this section to book and tax depreciation, depletion, amortization, and gain or loss with respect to property that has an adjusted tax basis that differs from book value include, under analogous rules and principles, the unrealized income or deduction with respect to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

accounts receivable, accounts payable, and other accrued but unpaid items.

(3) Determining amount of book items. The partners' capital accounts will not be considered adjusted in accordance with this paragraph (b)(2)(iv)(g) unless the amount of book depreciation, depletion, or amortization for a period with respect to an item of partnership property is the amount that bears the same relationship to the book value of such property as the depreciation (or cost recovery deduction), depletion, or amortization computed for tax purposes with respect to such property for such period bears to the adjusted tax basis of such property. If such property has a zero adjusted tax basis, the book depreciation, depletion, or amortization may be determined under any reasonable method selected by the partnership.

(h) Determinations of fair market value. For purposes of this paragraph (b)(2)(iv), the fair market value assigned to property contributed to a partnership, property distributed by a partnership, or property otherwise revalued by a partnership, will be regarded as correct, provided that (1) such value is reasonably agreed to among the partners in arm's-length negotiations, and (2) the partners have sufficiently adverse interests. If, however, these conditions are not satisfied and the value assigned to such property is overstated or understated (by more than an insignificant amount), the capital accounts of the partners will not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv). Valuation of property contributed to the partnership, distributed by the partnership, or otherwise revalued by the partnership shall be on a property-by-property basis, except to the extent the regulations under section 704(c) permit otherwise.

(i) Section 705(a)(2)(B) expenditures--(1) In general. The basic capital accounting rules contained in paragraph (b)(2)(iv)(b) of this section require that a partner's capital account be decreased by allocations made to such partner of expenditures described in section 705(a)(2)(B). See example 11 of paragraph (b)(5) of this section. If an allocation of these expenditures under the partnership agreement does not have substantial economic effect (as determined under paragraphs (b)(2)(ii) and (b)(2)(iii) of this section), or is not otherwise respected under this paragraph, such expenditures will be reallocated in accordance with the partners' interest in the partnership.

(2) Expenses described in section 709. Except for amounts with respect to which an election is properly made under section 709(b), amounts paid or incurred to organize a partnership or to promote the sale of (or to sell) an interest in such a partnership shall, solely for purposes of this paragraph, be treated as section 705(a)(2)(B) expenditures, and upon liquidation of the partnership no further capital account adjustments will be made in respect thereof.

(3) Disallowed losses. If a deduction for a loss incurred in connection with the sale or exchange of partnership property is disallowed to the partnership under section 267(a)(1) or section 707(b), that deduction shall, solely for purposes of this paragraph, be treated as a section 705(a)(2)(B) expenditure.

(j) Basis adjustments to section 38 property. The capital accounts of the partners will not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) unless such capital accounts are adjusted by the partners' shares of any upward or downward basis adjustments allocated to them under this paragraph (b)(2)(iv)(j). When there is a reduction in the adjusted tax basis of partnership section 38 property under section 48(q)(1) or section 48(q)(3), section 48(q)(6) provides for an equivalent downward adjustment to the aggregate basis of partnership interests (and no additional adjustment is made under section 705(a)(2)(B)). These downward basis adjustments shall be shared among the partners in the same proportion as the adjusted tax basis or cost of (or the qualified investment in) such section 38 property is allocated among the partners under paragraph (f) of s 1.46-3 (or paragraph (a)(4)(iv) of s 1.48-8). Conversely, when there is an increase in the adjusted tax basis of partnership section 38 property under section 48(q)(2), section 48(q)(6) provides for an equivalent upward adjustment to the aggregate basis of partnership interests. These upward ad-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

justments shall be allocated among the partners in the same proportion as the investment tax credit from such property is recaptured by the partners under s 1.47-6.

(k) Depletion of oil and gas properties--(1) In general. The capital accounts of the partners will not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) unless such capital accounts are adjusted for depletion and gain or loss with respect to the oil or gas properties of the partnership in accordance with this paragraph (b)(2)(iv)(k).

(2) Simulated depletion. Except as provided in paragraph (b)(2)(iv)(k)(3) of this section, a partnership shall, solely for purposes of maintaining capital accounts under this paragraph, compute simulated depletion allowances with respect to its oil and gas properties at the partnership level. These allowances shall be computed on each depletable oil or gas property of the partnership by using either the cost depletion method or the percentage depletion method (computed in accordance with section 613 at the rates specified in section 613A(c)(5) without regard to the limitations of section 613A, which theoretically could apply to any partner) for each partnership taxable year that the property is owned by the partnership and subject to depletion. The choice between the simulated cost depletion method and the simulated percentage depletion method shall be made on a property-by-property basis in the first partnership taxable year beginning after April 30, 1986, for which it is relevant for the property, and shall be binding for all partnership taxable years during which the oil or gas property is held by the partnership. The partnership shall make downward adjustments to the capital accounts of the partners for the simulated depletion allowance with respect to each oil or gas property of the partnership, in the same proportion as such partners (or their predecessors in interest) were properly allocated the adjusted tax basis of each such property. The aggregate capital account adjustments for simulated percentage depletion allowances with respect to an oil or gas property of the partnership shall not exceed the aggregate adjusted tax basis allocated to the partners with respect to such property. Upon the taxable disposition of an oil or gas property by a partnership, such partnership's simulated gain or loss shall be determined by subtracting its simulated adjusted basis in such property from the amount realized upon such disposition. (The partnership's simulated adjusted basis in an oil or gas property is determined in the same manner as adjusted tax basis except that simulated depletion allowances are taken into account instead of actual depletion allowances.) The capital accounts of the partners shall be adjusted upward by the amount of any simulated gain in proportion to such partners' allocable shares of the portion of the total amount realized from the disposition of such property that exceeds the partnership's simulated adjusted basis in such property. The capital accounts of such partners shall be adjusted downward by the amount of any simulated loss in proportion to such partners' allocable shares of the total amount realized from the disposition of such property that represents recovery of the partnership's simulated adjusted basis in such property. See section 613A(c)(7)(D) and the regulations thereunder and paragraph (b)(4)(v) of this section. See example (19)(iv) of paragraph (b)(5) of this section.

(3) Actual depletion. Pursuant to section 613A(c)(7)(D) and the regulations thereunder, the depletion allowance under section 611 with respect to the oil and gas properties of a partnership is computed separately by the partners. Accordingly, in lieu of adjusting the partner's capital accounts as provided in paragraph (b)(2)(iv)(k)(2) of this section, the partnership may make downward adjustments to the capital account of each partner equal to such partner's depletion allowance with respect to each oil or gas property of the partnership (for the partner's taxable year that ends with or within the partnership's taxable year). The aggregate adjustments to the capital account of a partner for depletion allowances with respect to an oil or gas property of the partnership shall not exceed the adjusted tax basis allocated to such partner with respect to such property. Upon the taxable disposition of an oil or gas property by a partnership, the capital account of each partner shall be adjusted upward by the amount of any excess of such partner's allocable share of the total amount realized from the disposition of such property over such partner's remaining adjusted tax basis in such property. If there is no such excess, the capital account of such partner shall be adjusted downward by the amount of any excess of such partner's remaining adjusted tax basis in such property over such partner's allocable share of the total amount realized

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

from the disposition thereof. See section 613A(c)(7)(4)(D) and the regulations thereunder and paragraph (b)(4)(v) of this section.

(4) Effect of book values. If an oil or gas property of the partnership is, under paragraphs (b)(2)(iv)(d) or (b)(2)(iv)(f) of this section, properly reflected on the books of the partnership at a book value that differs from the adjusted tax basis of such property, the rules contained in this paragraph (b)(2)(iv)(k) and paragraph (b)(4)(v) of this section shall be applied with reference to such book value. A revaluation of a partnership oil or gas property under paragraph (b)(2)(iv)(f) of this section may give rise to a reallocation of the adjusted tax basis of such property, or a change in the partners' relative shares of simulated depletion from such property, only to the extent permitted by section 613A(c)(7)(D) and the regulations thereunder.

(l) Transfers of partnership interests. The capital accounts of the partners will not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) unless, upon the transfer of all or a part of an interest in the partnership, the capital account of the transferor that is attributable to the transferred interest carries over to the transferee partner. (See paragraph (b)(2)(iv)(m) of this section for rules concerning the effect of a section 754 election on the capital accounts of the partners.) However, if the transfer of an interest in a partnership causes a termination of the partnership under section 708(b)(1)(B), the capital account that carries over to the transferee partner will be adjusted in accordance with paragraph (b)(2)(iv)(e) of this section in connection with the constructive liquidation of the partnership under paragraph (b)(1)(iv) of s 1.708-1. Moreover, the constructive reformation of such partnership will, for purposes of this paragraph, be treated as the formation of a new partnership, and the capital accounts of the partners of such new partnership will be determined and maintained accordingly. See example 13 of paragraph (b)(5) of this section.

(m) Section 754 elections--(1) In general. The capital accounts of the partners will not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) unless, upon adjustment to the adjusted tax basis of partnership property under section 732, 734, or 743, the capital accounts of the partners are adjusted as provided in this paragraph (b)(2)(iv)(m).

(2) Section 743 adjustments. In the case of a transfer of all or a part of an interest in a partnership that has a section 754 election in effect for the partnership taxable year in which such transfer occurs, adjustments to the adjusted tax basis of partnership property under section 743 shall not be reflected in the capital account of the transferee partner or on the books of the partnership, and subsequent capital account adjustments for distributions (see paragraph (b)(2)(iv)(e)(1) of this section) and for depreciation, depletion, amortization, and gain or loss with respect to such property will disregard the effect of such basis adjustment. The preceding sentence shall not apply to the extent such basis adjustment is allocated to the common basis of partnership property under paragraph (b)(1) of s 1.734-2; in these cases, such basis adjustment shall, except as provided in paragraph (b)(2)(iv)(m)(5) of this section, give rise to adjustments to the capital accounts of the partners in accordance with their interests in the partnership under paragraph (b)(3) of this section. See examples (13)(iii) and (iv) of paragraph (b)(5) of this section.

(3) Section 732 adjustments. In the case of a transfer of all or a part of an interest in a partnership that does not have a section 754 election in effect for the partnership taxable year in which such transfer occurs, adjustments to the adjusted tax basis of partnership property under section 732(d) will be treated in the capital accounts of the partners in the same manner as section 743 basis adjustments are treated under paragraph (b)(2)(iv)(m)(2) of this section.

(4) Section 734 adjustments. Except as provided in paragraph (b)(2)(iv)(m)(5) of this section, in the case of a distribution of property in liquidation of a partner's interest in the partnership by a partnership that has a section 754 election in effect for the partnership taxable year in which the distribution occurs, the partner who receives the distribution that gives rise

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

to the adjustment to the adjusted tax basis of partnership property under section 734 shall have a corresponding adjustment made to his capital account. If such distribution is made other than in liquidation of a partner's interest in the partnership, however, except as provided in paragraph (b)(2)(iv)(m)(5) of this section, the capital accounts of the partners shall be adjusted by the amount of the adjustment to the adjusted tax basis of partnership property under section 734, and such capital account adjustment shall be shared among the partners in the manner in which the unrealized income and gain that is displaced by such adjustment would have been shared if the property whose basis is adjusted were sold immediately prior to such adjustment for its recomputed adjusted tax basis.

(5) Limitations on adjustments. Adjustments may be made to the capital account of a partner (or his successor in interest) in respect of basis adjustments to partnership property under sections 732, 734, and 743 only to the extent that such basis adjustments (i) are permitted to be made to one or more items of partnership property under section 755, and (ii) result in an increase or a decrease in the amount at which such property is carried on the partnership's balance sheet, as computed for book purposes. For example, if the book value of partnership property exceeds the adjusted tax basis of such property, a basis adjustment to such property may be reflected in a partner's capital account only to the extent such adjustment exceeds the difference between the book value of such property and the adjusted tax basis of such property prior to such adjustment.

(n) Partnership level characterization. Except as otherwise provided in paragraph (b)(2)(iv)(k) of this section, the capital accounts of the partners will not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) unless adjustments to such capital accounts in respect of partnership income, gain, loss, deduction, and section 705(a)(2)(B) expenditures (or item thereof) are made with reference to the Federal tax treatment of such items (and in the case of book items, with reference to the Federal tax treatment of the corresponding tax items) at the partnership level, without regard to any requisite or elective tax treatment of such items at the partner level (for example, under section 58(i)). However, a partnership that incurs mining exploration expenditures will determine the Federal tax treatment of income, gain, loss, and deduction with respect to the property to which such expenditures relate at the partnership level only after first taking into account the elections made by its partners under section 617 and section 703(b)(4).

(o) Guaranteed payments. Guaranteed payments to a partner under section 707(c) cause the capital account of the recipient partner to be adjusted only to the extent of such partner's distributive share of any partnership deduction, loss, or other downward capital account adjustment resulting from such payment.

(p) Minor discrepancies. Discrepancies between the balances in the respective capital accounts of the partners and the balances that would be in such respective capital accounts if they had been determined and maintained in accordance with this paragraph (b)(2)(iv) will not adversely affect the validity of an allocation, provided that such discrepancies are minor and are attributable to good faith error by the partnership.

(q) Adjustments where guidance is lacking. If the rules of this paragraph (b)(2)(iv) fail to provide guidance on how adjustments to the capital accounts of the partners should be made to reflect particular adjustments to partnership capital on the books of the partnership, such capital accounts will not be considered to be determined and maintained in accordance with those rules unless such capital account adjustments are made in a manner that (1) maintains equality between the aggregate governing capital accounts of the partners and the amount of partnership capital reflected on the partnership's balance sheet, as computed for book purposes, (2) is consistent with the underlying economic arrangement of the partners, and (3) is based, wherever practicable, on Federal tax accounting principles.

(r) Restatement of capital accounts. With respect to partnerships that began operating in a taxable year beginning before May 1, 1986, the capital accounts of the partners of which have not been determined and maintained in accordance with

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

the rules of this paragraph (b)(2)(iv) since inception, such capital accounts shall not be considered to be determined and maintained in accordance with the rules of this paragraph (b)(2)(iv) for taxable years beginning after April 30, 1986, unless either--

(1) Such capital accounts are adjusted, effective for the first partnership taxable year beginning after April 30, 1986, to reflect the fair market value of partnership property as of the first day of such taxable year, and in connection with such adjustment, the rules contained in paragraph (b)(2)(iv)(f) (2), (3), and (4) of this section are satisfied, or

(2) the differences between the balance in each partner's capital account and the balance that would be in such partner's capital account if capital accounts had been determined and maintained in accordance with this paragraph (b)(2)(iv) throughout the full term of the partnership are not significant (for example, such differences are solely attributable to a failure to provide for treatment of section 709 expenses in accordance with the rules of paragraph (b)(2)(iv)(i)(2) of this section or to a failure to follow the rules in paragraph (b)(2)(iv)(m) of this section), and capital accounts are adjusted to bring them into conformity with the rules of this paragraph (b)(2)(iv) no later than the end of the first partnership taxable year beginning after April 30, 1986.

With respect to a partnership that began operating in a taxable year beginning before May 1, 1986, modifications to the partnership agreement adopted on or before November 1, 1988, to make the capital account adjustments required to comply with this paragraph, and otherwise to satisfy the requirements of this paragraph, will be treated as if such modifications were included in the partnership agreement before the end of the first partnership taxable year beginning after April 30, 1986. However, compliance with the previous sentences will have no bearing on the validity of allocations that relate to partnership taxable years beginning before May 1, 1986.

**(3) Partner's interest in the partnership--(i) In general.** References in section 704(b) and this paragraph to a partner's interest in the partnership, or to the partners' interests in the partnership, signify the manner in which the partners have agreed to share the economic benefit or burden (if any) corresponding to the income, gain, loss, deduction, or credit (or item thereof) that is allocated. Except with respect to partnership items that cannot have economic effect (such as nonrecourse deductions of the partnership), this sharing arrangement may or may not correspond to the overall economic arrangement of the partners. Thus, a partner who has a 50 percent overall interest in the partnership may have a 90 percent interest in a particular item of income or deduction. (For example, in the case of an unexpected downward adjustment to the capital account of a partner who does not have a deficit make-up obligation that causes such partner to have a negative capital account, it may be necessary to allocate a disproportionate amount of gross income of the partnership to such partner for such year so as to bring that partner's capital account back up to zero.) The determination of a partner's interest in a partnership shall be made by taking into account all facts and circumstances relating to the economic arrangement of the partners. All partners' interests in the partnership are presumed to be equal (determined on a per capita basis). However, this presumption may be rebutted by the taxpayer or the Internal Revenue Service by establishing facts and circumstances that show that the partners' interests in the partnership are otherwise.

**(ii) Factors considered.** In determining a partner's interest in the partnership, the following factors are among those that will be considered:

(a) The partners' relative contributions to the partnership,

(b) The interests of the partners in economic profits and losses (if different than that in taxable income or loss),

(c) The interests of the partners in cash flow and other non-liquidating distributions, and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(d) The rights of the partners to distributions of capital upon liquidation.

The provisions of this subparagraph (b)(3) are illustrated by examples (1)(i) and (ii), (4)(i), (5)(i) and (ii), (6), (7), (8), (10)(ii), (16)(i), and (19)(iii) of paragraph (b)(5) of this section. See paragraph (b)(4)(i) of this section concerning rules for determining the partners' interests in the partnership with respect to certain tax items.

**(iii) Certain determinations.** If--

(a) Requirements (1) and (2) of paragraph (b)(2)(ii)(b) of this section are satisfied, and

(b) All or a portion of an allocation of income, gain, loss, or deduction made to a partner for a partnership taxable year does not have economic effect under paragraph (b)(2)(ii) of this section.

the partners' interests in the partnership with respect to the portion of the allocation that lacks economic effect will be determined by comparing the manner in which distributions (and contributions) would be made if all partnership property were sold at book value and the partnership were liquidated immediately following the end of the taxable year to which the allocation relates with the manner in which distributions (and contributions) would be made if all partnership property were sold at book value and the partnership were liquidated immediately following the end of the prior taxable year, and adjusting the result for the items described in (4), (5), and (6) of paragraph (b)(2)(ii)(d) of this section. A determination made under this paragraph (b)(3)(iii) will have no force if the economic effect of valid allocations made in the same manner is insubstantial under paragraph (b)(2)(iii) of this section. See examples (1)(iv), (v), and (vi), and (15)(ii) and (iii) of paragraph (b)(5) of this section.

**(4) Special rules--(i) Allocations to reflect revaluations.** If partnership property is, under paragraphs (b)(2)(iv)(d) or (b)(2)(iv)(f) of this section, properly reflected in the capital accounts of the partners and on the books of the partnership at a book value that differs from the adjusted tax basis of such property, then depreciation, depletion, amortization, and gain or loss, as computed for book purposes, with respect to such property will be greater or less than the depreciation, depletion, amortization, and gain or loss, as computed for tax purposes, with respect to such property. In these cases the capital accounts of the partners are required to be adjusted solely for allocations of the book items to such partners (see paragraph (b)(2)(iv)(g) of this section), and the partners' shares of the corresponding tax items are not independently reflected by further adjustments to the partners' capital accounts. Thus, separate allocations of these tax items cannot have economic effect under paragraph (b)(2)(ii)(b)(1) of this section, and the partners' distributive shares of such tax items must (unless governed by section 704(c)) be determined in accordance with the partners' interests in the partnership. These tax items must be shared among the partners in a manner that takes account of the variation between the adjusted tax basis of such property and its book value in the same manner as variations between the adjusted tax basis and fair market value of property contributed to the partnership are taken into account in determining the partners' shares of tax items under section 704(c). See examples (14) and (18) of paragraph (b)(5) of this section.

**(ii) Credits.** Allocations of tax credits and tax credit recapture are not reflected by adjustments to the partners' capital accounts (except to the extent that adjustments to the adjusted tax basis of partnership section 38 property in respect of tax credits and tax credit recapture give rise to capital account adjustments under paragraph (b)(2)(iv)(j) of this section). Thus, such allocations cannot have economic effect under paragraph (b)(2)(ii)(b)(1) of this section, and the tax credits and tax credit recapture must be allocated in accordance with the partners' interests in the partnership as of the time the tax credit or credit recapture arises. With respect to the investment tax credit provided by section 38, allocations of cost or qualified investment made in accordance with paragraph (f) of s 1.46-3 and paragraph (a)(4)(iv) of s 1.48-8 shall be deemed to be made in accordance with the partners' interests in the partnership. With respect to other tax credits, if a partnership expenditure (whether or not deductible) that gives rise to a tax credit in a partnership taxable year also gives

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

rise to valid allocations of partnership loss or deduction (or other downward capital account adjustments) for such year, then the partners' interests in the partnership with respect to such credit (or the cost giving rise thereto) shall be in the same proportion as such partners' respective distributive shares of such loss or deduction (and adjustments). See example (11) of paragraph (b)(5) of this section. Identical principles shall apply in determining the partners' interests in the partnership with respect to tax credits that arise from receipts of the partnership (whether or not taxable).

**(iii) Excess percentage depletion.** To the extent the percentage depletion in respect of an item of depletable property of the partnership exceeds the adjusted tax basis of such property, allocations of such excess percentage depletion are not reflected by adjustments to the partners' capital accounts. Thus, such allocations cannot have economic effect under paragraph (b)(2)(ii)(b)(1) of this section, and such excess percentage depletion must be allocated in accordance with the partners' interests in the partnership. The partners' interests in the partnership for a partnership taxable year with respect to such excess percentage depletion shall be in the same proportion as such partners' respective distributive shares of gross income from the depletable property (as determined under section 613(c)) for such year. See example (12) of paragraph (b)(5) of this section. See paragraphs (b)(2)(iv)(k) and (b)(4)(v) of this section for special rules concerning oil and gas properties of the partnership.

**(iv) Allocations attributable to nonrecourse liabilities.** The rules for allocations attributable to nonrecourse liabilities are contained in s 1.704-2.

**(v) Allocations under section 613A(c)(7)(D).** Allocations of the adjusted tax basis of a partnership oil or gas property are controlled by section 613A(c)(7)(D) and the regulations thereunder. However, if the partnership agreement provides for an allocation of the adjusted tax basis of an oil or gas property among the partners, and such allocation is not otherwise governed under section 704(c) (or related principles under paragraph (b)(4)(i) of this section), that allocation will be recognized as being in accordance with the partners' interests in partnership capital under section 613A(c)(7)(D), provided (a) such allocation does not give rise to capital account adjustments under paragraph (b)(2)(iv)(k) of this section the economic effect of which is insubstantial (as determined under paragraph (b)(2)(iii) of this section), and (b) all other material allocations and capital account adjustments under the partnership agreement are recognized under this paragraph (b). Otherwise, such adjusted tax basis must be allocated among the partners pursuant to section 613A(c)(7)(D) in accordance with the partners' actual interests in partnership capital or income. For purposes of section 613A(c)(7)(D) the partners' allocable shares of the amount realized upon the partnership's taxable disposition of an oil or gas property will, except to the extent governed by section 704(c) (or related principles under paragraph (b)(4)(i) of this section), be determined under this paragraph (b)(4)(v). If, pursuant to paragraph (b)(2)(iv)(k)(2) of this section, the partners' capital accounts are adjusted to reflect the simulated depletion of an oil or gas property of the partnership, the portion of the total amount realized by the partnership upon the taxable disposition of such property that represents recovery of its simulated adjusted tax basis therein will be allocated to the partners in the same proportion as the aggregate adjusted tax basis of such property was allocated to such partners (or their predecessors in interest). If, pursuant to paragraph (b)(2)(iv)(k)(3) of this section, the partners' capital accounts are adjusted to reflect the actual depletion of an oil or gas property of the partnership, the portion of the total amount realized by the partnership upon the taxable disposition of such property that equals the partners' aggregate remaining adjusted basis therein will be allocated to the partners in proportion to their respective remaining adjusted tax bases in such property. An allocation provided by the partnership agreement of the portion of the total amount realized by the partnership on its taxable disposition of an oil or gas property that exceeds the portion of the total amount realized allocated under either of the previous two sentences (whichever is applicable) shall be deemed to be made in accordance with the partners' allocable shares of such amount realized, provided (c) such allocation does not give rise to capital account adjustments under paragraph (b)(2)(iv)(k) of this section the economic effect of which is insubstantial (as determined under paragraph (b)(2)(ii) of this section), and (d) all other allocations and capital account adjustments under the partnership agreement are recognized under this paragraph. Otherwise, the partners' al-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

locable shares of the total amount realized by the partnership on its taxable disposition of an oil or gas property shall be determined in accordance with the partners' interests in the partnership under paragraph (b)(3) of this section. See example (19) of paragraph (b)(5) of this section. (See paragraph (b)(2)(iv)(k) of this section for the determination of appropriate adjustments to the partners' capital accounts relating to section 613A(c)(7)(D).)

**(vi) Amendments to partnership agreement.** If an allocation has substantial economic effect under paragraph (b)(2) of this section or is deemed to be made in accordance with the partners' interests in the partnership under paragraph (b)(4) of this section under the partnership agreement that is effective for the taxable year to which such allocation relates, and such partnership agreement thereafter is modified, both the tax consequences of the modification and the facts and circumstances surrounding the modification will be closely scrutinized to determine whether the purported modification was part of the original agreement. If it is determined that the purported modification was part of the original agreement, prior allocations may be reallocated in a manner consistent with the modified terms of the agreement, and subsequent allocations may be reallocated to take account of such modified terms. For example, if a partner is obligated by the partnership agreement to restore the deficit balance in his capital account (or any limited dollar amount thereof) in accordance with requirement (3) of paragraph (b)(2)(ii)(b) of this section and, thereafter, such obligation is eliminated or reduced (other than as provided in paragraph (b)(2)(ii)(f) of this section), or is not complied with in a timely manner, such elimination, reduction, or noncompliance may be treated as if it always were part of the partnership agreement for purposes of making any reallocations and determining the appropriate limitations period.

**(vii) Recapture.** For special rules applicable to the allocation of recapture income or credit, see paragraph (e) of s 1.1245-1, paragraph (f) of s 1.1250-1, paragraph (c) of s 1.1254-1, and paragraph (a) of s 1.47-6.

**(5) Examples.** The operation of the rules in this paragraph is illustrated by the following examples:

**Example (1).** (i) A and B form a general partnership with cash contributions of $40,000 each, which cash is used to purchase depreciable personal property at a cost of $80,000. The partnership elects under section 48(q)(4) to reduce the amount of investment tax credit in lieu of adjusting the tax basis of such property. The partnership agreement provides that A and B will have equal shares of taxable income and loss (computed without regard to cost recovery deductions) and cash flow and that all cost recovery deductions on the property will be allocated to A. The agreement further provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of the section, but that upon liquidation of the partnership, distributions will be made equally between the partners (regardless of capital account balances) and no partner will be required to restore the deficit balance in his capital account for distribution to partners with positive capital accounts balances. In the partnership's first taxable year, it recognizes operating income equal to its operating expenses and has an additional $20,000 cost recovery deduction, which is allocated entirely to A. That A and B will be entitled to equal distributions on liquidation, even though A is allocated the entire $20,000 cost recovery deduction, indicates A will not bear the full risk of the economic loss corresponding to such deduction if such loss occurs. Under paragraph (b)(2)(ii) of this section, the allocation lacks economic effect and will be disregarded. The partners made equal contributions to the partnership, share equally in other taxable income and loss and in cash flow, and will share equally in liquidation proceeds, indicating that their actual economic arrangement is to bear the risk imposed by the potential decrease in the value of the property equally. Thus, under paragraph (b)(3) of this section the partners' interests in the partnership are equal, and the cost recovery deduction will be reallocated equally between A and B.

(ii) Assume the same facts as in (i) except that the partnership agreement provides that liquidation proceeds will be distributed in accordance with capital account balances if the partnership is liquidated during the first five years of its existence but that liquidation proceeds will be distributed equally if the partnership is liquidated thereafter. Since the partner-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ship agreement does not provide for the requirement contained in paragraph (b)(2)(ii)(b)(2) of this section to be satisfied throughout the term of the partnership, the partnership allocations do not have economic effect. Even if the partnership agreement provided for the requirement contained in paragraph (b)(2)(ii)(b)(2) to be satisfied throughout the term of the partnership, such allocations would not have economic effect unless the requirement contained in paragraph (b)(2)(ii)(b)(3) of this section or the alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section were satisfied.

(iii) Assume the same facts as in (i) except that distributions in liquidation of the partnership (or any partner's interest) are to be made in accordance with the partners' positive capital account balances throughout the term of the partnership (as set forth in paragraph (b)(2)(ii)(b)(2) of this section). Assume further that the partnership agreement contains a qualified income offset (as defined in paragraph (b)(2)(ii)(d) of this section) and that, as of the end of each partnership taxable year, the items described in paragraphs (b)(2)(ii)(d)(4), (5), and (6) of this section are not reasonably expected to cause or increase a deficit balance in A's capital account.

```
-----------------------------------------------------------
                                          A         B
-----------------------------------------------------------
Capital account upon formation .........  $40,000   $40,000
Less: year 1 cost recovery deduction ...  (20,000)        0
                                          ------------------
   Capital account at end of year 1 .....  $20,000   $40,000
-----------------------------------------------------------
```

Under the alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section, the allocation of the $20,000 cost recovery deduction to A has economic effect.

(iv) Assume the same facts as in (iii) and that in the partnership's second taxable year it recognizes operating income equal to its operating expenses and has a $25,000 cost recovery deduction which, under the partnership agreement, is allocated entirely to A.

```
-----------------------------------------------------------
                                          A         B
-----------------------------------------------------------
Capital account at beginning of year 2 ..  $20,000   $40,000
Less: year 2 cost recovery deduction ....  (25,000)        0
                                          ------------------
Capital account at end of year 2 ........  ($5,000)  $40,000
-----------------------------------------------------------
```

The allocation of the $25,000 cost recovery deduction to A satisfies that alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section only to the extent of $20,000. Therefore, only $20,000 of such allocation has economic effect, and the remaining $5,000 must be reallocated in accordance with the partners' interests in the partnership. Under the partnership agreement, if the property were sold immediately following the end of the partnership's second taxable year for $35,000 (its adjusted tax basis), the $35,000 would be distributed to B. Thus, B, and not A, bears the economic

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

burden corresponding to $5,000 of the $25,000 cost recovery deduction allocated to A. Under paragraph (b)(3)(iii) of this section, $5,000 of such cost recovery deduction will be reallocated to B.

(v) Assume the same facts as in (iv) except that the cost recovery deduction for the partnership's second taxable year is $20,000 instead of $25,000. The allocation of such cost recovery deduction to A has economic effect under the alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section. Assume further that the property is sold for $35,000 immediately following the end of the partnership's second taxable year, resulting in a $5,000 taxable loss ($40,000 adjusted tax basis less $35,000 sales price), and the partnership is liquidated.

```
-----------------------------------------------------------
                                          A         B
-----------------------------------------------------------
Capital account at beginning of year 2 ..  $20,000   $40,000
Less: year 2 cost recovery deduction ....  (20,000)        0
                                           ---------
Capital account at end of year 2 ........        0   $40,000
Less: loss on sale ......................  (2,500)   (2,500)
                                           ---------
  Capital account before liquidation ....  ($2,500)  $37,500
-----------------------------------------------------------
```

Under the partnership agreement the $35,000 sales proceeds are distributed to B. Since B bears the entire economic burden corresponding to the $5,000 taxable loss from the sale of the property, the allocation of $2,500 of such loss to A does not have economic effect and must be reallocated in accordance with the partners' interests in the partnership. Under paragraph (b)(3)(iii) of this section, such $2,500 loss will be reallocated to B.

(vi) Assume the same facts as in (iv) except that the cost recovery deduction for the partnership's second taxable year is $20,000 instead of $25,000, and that as of the end of the partnership's second taxable year it is reasonably expected that during its third taxable year the partnership will (1) have operating income equal to its operating expenses (but will have no cost recovery deductions), (2) borrow $10,000 (recourse) and distribute such amount $5,000 to A and $5,000 to B, and (3) thereafter sell the partnership property, repay the $10,000 liability, and liquidate. In determining the extent to which the alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section is satisfied as of the end of the partnership's second taxable year, the fair market value of partnership property is presumed to be equal to its adjusted tax basis (in accordance with paragraph (b)(2)(iii)(c) of this section). Thus, it is presumed that the selling price of such property during the partnership's third taxable year will be its $40,000 adjusted tax basis. Accordingly, there can be no reasonable expectation that there will be increases to A's capital account in the partnership's third taxable year that will offset the expected $5,000 distribution to A. Therefore, the distribution of the loan proceeds must be taken into account in determining to what extent the alternate economic effect test contained in paragraph (b)(2)(ii)(d) is satisfied.

```
-------------------------------------------------------------------
                                                   A         B
-------------------------------------------------------------------
Capital account at beginning of year 2 ..........  $20,000   $40,000
Less: expected future distribution ..............  (5,000)   (5,000)
```

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

```
Less: year 2 cost recovery deduction ............ (20,000)        (0)
                                                    ------------------
  Hypothetical capital account at end of year 2 .. ($5,000)    $35,000
-------------------------------------------------------------------
```

Upon sale of the partnership property, the $40,000 presumed sales proceeds would be used to repay the $10,000 liability, and the remaining $30,000 would be distributed to B. Under these circumstances the allocation of the $20,000 cost recovery deduction to A in the partnership's second taxable year satisfies the alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section only to the extent of $15,000. Under paragraph (b)(3)(iii) of this section, the remaining $5,000 of such deduction will be reallocated to B. The results in this example would be the same even if the partnership agreement also provided that any gain (whether ordinary income or capital gain) upon the sale of the property would be allocated to A to the extent of the prior allocations of cost recovery deductions to him, and, at end of the partnership's second taxable year, the partners were confident that the gain on the sale of the property in the partnership's third taxable year would be sufficient to offset the expected $5,000 distribution to A.

(vii) Assume the same facts as in (iv) except that the partnership agreement also provides that any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraph (b)(2)(ii)(b)(3) of this section). Thus, if the property were sold for $35,000 immediately after the end of the partnership's second taxable year, the $35,000 would be distributed to B, A would contribute $5,000 (the deficit balance in his capital account) to the partnership, and that $5,000 would be distributed to B. The allocation of the entire $25,000 cost recovery deduction to A in the partnership's second taxable year has economic effect.

(viii) Assume the same facts as in (vii) except that A's obligation to restore the deficit balance in his capital account is limited to a maximum of $5,000. The allocation of the $25,000 cost recovery deduction to A in the partnership's second taxable year has economic effect under the alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section. At the end of such year, A makes an additional $5,000 contribution to the partnership (thereby eliminating the $5,000 deficit balance in his capital account). Under paragraph (b)(2)(ii)(f) of this section, A's obligation to restore up to $5,000 of the deficit balance in his capital account may be eliminated after he contributes the additional $5,000 without affecting the validity of prior allocations.

(ix) Assume the same facts as in (iv) except that upon formation of the partnership A also contributes to the partnership his negotiable promissory note with a $5,000 principal balance. The note unconditionally obligates A to pay an additional $5,000 to the partnership at the earlier of (a) the beginning of the partnership's fourth taxable year, or (b) the end of the partnership taxable year in which A's interest is liquidated. Under paragraph (b)(2)(ii)(c) of this section, A is considered obligated to restore up to $5,000 of the deficit balance in his capital account to the partnership. Accordingly, under the alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section, the allocation of the $25,000 cost recovery deduction to A in the partnership's second taxable year has economic effect. The results in this example would be the same if (1) the note A contributed to the partnership were payable only at the end of the partnership's fourth taxable year (so that A would not be required to satisfy the note upon liquidation of his interest in the partnership), and (2) the partnership agreement provided that upon liquidation of A's interest, the partnership would retain A's note, and A would contribute to the partnership the excess of the outstanding principal balance of the note over its then fair market value.

(x) Assume the same facts as in (ix) except that A's obligation to contribute an additional $5,000 to the partnership is not evidenced by a promissory note. Instead, the partnership agreement imposes upon A the obligation to make an additional $5,000 contribution to the partnership at the earlier of (a) the beginning of the partnership's fourth taxable year, or (b) the end of the partnership taxable year in which A's interest is liquidated. Under paragraph (b)(2)(ii)(c) of this section, as a

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

result of A's deferred contribution requirement, A is considered obligated to restore up to $5,000 of the deficit balance in his capital account to the partnership. Accordingly, under the alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section, the allocation of the $25,000 cost recovery deduction to A in the partnership's second taxable year has economic effect.

(xi) Assume the same facts as in (vii) except that the partnership agreement also provides that any gain (whether ordinary income or capital gain) upon the sale of the property will be allocated to A to the extent of the prior allocations to A of cost recovery deductions from such property, and additional gain will be allocated equally between A and B. At the time the allocations of cost recovery deductions were made to A, the partners believed there would be gain on the sale of the property in an amount sufficient to offset the allocations of cost recovery deductions to A. Nevertheless, the existence of the gain chargeback provision will not cause the economic effect of the allocations to be insubstantial under paragraph (b)(2)(iii)(c) of this section, since in testing whether the economic effect of such allocations is substantial, the recovery property is presumed to decrease in value by the amount of such deductions.

**Example (2).** C and D form a general partnership solely to acquire and lease machinery that is 5-year recovery property under section 168. Each contributes $100,000, and the partnership obtains an $800,000 recourse loan to purchase the machinery. The partnership elects under section 48(q)(4) to reduce the amount of investment tax credit in lieu of adjusting the tax basis of such machinery. The partnership, C, and D have calendar taxable years. The partnership agreement provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). The partnership agreement further provides that (a) partnership net taxable loss will be allocated 90 percent to C and 10 percent to D until such time as there is partnership net taxable income, and therefore C will be allocated 90 percent of such taxable income until he has been allocated partnership net taxable income equal to the partnership net taxable loss previously allocated to him, (b) all further partnership net taxable income or loss will be allocated equally between C and D, and (c) distributions of operating cash flow will be made equally between C and D. The partnership enters into a 12-year lease with a financially secure corporation under which the partnership expects to have a net taxable loss in each of its first 5 partnership taxable years due to cost recovery deductions with respect to the machinery and net taxable income in each of its following 7 partnership taxable years, in part due to the absence of such cost recovery deductions. There is a strong likelihood that the partnership's net taxable loss in partnership taxable years 1 through 5 will be $100,000, $90,000, $80,000, $70,000, and $60,000, respectively, and the partnership's net taxable income in partnership taxable years 6 through 12 will be $40,000, $50,000, $60,000, $70,000, $80,000, $90,000, and $100,000, respectively. Even though there is a strong likelihood that the allocations of net taxable loss in years 1 through 5 will be largely offset by other allocations in partnership taxable years 6 through 12, and even if it is assumed that the total tax liability of the partners in years 1 through 12 will be less than if the allocations had not been provided in the partnership agreement, the economic effect of the allocations will not be insubstantial under paragraph (b)(2)(iii)(c) of this section. This is because at the time such allocations became part of the partnership agreement, there was a strong likelihood that the allocations of net taxable loss in years 1 through 5 would not be largely offset by allocations of income within 5 years (determined on a first-in, first-out basis). The year 1 allocation will not be offset until years 6, 7, and 8, the year 2 allocation will not be offset until years 8 and 9, the year 3 allocation will not be offset until years 9 and 10, the year 4 allocation will not be offset until years 10 and 11, and the year 5 allocation will not be offset until years 11 and 12.

**Example (3).** E and F enter into a partnership agreement to develop and market experimental electronic devices. E contributes $2,500 cash and agrees to devote his full-time services to the partnership. F contributes $100,000 cash and agrees to obtain a loan for the partnership for any additional capital needs. The partnership agreement provides that all deduc-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

tions for research and experimental expenditures and interest on partnership loans are to be allocated to F. In addition, F will be allocated 90 percent, and E 10 percent, of partnership taxable income or loss, computed net of the deductions for such research and experimental expenditures and interest, until F has received allocations of such taxable income equal to the sum of such research and experimental expenditures, such interest expense, and his share of such taxable loss. Thereafter, E and F will share all taxable income and loss equally. Operating cash flow will be distributed equally between E and F. The partnership agreement also provides that E's and F's capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). These allocations have economic effect. In addition, in view of the nature of the partnership's activities, there is not a strong likelihood at the time the allocations become part of the partnership agreement that the economic effect of the allocations to F of deductions for research and experimental expenditures and interest on partnership loans will be largely offset by allocations to F of partnership net taxable income. The economic effect of the allocations is substantial.

**Example (4).** (i) G and H contribute $75,000 and $25,000, respectively, in forming a general partnership. The partnership agreement provides that all income, gain, loss, and deduction will be allocated equally between the partners, that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, but that all partnership distributions will, regardless of capital account balances, be made 75 percent to G and 25 percent to H. Following the liquidation of the partnership, neither partner is required to restore the deficit balance in his capital account to the partnership for distribution to partners with positive capital account balances. The allocations in the partnership agreement do not have economic effect. Since contributions were made in a 75/25 ratio and the partnership agreement indicates that all economic profits and losses of the partnership are to be shared in a 75/25 ratio, under paragraph (b)(3) of this section, partnership income, gain, loss, and deduction will be reallocated 75 percent to G and 25 percent to H.

(ii) Assume the same facts as in (i) except that the partnership maintains no capital accounts and the partnership agreement provides that all income, gain, loss, deduction, and credit will be allocated 75 percent to G and 25 percent to H. G and H are ultimately liable (under a State law right of contribution) for 75 percent and 25 percent, respectively, of any debts of the partnership. Although the allocations do not satisfy the requirements of paragraph (b)(2)(ii)(b) of this section, the allocations have economic effect under the economic effect equivalence test of paragraph (b)(2)(ii)(i) of this section.

(iii) Assume the same facts as in (i) except that the partnership agreement provides that any partner with a deficit balance in his capital account must restore that deficit to the partnership (as set forth in paragraph (b)(2)(ii)(b)(2) of this section). Although the allocations do not satisfy the requirements of paragraph (b)(2)(ii)(b) of this section, the allocations have economic effect under the economic effect equivalence test of paragraph (b)(2)(ii)(i) of this section.

**Example (5).** (i) Individuals I and J are the only partners of an investment partnership. The partnership owns corporate stocks, corporate debt instruments, and tax-exempt debt instruments. Over the next several years, I expects to be in the 50 percent marginal tax bracket, and J expects to be in the 15 percent marginal tax bracket. There is a strong likelihood that in each of the next several years the partnership will realize between $450 and $550 of tax-exempt interest and between $450 and $550 of a combination of taxable interest and dividends from its investments. I and J made equal capital contributions to the partnership, and they have agreed to share equally in gains and losses from the sale of the partnership's investment securities. I and J agree, however, that rather than share interest and dividends of the partnership equally, they will allocate the partnership's tax-exempt interest 80 percent to I and 20 percent to J and will distribute cash

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

derived from interest received on the tax-exempt bonds in the same percentages. In addition, they agree to allocate 100 percent of the partnership's taxable interest and dividends to J and to distribute cash derived from interest and dividends received on the corporate stocks and debt instruments 100 percent to J. The partnership agreement further provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partner's positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). The allocation of taxable interest and dividends and tax-exempt interest has economic effect, but that economic effect is not substantial under the general rules set forth in paragraph (b)(2)(iii) of this section. Without the allocation I would be allocated between $225 and $275 of tax-exempt interest and between $225 and $275 of a combination of taxable interest and dividends, which (net of Federal income taxes he would owe on such income) would give I between $337.50 and $412.50 after tax. With the allocation, however, I will be allocated between $360 and $440 of tax-exempt interest and no taxable interest and dividends, which (net of Federal income taxes) will give I between $360 and $440 after tax. Thus, at the time the allocations became part of the partnership agreement, I is expected to enhance his after-tax economic consequences as a result of the allocations. On the other hand, there is a strong likelihood that neither I nor J will substantially diminish his after-tax economic consequences as a result of the allocations. Under the combination of likely investment outcomes least favorable for J, the partnership would realize $550 of tax-exempt interest and $450 of taxable interest and dividends, giving J $492.50 after tax (which is more than the $466.25 after tax J would have received if each of such amounts had been allocated equally between the partners). Under the combination of likely investment outcomes least favorable for I, the partnership would realize $450 of tax-exempt interest and $550 of taxable interest and dividends, giving I $360 after tax (which is not substantially less than the $362.50 he would have received if each of such amounts had been allocated equally between the partners). Accordingly, the allocations in the partnership agreement must be reallocated in accordance with the partners' interests in the partnership under paragraph (b)(3) of this section.

(ii) Assume the same facts as in (i). In addition, assume that in the first partnership taxable year in which the allocation arrangement described in (i) applies, the partnership realizes $450 of tax-exempt interest and $550 of taxable interest and dividends, so that, pursuant to the partnership agreement, I's capital account is credited with $360 (80 percent of the tax-exempt interest), and J's capital account is credited with $640 (20 percent of the tax-exempt interest and 100 percent of the taxable interest and dividends). The allocations of tax-exempt interest and taxable interest and dividends (which do not have substantial economic effect for the reasons stated in (i) ) will be disregarded and will be reallocated. Since under the partnership agreement I will receive 36 percent (360/1,000) and J will receive 64 percent (640/1,000) of the partnership's total investment income in such year, under paragraph (b)(3) of this section the partnership's tax-exempt interest and taxable interest and dividends each will be reallocated 36 percent to I and 64 percent to J.

**Example (6).** K and L are equal partners in a general partnership formed to acquire and operate property described in section 1231(b). The partnership, K, and L have calendar taxable years. The partnership agreement provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, that distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and that any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). For a taxable year in which the partnership expects to incur a loss on the sale of a portion of such property, the partnership agreement is amended (at the beginning of the taxable year) to allocate such loss to K, who expects to have no gains from the sale of depreciable property described in section 1231(b) in that taxable year, and to allocate an equivalent amount of partnership loss and deduction for that year of a different character to L, who expects to have such gains. Any partnership loss and deduction in excess of these allocations will be allocated equally between K and L. The amendment

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD    Document 107-13    05/27/11    Page 28 of 62

is effective only for that taxable year. At the time the partnership agreement is amended, there is a strong likelihood that the partnership will incur deduction or loss in the taxable year other than loss from the sale of property described in section 1231(b) in an amount that will substantially equal or exceed the expected amount of the section 1231(b) loss. The allocations in such taxable year have economic effect. However, the economic effect of the allocations is insubstantial under the test described in paragraph (b)(2)(iii)(b) of this section because there is a strong likelihood, at the time the allocations become part of the partnership agreement, that the net increases and decreases to K's and L's capital accounts will be the same at the end of the taxable year to which they apply with such allocations in effect as they would have been in the absence of such allocations, and that the total taxes of K and L for such year will be reduced as a result of such allocations. If in fact the partnership incurs deduction or loss, other than loss from the sale of property described in section 1231(b), in an amount at least equal to the section 1231(b) loss, the loss and deduction in such taxable year will be reallocated equally between K and L under paragraph (b)(3) of this section. If not, the loss from the sale of property described in section 1231(b) and the items of deduction and other loss realized in such year will be reallocated between K and L in proportion to the net decreases in their capital accounts due to the allocation of such items under the partnership agreement.

**Example (7).** (i) M and N are partners in the MN general partnership, which is engaged in an active business. Income, gain, loss, and deduction from MN's business is allocated equally between M and N. The partnership, M, and N have calendar taxable years. Under the partnership agreement the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partner's positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). In order to enhance the credit standing of the partnership, the partners contribute surplus funds to the partnership, which the partners agree to invest in equal dollar amounts of tax-exempt bonds and corporate stock for the partnership's first 3 taxable years. M is expected to be in a higher marginal tax bracket than N during those 3 years. At the time the decision to make these investments is made, it is agreed that, during the 3-year period of the investment, M will be allocated 90 percent and N 10 percent of the interest income from the tax-exempt bonds as well as any gain or loss from the sale thereof, and that M will be allocated 10 percent and N 90 percent of the dividend income from the corporate stock as well as any gain or loss from the sale thereof. At the time the allocations concerning the investments become part of the partnership agreement, there is not a strong likelihood that gain or loss from the sale of the stock will be substantially equal to the gain or loss from the sale of the tax-exempt bonds, but there is a strong likelihood that the tax-exempt interest and the taxable dividends realized from these investments during the 3-year period will not differ substantially. These allocations have economic effect, and the economic effect of the allocations of the gain or loss on the sale of the tax-exempt bonds and corporate stock is substantial. The economic effect of the allocations of the tax-exempt interest and the taxable dividends, however, is not substantial under the test described in paragraph (b)(2)(iii)(c) of this section because there is a strong likelihood, at the time the allocations become part of the partnership agreement, that at the end of the 3-year period to which such allocations relate, the net increases and decreases to M's and N's capital accounts will be the same with such allocations as they would have been in the absence of such allocations, and that the total taxes of M and N for the taxable years to which such allocations relate will be reduced as a result of such allocations. If in fact the amounts of the tax-exempt interest and taxable dividends earned by the partnership during the 3-year period are equal, the tax-exempt interest and taxable dividends will be reallocated to the partners in equal shares under paragraph (b)(3) of this section. If not, the tax-exempt interest and taxable dividends will be reallocated between M and N in proportion to the net increases in their capital accounts during such 3-year period due to the allocation of such items under the partnership agreement.

(ii) Assume the same facts as in (i) except that gain or loss from the sale of the tax-exempt bonds and corporate stock

will be allocated equally between M and N and the partnership agreement provides that the 90/10 allocation arrangement with respect to the investment income applies only to the first $10,000 of interest income from the tax-exempt bonds and the first $10,000 of dividend income from the corporate stock, and only to the first taxable year of the partnership. There is a strong likelihood at the time the 90/10 allocation of the investment income became part of the partnership agreement that in the first taxable year of the partnership, the partnership will earn more than $10,000 of tax-exempt interest and more than $10,000 of taxable dividends. The allocations of tax-exempt interest and taxable dividends provided in the partnership agreement have economic effect, but under the test contained in paragraph (b)(2)(iii)(b) of this section, such economic effect is not substantial for the same reasons stated in (i) (but applied to the 1 taxable year, rather than to a 3-year period). If in fact the partnership realizes at least $10,000 of tax-exempt interest and at least $10,000 of taxable dividends in such year, the allocations of such interest income and dividend income will be reallocated equally between M and N under paragraph (b)(3) of this section. If not, the tax-exempt interest and taxable dividends will be reallocated between M and N in proportion to the net increases in their capital accounts due to the allocations of such items under the partnership agreement.

(iii) Assume the same facts as in (ii) except that at the time the 90/10 allocation of investment income becomes part of the partnership agreement, there is not a strong likelihood that (1) the partnership will earn $10,000 or more of tax-exempt interest and $10,000 or more of taxable dividends in the partnership's first taxable year, and (2) the amount of tax-exempt interest and taxable dividends earned during such year will be substantially the same. Under these facts the economic effect of the allocations generally will be substantial. (Additional facts may exist in certain cases, however, so that the allocation is insubstantial under the second sentence of paragraph (b)(2)(iii). See example (5) above.)

**Example (8).** (i) O and P are equal partners in the OP general partnership. The partnership, O, and P have calendar taxable years. Partner O has a net operating loss carryover from another venture that is due to expire at the end of the partnership's second taxable year. Otherwise, both partners expect to be in the 50 percent marginal tax bracket in the next several taxable years. The partnership agreement provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). The partnership agreement is amended (at the beginning of the partnership's second taxable year) to allocate all the partnership net taxable income for that year to O. Future partnership net taxable loss is to be allocated to O, and future partnership net taxable income to P, until the allocation of income to O in the partnership's second taxable year is offset. It is further agreed orally that in the event the partnership is liquidated prior to completion of such offset, O's capital account will be adjusted downward to the extent of one-half of the allocations of income to O in the partnership's second taxable year that have not been offset by other allocations, P's capital account will be adjusted upward by a like amount, and liquidation proceeds will be distributed in accordance with the partners' adjusted capital account balances. As a result of this oral amendment, all allocations of partnership net taxable income and net taxable loss made pursuant to the amendment executed at the beginning of the partnership's second taxable year lack economic effect and will be disregarded. Under the partnership agreement other allocations are made equally to O and P, and O and P will share equally in liquidation proceeds, indicating that the partners' interests in the partnership are equal. Thus, the disregarded allocations will be reallocated equally between the partners under paragraph (b)(3) of this section.

(ii) Assume the same facts as in (i) except that there is no agreement that O's and P's capital accounts will be adjusted downward and upward, respectively, to the extent of one-half of the partnership net taxable income allocated to O in the partnership's second taxable year that is not offset subsequently by other allocations. The income of the partnership is generated primarily by fixed interest payments received with respect to highly rated corporate bonds, which are expected

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

to produce sufficient net taxable income prior to the end of the partnership's seventh taxable year to offset in large part the net taxable income to be allocated to O in the partnership's second taxable year. Thus, at the time the allocations are made part of the partnership agreement, there is a strong likelihood that the allocation of net taxable income to be made to O in the second taxable year will be offset in large part within 5 taxable years thereafter. These allocations have economic effect. However, the economic effect of the allocation of partnership net taxable income to O in the partnership's second taxable year, as well as the offsetting allocations to P, is not substantial under the test contained in paragraph (b)(2)(iii)(c) of this section because there is a strong likelihood that the net increases or decreases in O's and P's capital accounts will be the same at the end of the partnership's seventh taxable year with such allocations as they would have been in the absence of such allocations, and the total taxes of O and P for the taxable years to which such allocations relate will be reduced as a result of such allocations. If in fact the partnership, in its taxable years 3 through 7, realizes sufficient net taxable income to offset the amount allocated to O in the second taxable year, the allocations provided in the partnership agreement will be reallocated equally between the partners under paragraph (b)(3) of this section.

**Example (9).** Q and R form a limited partnership with contributions of $20,000 and $180,000, respectively. Q, the limited partner, is a corporation that has $2,000,000 of net operating loss carryforwards that will not expire for 8 years. Q does not expect to have sufficient income (apart from the income of the partnership) to absorb any of such net operating loss carryforwards. R, the general partner, is a corporation that expects to be in the 46 percent marginal tax bracket for several years. The partnership agreement provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). The partnership's cash, together with the proceeds of an $800,000 loan, are invested in assets that are expected to produce taxable income and cash flow (before debt service) of approximately $150,000 a year for the first 8 years of the partnership's operations. In addition, it is expected that the partnership's total taxable income in its first 8 taxable years will not exceed $2,000,000. The partnership's $150,000 of cash flow in each of its first 8 years will be used to retire the $800,000 loan. The partnership agreement provides that partnership net taxable income will be allocated 90 percent to Q and 10 percent to R in the first through eighth partnership taxable years, and 90 percent to R and 10 percent to Q in all subsequent partnership taxable years. Net taxable loss will be allocated 90 percent to R and 10 percent to Q in all partnership taxable years. All distributions of cash from the partnership to partners (other than the priority distributions to Q described below) will be made 90 percent to R and 10 percent to Q. At the end of the partnership's eighth taxable year, the amount of Q's capital account in excess of one-ninth of R's capital account on such date will be designated as Q's "excess capital account." Beginning in the ninth taxable year of the partnership, the undistributed portion of Q's excess capital account will begin to bear interest which will be paid and deducted under section 707(c) at a rate of interest below the rate that the partnership can borrow from commercial lenders, and over the next several years (following the eighth year) the partnership will make priority cash distributions to Q in prearranged percentages of Q's excess capital account designed to amortize Q's excess capital account and the interest thereon over a prearranged period. In addition, the partnership's agreement prevents Q from causing his interest in the partnership from being liquidated (and thereby receiving the balance in his capital account) without R's consent until Q's excess capital account has been eliminated. The below market rate of interest and the period over which the amortization will take place are prescribed such that, as of the end of the partnership's eighth taxable year, the present value of Q's right to receive such priority distributions is approximately 46 percent of the amount of Q's excess capital account as of such date. However, because the partnership's income for its first 8 taxable years will be realized approximately ratably over that period, the present value of Q's right to receive the priority distributions with respect to its excess capital account is, as of the date the partnership agreement is entered into, less than the present value of the additional Federal income taxes for which R would be liable if, during the partnership's first 8 taxable years, all partnership income were to be allocated 90

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

percent to R and 10 to Q. The allocations of partnership taxable income to Q and R in the first through eighth partnership taxable years have economic effect. However, such economic effect is not substantial under the general rules set forth in paragraph (b)(2)(iii) of this section. This is true because R may enhance his after-tax economic consequences, on a present value basis, as a result of the allocations to Q of 90 percent of partnership's income during taxable years 1 through 8, and there is a strong likelihood that neither R nor Q will substantially diminish its after-tax economic consequences, on a present value basis, as a result of such allocation. Accordingly, partnership taxable income for partnership taxable years 1 through 8 will be reallocated in accordance with the partners' interests in the partnership under paragraph (b)(3) of this section.

**Example (10).** (i) S and T form a general partnership to operate a travel agency. The partnership agreement provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). The partnership agreement provides that T, a resident of a foreign country, will be allocated 90 percent, and S 10 percent, of the income, gain, loss, and deduction derived from operations conducted by T within his country, and all remaining income, gain, loss, and deduction will be allocated equally. The amount of such income, gain, loss, or deduction cannot be predicted with any reasonable certainty. The allocations provided by the partnership agreement have substantial economic effect.

(ii) Assume the same facts as in (i) except that the partnership agreement provides that all income, gain, loss, and deduction of the partnership will be shared equally, but that T will be allocated all income, gain, loss, and deduction derived from operations conducted by him within his country as a part of his equal share of partnership income, gain, loss, and deduction, upon [FN1] to the amount of such share. Assume the total tax liability of S and T for each year to which these allocations relate will be reduced as a result of such allocation. These allocations have economic effect. However, such economic effect is not substantial under the test stated in paragraph (b)(2)(iii)(b) of this section because, at the time the allocations became part of the partnership agreement, there is a strong likelihood that the net increases and decreases to S's and T's capital accounts will be the same at the end of each partnership taxable year with such allocations as they would have been in the absence of such allocations, and that the total tax liability of S and T for each year to which such allocations relate will be reduced as a result of such allocations. Thus, all items of partnership income, gain, loss, and income, gain, loss, and deduction will be reallocated equally between S and T under paragraph (b)(3) of this section.

[FN1] So in original.

**Example (11).** (i) U and V share equally all income, gain, loss, and deduction of the UV general partnership, as well as all non-liquidating distributions made by the partnership. The partnership agreement provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore such deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). The agreement further provides that the partners will be allocated equal shares of any section 705(a)(2)(B) expenditures of the partnership. In the partnership's first taxable year, it pays qualified first-year wages of $6,000 and is entitled to a $3,000 targeted jobs tax credit under sections 44B and 51 of the Code. Under section 280C the partnership must reduce its deduction for wages paid by the $3,000 credit claimed (which amount constitutes a section 705(a)(2)(B) expenditure). The partnership agreement allocates the credit to U. Although the allocations of wage deductions and section 705(a)(2)(B) expenditures have substantial economic effect, the allocation of tax credit cannot have economic effect since it cannot properly be re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD    Document 107-13    05/27/11    Page 32 of 62

flected in the partners' capital accounts. Furthermore, the allocation is not in accordance with the special partners' interests in the partnership rule contained in paragraph (b)(4)(ii) of this section. Under that rule, since the expenses that gave rise to the credit are shared equally by the partners, the credit will be shared equally between U and V.

(ii) Assume the same facts as in (i) and that at the beginning of the partnership's second taxable year, the partnership agreement is amended to allocate to U all wage expenses incurred in that year (including wage expenses that constitute section 705(a)(2)(B) expenditures) whether or not such wages qualify for the credit. The partnership agreement contains no offsetting allocations. That taxable year the partnership pays $8,000 in total wages to its employees. Assume that the partnership has operating income equal to its operating expenses (exclusive of expenses for wages). Assume further that $6,000 of the $8,000 wage expense constitutes qualified first-year wages. U is allocated the $3,000 deduction and the $3,000 section 705(a)(2)(B) expenditure attributable to the $6,000 of qualified first-year wages, as well as the deduction for the other $2,000 in wage expenses. The allocations of wage deductions and section 705(a)(2)(B) expenditures have substantial economic effect. Furthermore, since the wage credit is allocated in the same proportion as the expenses that gave rise to the credit, and the allocation of those expenses has substantial economic effect, the allocation of such credit to U is in accordance with the special partners' interests in the partnership rule contained in paragraph (b)(4)(ii) of this section and is recognized thereunder.

**Example (12).** (i) W and X form a general partnership for the purpose of mining iron ore. W makes an initial contribution of $75,000, and X makes an initial contribution of $25,000. The partnership agreement provides that non-liquidating distributions will be made 75 percent to W and 25 percent to X, and that all items of income, gain, loss, and deduction will be allocated 75 percent to W and 25 percent to X, except that all percentage depletion deductions will be allocated to W. The agreement further provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore such deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). Assume that the adjusted tax basis of the partnership's only depletable iron ore property is $1,000 and that the percentage depletion deduction for the taxable year with respect to such property is $1,500. The allocation of partnership income, gain, loss, and deduction (excluding the percentage depletion deduction) as well as the allocation of $1,000 of the percentage depletion deduction have substantial economic effect. The allocation to W of the remaining $500 of the percentage depletion deduction, representing the excess of percentage depletion over adjusted tax basis of the iron ore property, cannot have economic effect since such amount cannot properly be reflected in the partners' capital accounts. Furthermore, the allocation to W of that $500 excess percentage depletion deduction is not in accordance with the special partners' interests in the partnership rule contained in paragraph (b)(4)(iii) of this section, under which such $500 excess depletion deduction (and all further percentage depletion deductions from the mine) will be reallocated 75 percent to W and 25 percent to X.

(ii) Assume the same facts as in (i) except that the partnership agreement provides that all percentage depletion deductions of the partnership will be allocated 75 percent to W and 25 percent to X. Once again, the allocation of partnership income, gain, loss, and deduction (excluding the percentage depletion deduction) as well as the allocation of $1,000 of the percentage depletion deduction have substantial economic effect. Furthermore, since the $500 portion of the percentage depletion deduction that exceeds the adjusted basis of such iron ore property is allocated in the same manner as valid allocations of the gross income from such property during the taxable year (i.e., 75 percent to W and 25 percent to X), the allocation of the $500 excess percentage depletion contained in the partnership agreement is in accordance with the special partners' interests in the partnership rule contained in paragraph (b)(4)(iii) of this section.

**Example (13).** (i) Y and Z form a brokerage general partnership for the purpose of investing and trading in marketable

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

securities. Y contributes cash of $10,000, and Z contributes securities of P corporation, which have an adjusted basis of $3,000 and a fair market value of $10,000. The partnership would not be an investment company under section 351(e) if it were incorporated. The partnership agreement provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). The partnership uses the interim closing of the books method for purposes of section 706. The initial capital accounts of Y and Z are fixed at $10,000 each. The agreement further provides that all partnership distributions, income, gain, loss, deduction, and credit will be shared equally between Y and Z, except that the taxable gain attributable to the precontribution appreciation in the value of the securities of P corporation will be allocated to Z in accordance with section 704(c). During the partnership's first taxable year, it sells the securities of P corporation for $12,000, resulting in a $2,000 book gain ($12,000 less $10,000 book value) and a $9,000 taxable gain ($12,000 less $3,000 adjusted tax basis). The partnership has no other income, gain, loss, or deductions for the taxable year. The gain from the sale of the securities is allocated as follows:

|                                       | Y       |         | Z       |         |
|---------------------------------------|---------|---------|---------|---------|
|                                       | Tax     | Book    | Tax     | Book    |
| Capital account upon formation ...... | $10,000 | $10,000 | $3,000  | $10,000 |
| Plus: gain ........................ .. | 1,000   | 1,000   | 8,000   | 1,000   |
| Capital account at end of year 1 ..   | $11,000 | $11,000 | $11,000 | $11,000 |

The allocation of the $2,000 book gain, $1,000 each to Y and Z, has substantial economic effect. Furthermore, under section 704(c) the partners' distributive shares of the $9,000 taxable gain are $1,000 to Y and $8,000 to Z.

(ii) Assume the same facts as in (i) and that at the beginning of the partnership's second taxable year, it invests its $22,000 of cash in securities of G Corp. The G Corp. securities increase in value to $40,000, at which time Y sells 50 percent of his partnership interest (i.e., a 25 percent interest in the partnership) to LK for $10,000. The partnership does not have a section 754 election in effect for the partnership taxable year during which such sale occurs. In accordance with paragraph (b)(2)(iv)(l) of this section, the partnership agreement provides that LK inherits 50 percent of Y's $11,000 capital account balance. Thus, following the sale, LK and Y each have a capital account of $5,500, and Z's capital account remains at $11,000. Prior to the end of the partnership's second taxable year, the securities are sold for their $40,000 fair market value, resulting in an $18,000 taxable gain ($40,000 less $22,000 adjusted tax basis). The partnership has no other income, gain, loss, or deduction in such taxable year. Under the partnership agreement the $18,000 taxable gain is allocated as follows:

|                                          | Y       | Z       | LK      |
|------------------------------------------|---------|---------|---------|
| Capital account before sale of securities .. | $5,500  | $11,000 | $5,500  |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

```
Plus: gain ................................   4,500    9,000    4,500
                                          -------------------------
  Capital account at end of year 2 ........ $10,000  $20,000  $10,000
------------------------------------------------------------------
```

The allocation of the $18,000 taxable gain has substantial economic effect.

(iii) Assume the same facts as in (ii) except that the partnership has a section 754 election in effect for the partnership taxable year during which Y sells 50 percent of his interest to LK. Accordingly, under s 1.743-1 there is a $4,500 basis increase to the G Corp. securities with respect to LK. Notwithstanding this basis adjustment, as a result of the sale of the G Corp. securities, LK's capital account is, as in (ii), increased by $4,500. The fact that LK recognizes no taxable gain from such sale (due to his $4,500 section 743 basis adjustment) is irrelevant for capital accounting purposes since, in accordance with paragraph (b)(2)(iv)(m)(2) of this section, that basis adjustment is disregarded in the maintenance and computation of the partners' capital accounts.

(iv) Assume the same facts as in (iii) except that immediately following Y's sale of 50 percent of this interest to LK, the G Corp. securities decrease in value to $32,000 and are sold. The $10,000 taxable gain ($32,000 less $22,000 adjusted tax basis) is allocated as follows:

```
------------------------------------------------------------------
                                           Y        Z       LK
------------------------------------------------------------------
Capital account before sale of securities .. $5,500  $11,000  $5,500
Plus: gain ................................   2,500    5,000    2,500
                                          -------------------------
  Capital account at end of year 2 ........ $8,000  $16,000  $8,000
------------------------------------------------------------------
```

The fact that LK recognizes a $2,000 taxable loss from the sale of the G Corp. securities (due to his $4,500 section 743 basis adjustment) is irrelevant for capital accounting purposes since, in accordance with paragraph (b)(2)(iv)(m)(2) of this section, that basis adjustment is disregarded in the maintenance and computation of the partners' capital accounts.

(v) Assume the same facts as in (ii) except that Y sells 100 percent of his partnership interest (i.e., a 50 percent interest in the partnership) to LK for $20,000. Under section 708(b)(1)(B) the partnership terminates. Under paragraph (b)(1)(iv) of s 1.708-1, there is a constructive liquidation of the partnership. Immediately preceding the constructive liquidation, the capital accounts of Z and LK equal $11,000 each (LK having inherited Y's $11,000 capital account). In accordance with paragraph (b)(2)(iv)(e) of this section, the partnership agreement provides that the partners' capital accounts are adjusted to reflect how unrealized taxable gain would have been allocated if the securities had been sold for their $40,000 fair market value. Accordingly, the $18,000 of unrealized gain ($40,000 less $22,000 adjusted tax basis is credited to the partners' capital accounts as follows:

```
------------------------------------------------------------------
                                                     Z       LK
------------------------------------------------------------------
```

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD    Document 107-13    05/27/11    Page 35 of 62

```
Capital account following sale ..................... $11,000  $11,000
Deemed sale adjustment ............................    9,000    9,000
                                                     ----------------
  Capital account before constructive liquidation .. $20,000  $20,000
---------------------------------------------------------------------
```

Constructive liquidating distributions of the securities are made with reference to their $40,000 fair market value. Under section 732(b) the adjusted tax basis of the G Corp. securities constructively distributed to Z is equal to the $11,000 adjusted tax basis of Z's partnership interest before the constructive liquidation, and the adjusted tax basis of the G Corp. securities constructively distributed to Z is equal to the $20,000 adjusted tax basis of LK's partnership interest before the constructive liquidation. Under paragraph (b)(1)(iv) of s 1.708-1, the partners then are treated as contributing to a new partnership the property constructively distributed to them in connection with the partnership's termination. In accordance with paragraph (b)(2)(iv)(d) of this section, the capital accounts of Z and LK in the reconstituted partnership are stated at $20,000 each (i.e., the fair market value of the property constructively contributed to the new partnership by each of the partners).

**Example (14).** (i) MC and RW form a general partnership to which each contributes $10,000. The $20,000 is invested in securities of Ventureco (which are not readily tradable on an established securities market). In each of the partnership's taxable years, it recognizes operating income equal to its operating deductions (excluding gain or loss from the sale of securities). The partnership agreement provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). The partnership uses the interim closing of the books method for purposes of section 706. Assume that the Ventureco securities subsequently appreciate in value to $50,000. At that time SK makes a $25,000 cash contribution to the partnership (thereby acquiring a one-third interest in the partnership), and the $25,000 is placed in a bank account. Upon SK's admission to the partnership, the capital accounts of MC and RW (which were $10,000 each prior to SK's admission) are, in accordance with paragraph (b)(2)(iv)(f) of this section, adjusted upward (to $25,000 each) to reflect their shares of the unrealized appreciation in the Ventureco securities that occurred before SK was admitted to the partnership. Immediately after SK's admission to the partnership, the securities are sold for their $50,000 fair market value, resulting in taxable gain of $30,000 ($50,000 less $20,000 adjusted tax basis) and no book gain or loss. An allocation of the $30,000 taxable gain cannot have economic effect since it cannot properly be reflected in the partners' book capital accounts. Under paragraph (b)(2)(iv)(f) of this section and the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, unless the partnership agreement provides that the $30,000 taxable gain will, in accordance with section 704(c) principles, be shared $15,000 to MC and $15,000 to RW, the partners' capital accounts will not be considered maintained in accordance with paragraph (b)(2)(iv) of this section.

```
---------------------------------------------------------------------
                        MC             RW             SK
                  ---------------------------------------------------
                   Tax    Book    Tax    Book    Tax    Book
---------------------------------------------------------------------
Capital account following
```

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD     Document 107-13     05/27/11     Page 36 of 62

```
SK's admission ........  $10,000  $25,000  $10,000  $25,000  $25,000  $25,000
Plus: gain ..............  15,000        0   15,000        0        0        0
                         -------------------------------------------------------
  Capital account
  following sale ........  $25,000  $25,000  $25,000  $25,000  $25,000  $25,000
                         -------------------------------------------------------
```

(ii) Assume the same facts as (i), except that after SK's admission to the partnership, the Ventureco securities appreciate in value to $74,000 and are sold, resulting in taxable gain of $54,000 ($74,000 less $20,000 adjusted tax basis) and book gain of $24,000 ($74,000 less $50,000 book value). Under the partnership agreement the $24,000 book gain (the appreciation in value occurring after SK became a partner) is allocated equally among MC, RW, and SK, and such allocations have substantial economic effect. An allocation of the $54,000 taxable gain cannot have economic effect since it cannot properly be reflected in the partners' book capital accounts. Under paragraph (b)(2)(iv)(f) of this section and the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, unless the partnership agreement provides that the taxable gain will, in accordance with section 704(c) principles, be shared $23,000 to MC, $23,000 to RW, and $8,000 to SK, the partners' capital accounts will not be considered maintained in accordance with paragraph (b)(2)(iv) of this section.

```
-----------------------------------------------------------------------------
                              MC            RW            SK
                         -----------------------------------------------------
                          Tax    Book   Tax    Book   Tax    Book
-----------------------------------------------------------------------------
Capital account following
  SK's admission ........ $10,000 $25,000 $10,000 $25,000 $25,000 $25,000
Plus: gain ..............  23,000   8,000  23,000   8,000   8,000   8,000
                         -----------------------------------------------------
  Capital account
  following sale ........ $33,000 $33,000 $33,000 $33,000 $33,000 $33,000
-----------------------------------------------------------------------------
```

(iii) Assume the same facts as (i) except that after SK's admission to the partnership, the Ventureco securities depreciate in value to $44,000 and are sold, resulting in taxable gain of $24,000 ($44,000 less $20,000 adjusted tax basis) and a book loss of $6,000 ($50,000 book value less $44,000). Under the partnership agreement the $6,000 book loss is allocated equally among MC, RW, and SK, and such allocations have substantial economic effect. An allocation of the $24,000 taxable gain cannot have economic effect since it cannot properly be reflected in the partners' book capital accounts. Under paragraph (b)(2)(iv)(f) of this section and the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, unless the partnership agreement provides that the $24,000 taxable gain will, in accordance with section 704(c) principles, be shared equally between MC and RW, the partners' capital accounts will not be considered maintained in accordance with paragraph (b)(2)(iv) of this section.

```
-----------------------------------------------------------------------------
                              MC            RW            SK
```

Case 3:05-cv-00944-BAJ-EWD    Document 107-13    05/27/11    Page 37 of 62

|                              | Tax      | Book      | Tax      | Book      | Tax      | Book      |
| ---------------------------- | -------- | --------- | -------- | --------- | -------- | --------- |
| Capital account following SK's admission ........... | $10,000 | $25,000 | $10,000 | $25,000 | $25,000 | $25,000 |
| Plus: gain ............. | 12,000 | 0 | 12,000 | 0 | 0 | 0 |
| Less: loss ............. | 0 | (2,000) | 0 | (2,000) | 0 | (2,000) |
| Capital account following sale ....... | $22,000 | $23,000 | $22,000 | $23,000 | $25,000 | $25,000 |

That SK bears an economic loss of $2,000 without a corresponding taxable loss is attributable entirely to the "ceiling rule." See paragraph (c)(2) of s 1.704-1.

(iv) Assume the same facts as in (ii) except that upon the admission of SK the capital accounts of MC and RW are not each adjusted upward from $10,000 to $25,000 to reflect the appreciation in the partnership's securities that occurred before SK was admitted to the partnership. Rather, upon SK's admission to the partnership, the partnership agreement is amended to provide that the first $30,000 of taxable gain upon the sale of such securities will be allocated equally between MC and RW, and that all other income, gain, loss, and deduction will be allocated equally between MC, RW, and SK. When the securities are sold for $74,000, the $54,000 of taxable gain is so allocated. These allocations of taxable gain have substantial economic effect. (If the agreement instead provides for all taxable gain (including the $30,000 taxable gain attributable to the appreciation in the securities prior to SK's admission to the partnership) to be allocated equally between MC, RW, and SK, the partners should consider whether, and to what extent, the provisions of paragraphs (b)(1)(iii) and (iv) of this section are applicable.)

(v) Assume the same facts as in (iv) except that instead of selling the securities, the partnership makes a distribution of the securities (which have a fair market value of $74,000). Assume the distribution does not give rise to a transaction described in section 707(a)(2)(B). In accordance with paragraph (b)(2)(iv)(e) of this section, the partners' capital accounts are adjusted immediately prior to the distribution to reflect how taxable gain ($54,000) would have been allocated had the securities been sold for their $74,000 fair market value, and capital account adjustments in respect of the distribution of the securities are made with reference to the $74,000 "booked-up" fair market value.

|                                        | MC        | RW        | SK        |
| -------------------------------------- | --------- | --------- | --------- |
| Capital account before adjustment ..... | $10,000  | $10,000  | $25,000  |
| Deemed sale adjustment ............... | 23,000   | 23,000   | 8,000    |
| Less: distribution ................... | (24,667) | (24,667) | (24,667) |
| Capital account after distribution .. | $8,333   | $8,333   | $8,333   |

(vi) Assume the same facts as in (i) except that the partnership does not sell the Ventureco securities. During the next 3

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

years the fair market value of the Ventureco securities remains at $50,000, and the partnership engages in no other in-vestment activities. Thus, at the end of that period the balance sheet of the partnership and the partners' capital accounts are the same as they were at the beginning of such period. At the end of the 3 years, MC's interest in the partnership is li-quidated for the $25,000 cash held by the partnership. Assume the distribution does not give rise to a transaction de-scribed in section 707(a)(2)(B). Assume further that the partnership has a section 754 election in effect for the taxable year during which such liquidation occurs. Under sections 734(b) and 755 the partnership increases the basis of the Ven-tureco securities by the $15,000 basis adjustment (the excess of $25,000 over the $10,000 adjusted tax basis of MC's partnership interest).

|  | MC | | RW | | SK | |
|---|---|---|---|---|---|---|
|  | Tax | Book | Tax | Book | Tax | Book |
| Capital account before distribution ........ | $10,000 | $25,000 | $10,000 | $25,000 | $25,000 | $25,000 |
| Plus: basis adjustment | 15,000 | 0 | 0 | 0 | 0 | 0 |
| Less: distribution .... | (25,000) | (25,000) | 0 | 0 | 0 | 0 |
| Capital account after liquidation ... | 0 | 0 | $10,000 | $25,000 | $25,000 | $25,000 |

(vii) Assume the same facts as in (vi) except that the partnership has no section 754 election in effect for the taxable year during which such liquidation occurs.

|  | MC | | RW | | SK | |
|---|---|---|---|---|---|---|
|  | Tax | Book | Tax | Book | Tax | Book |
| Capital account before distribution ........ | $10,000 | $25,000 | $10,000 | $25,000 | $25,000 | $25,000 |
| Less: distribution .... | (25,000) | (25,000) | 0 | 0 | 0 | 0 |
| Capital account after liquidation ... | ($15,000) | 0 | $10,000 | $25,000 | $25,000 | $25,000 |

Following the liquidation of MC's interest in the partnership, the Ventureco securities are sold for their $50,000 fair mar-ket value, resulting in no book gain or loss but a $30,000 taxable gain. An allocation of this $30,000 taxable gain cannot have economic effect since it cannot properly be reflected in the partners' book capital accounts. Under paragraph (b)(2)(iv)(f) of this section and the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

this section, unless the partnership agreement provides that $15,000 of such taxable gain will, in accordance with section 704(c) principles, be included in RW's distributive share, the partners' capital accounts will not be considered maintained in accordance with paragraph (b)(2)(iv) of this section. The remaining $15,000 of such gain will, under paragraph (b)(3) of this section, be shared equally between RW and SK.

**Example (15).** (i) JB and DK form a limited partnership for the purpose of purchasing residential real estate to lease. JB, the limited partner, contributes $13,500, and DK, the general partner, contributes $1,500. The partnership, which uses the cash receipts and disbursements method of accounting, purchases a building for $100,000 (on leased land), incurring a recourse mortgage of $85,000 that requires the payment of interest only for a period of 3 years. The partnership agreement provides that partnership net taxable income and loss will be allocated 90 percent to JB and 10 percent to DK, the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances (as set forth in paragraph (b)(2)(ii)(b)(2) of this section), and JB is not required to restore any deficit balance in his capital account, but DK is so required. The partnership agreement contains a qualified income offset (as defined in paragraph (b)(2)(ii)(d) of this section). As of the end of each of the partnership's first 3 taxable years, the items described in paragraphs (b)(2)(ii)(d)(4), (5), and (6) of this section are not reasonably expected to cause or increase a deficit balance in JB's capital account. In the partnership's first taxable year, it has rental income of $10,000, operating expenses of $2,000, interest expense of $8,000, and cost recovery deductions of $12,000. Under the partnership agreement JB and DK are allocated $10,800 and $1,200, respectively, of the $12,000 net taxable loss incurred in the partnership's first taxable year.

```
-----------------------------------------------------------
                                      JB        DK
-----------------------------------------------------------
Capital account upon formation ......  $13,500    $1,500
Less: year 1 net loss ..............  (10,800)   (1,200)
                                      -------------------
   Capital account at end of year 1 ..  $2,700      $300
-----------------------------------------------------------
```

The alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section is satisfied as of the end of the partnership's first taxable year. Thus, the allocation made in the partnership's first taxable year has economic effect.

(ii) Assume the same facts as in (i) and that in the partnership's second taxable year it again has rental income of $10,000, operating expenses of $2,000, interest expense of $8,000, and cost recovery deductions of $12,000. Under the partnership agreement JB and DK are allocated $10,800 and $1,200, respectively, of the $12,000 net taxable loss incurred in the partnership's second taxable year.

```
-----------------------------------------------------------
                                      JB        DK
-----------------------------------------------------------
Capital account at beginning of year 1 ..  $2,700      $300
Less: year 2 net loss ..................  (10,800)   (1,200)
                                      -------------------
```

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

```
Capital account at end of year 2 ...... ($8,100)    ($900)
----------------------------------------------------------
```

Only $2,700 of the $10,800 net taxable loss allocated to JB satisfies the alternate economic effect test contained in paragraph (b)(2)(ii)(d) of this section as of the end of the partnership's second taxable year. The allocation of such $2,700 net taxable loss to JB (consisting of $2,250 of rental income, $450 of operating expenses, $1,800 of interest expense, and $2,700 of cost recovery deductions) has economic effect. The remaining $8,100 of net taxable loss allocated by the partnership agreement to JB must be reallocated in accordance with the partners' interests in the partnership. Under paragraph (b)(3)(iii) of this section, the determination of the partners' interests in the remaining $8,100 net taxable loss is made by comparing how distributions (and contributions) would be made if the partnership sold its property at its adjusted tax basis and liquidated immediately following the end of the partnership's first taxable year with the results of such a sale and liquidation immediately following the end of the partnership's second taxable year. If the partnership's real property were sold for its $88,000 adjusted tax basis and the partnership were liquidated immediately following the end of the partnership's first taxable year, the $88,000 sales proceeds would be used to repay the $85,000 note, and there would be $3,000 remaining in the partnership, which would be used to make liquidating distributions to DK and JB of $300 and $2,700, respectively. If such property were sold for its $76,000 adjusted tax basis and the partnership were liquidated immediately following the end of the partnership's second taxable year, DK would be required to contribute $9,000 to the partnership in order for the partnership to repay the $85,000 note, and there would be no assets remaining in the partnership to distribute. A comparison of these outcomes indicates that JB bore $2,700 and DK $9,300 of the economic burden that corresponds to the $12,000 net taxable loss. Thus, in addition to the $1,200 net taxable loss allocated to DK under the partnership agreement, $8,100 of net taxable loss will be reallocated to DK under paragraph (b)(3)(iii) of this section. Similarly, for subsequent taxable years, absent an increase in JB's capital account, all net taxable loss allocated to JB under the partnership agreement will be reallocated to DK.

(iii) Assume the same facts as in (ii) and that in the partnership's third taxable year there is rental income of $35,000, operating expenses of $2,000, interest expenses of $8,000, and cost recovery deductions of $10,000. The capital accounts of the partners maintained on the books of the partnership do not take into account the reallocation to DK of the $8,100 net taxable loss in the partnership's second taxable year. Thus, an allocation of the $15,000 net taxable income, $13,500 to JB and $1,500 to DK (as dictated by the partnership agreement and as reflected in the capital accounts of the partners) does not have economic effect. The partners' interests in the partnership with respect to such $15,000 taxable gain again is made in the manner described in paragraph (b)(3)(iii) of this section. If the partnership's real property were sold for its $76,000 adjusted tax basis and the partnership were liquidated immediately following the end of the partnership's second taxable year, DK would be required to contribute $9,000 to the partnership in order for the partnership to repay the $85,000 note, and there would be no assets remaining to distribute. If such property were sold for its $66,000 adjusted tax basis and the partnership were liquidated immediately following the end of the partnership's third taxable year, the $91,000 ($66,000 sales proceeds plus $25,000 cash on hand) would be used to repay the $85,000 note and there would be $6,000 remaining in the partnership, which would be used to make liquidating distributions to DK and JB of $600 and $5,400, respectively. Accordingly, under paragraph (b)(3)(iii) of this section the $15,000 net taxable income in the partnership's third taxable year will be reallocated $9,600 to DK (minus $9,000 at end of the second taxable year to positive $600 at end of the third taxable year) and $5,400 to JB (zero at end of the second taxable year to positive $5,400 at end of the third taxable year).

**Example (16).** (i) KG and WN form a limited partnership for the purpose of investing in improved real estate. KG, the general partner, contributes $10,000 to the partnership, and WN, the limited partner, contributes $990,000 to the partnership. The $1,000,000 is used to purchase an apartment building on leased land. The partnership agreement provides that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(1) the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section; (2) cash will be distributed first to WN until such time as he has received the amount of his original capital contribution ($990,000), next to KG until such time as he has received the amount of his original capital contribution ($10,000), and thereafter equally between WN and KG; (3) partnership net taxable income will be allocated 99 percent to WN and 1 percent to KG until the cumulative net taxable income allocated for all taxable years is equal to the cumulative net taxable loss previously allocated to the partners, and thereafter equally between WN and KG; (4) partnership net taxable loss will be allocated 99 percent to WN and 1 percent to KG, unless net taxable income has previously been allocated equally between WN and KG, in which case such net taxable loss first will be allocated equally until the cumulative net taxable loss allocated for all taxable years is equal to the cumulative net taxable income previously allocated to the partners; and (5) upon liquidation, WN is not required to restore any deficit balance in his capital account, but KG is so required. Since distributions in liquidation are not required to be made in accordance with the partners' positive capital account balances, and since WN is not required, upon the liquidation of his interest, to restore the deficit balance in his capital account to the partnership, the allocations provided by the partnership agreement do not have economic effect and will be reallocated in accordance with the partners' interests in the partnership under paragraph (b)(3) of this section.

(ii) Assume the same facts as in (i) except that the partnership agreement further provides that distributions in liquidation of the partnership (or any partner's interest) are to be made in accordance with the partners' positive capital account balances (as set forth in paragraph (b)(2)(ii)(b)(2) of this section). Assume further that the partnership agreement contains a qualified income offset (as defined in paragraph (b)(2)(ii)(d) of this section) and that, as of the end of each partnership taxable year, the items described in paragraphs (b)(2)(iii)(d)(4), (5), and (6) of this section are not reasonably expected to cause or increase a deficit balance in WN's capital account. The allocations provided by the partnership agreement have economic effect.

**Example (17).** FG and RP form a partnership with FG contributing cash of $100 and RP contributing property, with 2 years of cost recovery deductions remaining, that has an adjusted tax basis of $80 and a fair market value of $100. The partnership, FG, and RP have calendar taxable years. The partnership agreement provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, liquidation proceeds will be made in accordance with capital account balances, and each partner is liable to restore the deficit balance in his capital account to the partnership upon liquidation of his interest (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). FG expects to be in a substantially higher tax bracket than RP in the partnership's first taxable year. In the partnership's second taxable year, and in subsequent taxable years, it is expected that both will be in approximately equivalent tax brackets. The partnership agreement allocates all items equally except that all $50 of book depreciation is allocated to FG in the partnership's first taxable year and all $50 of book depreciation is allocated to RP in the partnership's second taxable year. If the allocation to FG of all book depreciation in the partnership's first taxable year is respected, FG would be entitled under section 704(c) to the entire cost recovery deduction ($40) for such year. Likewise, if the allocation to RP of all the book depreciation in the partnership's second taxable year is respected, RP would be entitled under section 704(c) to the entire cost recovery deduction ($40) for such year. The allocation of book depreciation to FG and RP in the partnership's first 2 taxable years has economic effect within the meaning of paragraph (b)(2)(ii) of this section. However, the economic effect of these allocations is not substantial under the test described in paragraph (b)(2)(iii)(c) of this section since there is a strong likelihood at the time such allocations became part of the partnership agreement that at the end of the 2-year period to which such allocations relate, the net increases and decreases to FG's and RP's capital accounts will be the same with such allocations as they would have been in the absence of such allocation, and the total tax liability of FG and RP for the taxable years to which the section 704(c) determinations relate would be reduced as a result of the allocations of book depreciation. As a result the allocations of book depreciation in the partnership agreement will be disregarded. FG and RP will be allocated such book depreciation in accordance with the partners' interests in the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

partnership under paragraph (b)(3) of this section. Under these facts the book depreciation deductions will be reallocated equally between the partners, and section 704(c) will be applied with reference to such reallocation of book depreciation.

**Example (18).** (i) WM and JL form a general partnership by each contributing $300,000 thereto. The partnership uses the $600,000 to purchase an item of tangible personal property, which it leases out. The partnership elects under section 48(q)(4) to reduce the amount of investment tax credit in lieu of adjusting the tax basis of such property. The partnership agreement provides that (1) the partners' capital account will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, (2) distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances (as set forth in paragraph (b)(2)(ii)(b)(2) of this section), (3) any partner with a deficit balance in his capital account following the liquidation of his interest must restore that deficit to the partnership (as set forth in paragraph (b)(2)(ii)(b)(3) of this section), (4) all income, gain, loss, and deduction of the partnership will be allocated equally between the partners, and (5) all non-liquidating distributions of the partnership will be made equally between the partners. Assume that in each of the partnership's taxable years, it recognizes operating income equal to its operating deductions (excluding cost recovery and depreciation deductions and gain or loss on the sale of its property). During its first 2 taxable years, the partnership has an additional $200,000 cost recovery deduction in each year. Pursuant to the partnership agreement these items are allocated equally between WM and JL.

```
---------------------------------------------------------
                                       WM         JL
---------------------------------------------------------
Capital account upon formation .....  $300,000    $300,000
Less: net loss for years 1 and 2 ... (200,000)   (200,000)
                                      ---------------------
Capital account at end of year 2 ...  $100,000    $100,000
---------------------------------------------------------
```

The allocations made in the partnership's first 2 taxable years have substantial economic effect.

(ii) Assume the same facts as in (i) and that MK is admitted to the partnership at the beginning of the partnership's third taxable year. At the time of his admission, the fair market value of the partnership property is $600,000. MK contributes $300,000 to the partnership in exchange for an equal one-third interest in the partnership, and, as permitted under paragraph (b)(2)(iv)(g), the capital accounts of WM and JL are adjusted upward to $300,000 each to reflect the fair market value of partnership property. In addition, the partnership agreement is modified to provide that depreciation and gain or loss, as computed for tax purposes, with respect to the partnership property that appreciated prior to MK's admission will be shared among the partners in a manner that takes account of the variation between such property's $200,000 adjusted tax basis and its $600,000 book value in accordance with paragraph (b)(2)(iv)(f) and the special rule contained in paragraph (b)(4)(i) of this section. Depreciation and gain or loss, as computed for book purposes, with respect to such property will be allocated equally among the partners and, in accordance with paragraph (b)(2)(iv)(g) of this section, will be reflected in the partner's capital accounts, as will all other partnership income, gain, loss, and deduction. Since the requirements of (b)(2)(iv)(g) of this section are satisfied, the capital accounts of the partners (as adjusted) continue to be maintained in accordance with paragraph (b)(2)(iv) of this section.

(iii) Assume the same facts as in (ii) and that immediately after MK's admission to the partnership, the partnership property is sold for $600,000, resulting in a taxable gain of $400,000 ($600,000 less $200,000 adjusted tax basis) and no book gain or loss, and the partnership is liquidated. An allocation of the $400,000 taxable gain cannot have economic effect

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

because such gain cannot properly be reflected in the partners' book capital accounts. Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the $400,000 taxable gain will, in accordance with section 704(c) principles, be shared equally between WM and JL.

| | WM | | JL | | MK | |
|---|---|---|---|---|---|---|
| | Tax | Book | Tax | Book | Tax | Book |
| Capital account at beginning of year 3 ................ | $100,000 | $300,000 | $100,000 | $300,000 | $300,000 | $300,000 |
| Plus: gain ......... | 200,000 | 0 | 200,000 | 0 | 0 | 0 |
| Capital account before liquidation ...... | $300,000 | $300,000 | $300,000 | $300,000 | $300,000 | $300,000 |

The $900,000 of partnership cash ($600,000 sales proceeds plus $300,000 contributed by MK) is distributed equally among WM, JL, and MK in accordance with their adjusted positive capital account balances, each of which is $300,000.

(iv) Assume the same facts as in (iii) except that prior to liquidation the property appreciates and is sold for $900,000, resulting in a taxable gain of $700,000 ($900,000 less $200,000 adjusted tax basis) and a book gain of $300,000 ($900,000 less $600,000 book value). Under the partnership agreement the $300,000 of book gain is allocated equally among the partners, and such allocation has substantial economic effect.

| | WM | | JL | | MK | |
|---|---|---|---|---|---|---|
| | Tax | Book | Tax | Book | Tax | Book |
| Capital account at beginning of year 3 ................ | $100,000 | $300,000 | $100,000 | $300,000 | $300,000 | $300,000 |
| Plus: gain ......... | 300,000 | 100,000 | 300,000 | 100,000 | 100,000 | 100,000 |
| Capital account before liquidation ...... | $400,000 | $400,000 | $400,000 | $400,000 | $400,000 | $400,000 |

Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the $700,000 taxable gain is, in accordance with section 704(c) principles, shared

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

$300,000 to JL, $300,000 to WM, and $100,000 to MK. This ensures that (1) WM and JL share equally the $400,000 taxable gain that is attributable to appreciation in the property that occurred prior to MK's admission to the partnership in the same manner as it was reflected in their capital accounts upon MK's admission, and (2) WM, JL, and MK share equally the additional $300,000 taxable gain in the same manner as they shared the $300,000 book gain.

(v) Assume the same facts as in (ii) except that shortly after MK's admission the property depreciates and is sold for $450,000, resulting in a taxable gain of $250,000 ($450,000 less $200,000 adjusted tax basis) and a book loss of $150,000 ($450,000 less $600,000 book value). Under the partnership agreement these items are allocated as follows:

| | WM | | JL | | MK | |
|---|---|---|---|---|---|---|
| | Tax | Book | Tax | Book | Tax | Book |
| Capital account at beginning of year 3 ......... | $100,000 | $300,000 | $100,000 | $300,000 | $300,000 | $300,000 |
| Plus: gain ....... | 125,000 | 0 | 125,000 | 0 | 0 | 0 |
| Less: loss ....... | 0 | (50,000) | 0 | (50,000) | 0 | (50,000) |
| Capital account before liquidation .... | $225,000 | $250,000 | $225,000 | $250,000 | $300,000 | $250,000 |

The $150,000 book loss is allocated equally among the partners, and such allocation has substantial economic effect. Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the $250,000 taxable gain is, in accordance with section 704(c) principles, shared equally between WM and JL. The fact that MK bears an economic loss of $50,000 without a corresponding taxable loss is attributable entirely to the "ceiling rule." See paragraph (c)(2) of s 1.704-1.

(vi) Assume the same facts as in (ii) except that the property depreciates and is sold for $170,000, resulting in a $30,000 taxable loss ($200,000 adjusted tax basis less $170,000) and a book loss of $430,000 ($600,000 book value less $170,000). The book loss of $430,000 is allocated equally among the partners ($143,333 each) and has substantial economic effect. Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the entire $30,000 taxable loss is, in accordance with section 704(c) principles, included in MK's distributive share.

| | WM | | JL | | MK | |
|---|---|---|---|---|---|---|
| | Tax | Book | Tax | Book | Tax | Book |
| Capital account at | | | | | | |

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD    Document 107-13    05/27/11    Page 45 of 62

```
beginning of year
  3 .............. $100,000  $300,000  $100,000  $300,000  $300,000  $300,000
Less: loss ........       0  (143,333)       0  (143,333)  (30,000)  (143,333)
                   -----------------------------------------------------------
Capital account
before
  liquidation ..... $100,000  $156,667  $100,000  $156,667  $270,000  $156,667
-------------------------------------------------------------------------------
```

(vii) Assume the same facts as in (ii) and that during the partnership's third taxable year, the partnership has an additional $100,000 cost recovery deduction and $300,000 book depreciation deduction attributable to the property purchased by the partnership in its first taxable year. The $300,000 book depreciation deduction is allocated equally among the partners, and that allocation has substantial economic effect. Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the $100,000 cost recovery deduction for the partnership's third taxable year is, in accordance with section 704(c) principles, included in MK's distributive share. This is because under these facts those principles require MK to include the cost recovery deduction for such property in his distributive share up to the amount of the book depreciation deduction for such property properly allocated to him.

```
-------------------------------------------------------------------------------
                           WM                 JL                 MK
                   ---------------------------------------------------------
                    Tax      Book      Tax      Book      Tax      Book
-------------------------------------------------------------------------------
Capital account at
  beginning of year 3 $100,000  $300,000 $100,000  $300,000 $300,000  $300,000
Less: recovery/
  depreciation
  deduction for year
  3 .................      0  (100,000)       0 (100,000) (100,000) (100,000)
                   ---------------------------------------------------------
Capital account at
  end of year 3 ..... $100,000  $200,000 $100,000  $200,000 $200,000  $200,000
-------------------------------------------------------------------------------
```

(viii) Assume the same facts as in (vii) except that upon MK's admission the partnership property has an adjusted tax basis of $220,000 (instead of $200,000), and thus the cost recovery deduction for the partnership's third taxable year is $110,000. Assume further that upon MK's admission WM and JL have adjusted capital account balances of $110,000 and $100,000, respectively. Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the excess $10,000 cost recovery deduction ($110,000 less $100,000 included in MK's distributive share) is, in accordance with section 704(c) principles, shared equally between WM and JL and is so included in their respective distributive shares for the partnership's third taxable year.

(ix) Assume the same facts as in (vii) except that upon MK's admission the partnership agreement is amended to allocate

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

the first $400,000 of book depreciation and loss on partnership property equally between WM and JL and the last $200,000 of such book depreciation and loss to MK. Assume such allocations have substantial economic effect. Pursuant to this amendment the $300,000 book depreciation deduction in the partnership's third taxable year is allocated equally between WM and JL. Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the $100,000 cost recovery deduction is, in accordance with section 704(c) principles, shared equally between WM and JL. In the partnership's fourth taxable year, it has a $60,000 cost recovery deduction and a $180,000 book depreciation deduction. Under the amendment described above, the $180,000 book depreciation deduction is allocated $50,000 to WM, $50,000 to JL, and $80,000 to MK. Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the $60,000 cost recovery deduction is, in accordance with section 704(c) principles, included entirely in MK's distributive share.

|  | WM | | JL | | MK | |
|---|---|---|---|---|---|---|
|  | Tax | Book | Tax | Book | Tax | Book |
| Capital account at beginning of year 3 ................ | $100,000 | $300,000 | $100,000 | $300,000 | $300,000 | $300,000 |
| Less: | | | | | | |
| (a) recovery/ depreciation deduction for year 3 | (50,000) | (150,000) | (50,000) | (150,000) | 0 | 0 |
| (b) recovery/ depreciation deduction for year 4 | 0 | (50,000) | 0 | (50,000) | (60,000) | (80,000) |
| Capital account at end of year 4 .... | $50,000 | $100,000 | $50,000 | $100,000 | $240,000 | $220,000 |

(x) Assume the same facts as in (vii) and that at the beginning of the partnership's third taxable year, the partnership purchases a second item of tangible personal property for $300,000 and elects under section 48(q)(4) to reduce the amount of investment tax credit in lieu of adjusting the tax basis of such property. The partnership agreement is amended to allocate the first $150,000 of cost recovery deductions and loss from such property to WM and the next $150,000 of cost recovery deductions and loss from such property equally between JL and MK. Thus, in the partnership's third taxable year it has, in addition to the items specified in (vii), a cost recovery and book depreciation deduction of $100,000 attributable to the newly acquired property, which is allocated entirely to WM.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

As in (vii), the allocation of the $300,000 book depreciation attributable to the property purchased in the partnership's first taxable year equally among the partners has substantial economic effect, and consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement properly provides for the entire $100,000 cost recovery deduction attributable to such property to be included in MK's distributive share. Furthermore, the allocation to WM of the $100,000 cost recovery deduction attributable to the property purchased in the partnership's third taxable year has substantial economic effect.

| | | WM | | JL | | MK | |
|---|---|---|---|---|---|---|---|
| | | Tax | Book | Tax | Book | Tax | Book |
| Capital account at beginning of year 3 ............. | | $100,000 | $300,000 | $100,000 | $300,000 | $300,000 | $ 300,000 |
| Less: | | | | | | | |
| (a) | recovery/ depreciation deduction for property bought in year 1 | 0 | (100,000) | 0 | (100,000) | (100,000) | (100,000) |
| (b) | recovery/ depreciation deduction for property bought in year 3 | (100,000) | (100,000) | 0 | 0 | 0 | 0 |
| Capital account at end of year 3 ... | | 0 | $100,000 | $100,000 | $200,000 | $200,000 | $200,000 |

(xi) Assume the same facts as in (x) and that at the beginning of the partnership's fourth taxable year, the properties purchased in the partnership's first and third taxable years are disposed of for $90,000 and $180,000, respectively, and the partnership is liquidated. With respect to the property purchased in the first taxable year, there is a book loss of $210,000 ($300,000 book value less $90,000) and a taxable loss of $10,000 ($100,000 adjusted tax basis less $90,000). The book loss is allocated equally among the partners, and such allocation has substantial economic effect. Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the taxable loss of $10,000 will, in accordance with section 704(c) principles, be included entirely in MK's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

distributive share. With respect to the property purchased in the partnership's third taxable year, there is a book and taxable loss of $20,000. Pursuant to the partnership agreement this loss is allocated entirely to WM, and such allocation has substantial economic effect.

```
-----------------------------------------------------------------------
                          WM                JL                MK
                   ----------------------------------------------------
                    Tax      Book     Tax      Book     Tax      Book
-----------------------------------------------------------------------
Capital account at
  beginning of year 4    0 $100,000 $100,000 $200,000 $200,000 $200,000
Less:
  (a)   loss on          0  (70,000)       0  (70,000) (10,000) (70,000)
        property
        bought in
        year 1
  (b)   loss on   (20,000) (20,000)        0        0        0        0
        property
        bought in
        year 3
                   ----------------------------------------------------
  Capital account
  before liquidation ($20,000) $10,000 $100,000 $130,000 $190,000 $130,000
-----------------------------------------------------------------------
```

Partnership liquidation proceeds ($270,000) are properly distributed in accordance with the partners' adjusted positive book capital account balances ($10,000 to WM, $130,000 to JL and $130,000 to MK).

(xii) Assume the same facts as in (x) and that in the partnership's fourth taxable year it has a cost recovery deduction of $60,000 and book depreciation deduction of $180,000 attributable to the property purchased in the partnership's first taxable year, and a cost recovery and book depreciation deduction of $100,000 attributable to the property purchased in the partnership's third taxable year. The $180,000 book depreciation deduction attributable to the property purchased in the partnership's first taxable year is allocated equally among the partners, and such allocation has substantial economic effect. Consistent with the special partners' interests in the partnership rule contained in paragraph (b)(4)(i) of this section, the partnership agreement provides that the $60,000 cost recovery deduction attributable to the property purchased in the first taxable year is, in accordance with section 704(c) principles, included entirely in MK's distributive share. Furthermore, the $100,000 cost recovery deduction attributable to the property purchased in the third taxable year is allocated $50,000 to WM, $25,000 to JL, and $25,000 to MK, and such allocation has substantial economic effect.

```
-----------------------------------------------------------------------
                          WM                JL                MK
                   ----------------------------------------------------
                    Tax      Book     Tax      Book     Tax      Book
-----------------------------------------------------------------------
```

```
Capital account at
  beginning of year
  4 .................       0   $100,000  $100,000  $200,000  $200,000  $200,000
Less:
  (a)   recovery/          0   (60,000)        0  (60,000)  (60,000)  (60,000)
        deprecia-
        tion deduc-
        tion for
        property
        bought in
        year 1
  (b)   recovery/     (50,000)  (50,000)  (25,000)  (25,000)  (25,000)  (25,000)
        deprecia-
        tion deduc-
        tion for
        property
        bought in
        year 3
                     -----------------------------------------------------------
Capital account at
  end of year 4 .... ($50,000)  ($10,000)  $75,000  $115,000  $115,000  $115,000
---------------------------------------------------------------------------------
```

At the end of the partnership's fourth taxable year the adjusted tax bases of the partnership properties acquired in its first and third taxable years are $40,000 and $100,000, respectively. If the properties are disposed of at the beginning of the partnership's fifth taxable year for their adjusted tax bases, there would be no taxable gain or loss, a book loss of $80,000 on the property purchased in the partnership's first taxable year ($120,000 book value less $40,000), and cash available for distribution of $140,000.

```
---------------------------------------------------------------------------------
                          WM                  JL                  MK
                ---------------------------------------------------------------
                   Tax       Book       Tax       Book       Tax       Book
                ---------------------------------------------------------------
Capital account
  at beginning
  of year 5 ..... ($50,000)  ($10,000)  $75,000  $115,000  $115,000  $115,000
Less: loss ......        0   (26,667)        0  (26,667)        0  (26,667)
                ---------------------------------------------------------------
  Capital
  account before
  liquidation ... ($50,000)  ($36,667)  $75,000   $88,333  $115,000   $88,333
---------------------------------------------------------------------------------
```

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

If the partnership is then liquidated, the $140,000 of cash on hand plus the $36,667 balance that WM would be required to contribute to the partnership (the deficit balance in his book capital account) would be distributed equally between JL and MK in accordance with their adjusted positive book capital account balances.

(xiii) Assume the same facts as in (i). Any tax preferences under section 57(a)(12) attributable to the partnership's cost recovery deductions in the first 2 taxable years will be taken into account equally by WM and JL. If the partnership agreement instead provides that the partnership's cost recovery deductions in its first 2 taxable years are allocated 25 percent to WM and 75 percent to JL (and such allocations have substantial economic effect), the tax preferences attributable to such cost recovery deductions would be taken into account 25 percent by WM and 75 percent by JL. The conclusion in the previous sentence would be unchanged even if the partnership's operating expenses (exclusive of cost recovery and depreciation deductions) exceed its operating income in each of the partnership's first 2 taxable years, the resulting net loss is allocated entirely to WM, and the cost recovery deductions are allocated 25 percent to WM and 75 percent to JL (provided such allocations have substantial economic effect). If the partnership agreement instead provides that all income, gain, loss, and deduction (including cost recovery and depreciations) are allocated equally between JL and WM, the tax preferences attributable to the cost recovery deductions would be taken into account equally by JL and WM. In this case, if the partnership has a $100,000 cost recovery deduction in its first taxable year and an additional net loss of $100,000 in its first taxable year (i.e., its operating expenses exceed its operating income by $100,000) and purports to categorize JL's $100,000 distributive share of partnership loss as being attributable to the cost recovery deduction and WM's $100,000 distributive share of partnership loss as being attributable to the net loss, the economic effect of such allocations is not substantial, and each partner will be allocated one-half of all partnership income, gain, loss, and deduction and will take into account one-half of the tax preferences attributable to the cost recovery deductions.

**Example (19).** (i) DG and JC form a general partnership for the purpose of drilling oil wells. DG contributes an oil lease, which has a fair market value and adjusted tax basis of $100,000. JC contributes $100,000 in cash, which is used to finance the drilling operations. The partnership agreement provides that DG is credited with a capital account of $100,000, and JC is credited with a capital account of $100,000. The agreement further provides that the partners' capital accounts will be determined and maintained in accordance with paragraph (b)(2)(iv) of this section, distributions in liquidation of the partnership (or any partner's interest) will be made in accordance with the partners' positive capital account balances, and any partner with a deficit balance in his capital account following the liquidation of his interest must restore such deficit to the partnership (as set forth in paragraphs (b)(2)(ii)(b)(2) and (3) of this section). The partnership chooses to adjust capital accounts on a simulated cost depletion basis and elects under section 48(q)(4) to reduce the amount of investment tax credit in lieu of adjusting the basis of its section 38 property. The agreement further provides that (1) all additional cash requirements of the partnership will be borne equally by DG and JC, (2) the deductions attributable to the property (including money) contributed by each partner will be allocated to such partner, (3) all other income, gain, loss, and deductions (and item thereof) will be allocated equally between DG and JC, and (4) all cash from operations will be distributed equally between DG and JC. In the partnership's first taxable year $80,000 of partnership intangible drilling cost deductions and $20,000 of cost recovery deductions on partnership equipment are allocated to JC, and the $100,000 basis of the lease is, for purposes of the depletion allowance under sections 611 and 613A(c)(7)(D), allocated to DG. The allocations of income, gain, loss, and deduction provided in the partnership agreement have substantial economic effect. Furthermore, since the allocation of the entire basis of the lease to DG will not result in capital account adjustments (under paragraph (b)(2)(iv)(k) of this section) the economic effect of which is insubstantial, and since all other partnership allocations are recognized under this paragraph, the allocation of the $100,000 adjusted basis of the lease to DG is, under paragraph (b)(4)(v) of this section, recognized as being in accordance with the partners' interests in partnership capital for purposes of section 613A(c)(7)(D).

(ii) Assume the same facts as in (i) except that the partnership agreement provides that (1) all additional cash require-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD    Document 107-13    05/27/11    Page 51 of 62

ments of the partnership for additional expenses will be funded by additional contributions from JC, (2) all cash from operations will first be distributed to JC until the excess of such cash distributions over the amount of such additional expense equals his initial $100,000 contributions, (3) all deductions attributable to such additional operating expenses will be allocated to JC, and (4) all income will be allocated to JC until the aggregate amount of income allocated to him equals the amount of partnership operating expenses funded by his initial $100,000 contribution plus the amount of additional operating expenses paid from contributions made solely by him. The allocations of income, gain, loss, and deduction provided in partnership agreement have economic effect. In addition, the economic effect of the allocations provided in the agreement is substantial. Because the partnership's drilling activities are sufficiently speculative, there is not a strong likelihood at the time the disproportionate allocations of loss and deduction to JC are provided for by the partnership agreement that the economic effect of such allocations will be largely offset by allocations of income. In addition, since the allocation of the entire basis of the lease to DG will not result in capital account adjustments (under paragraph (b)(2)(iv)(k) of this section) the economic effect of which is insubstantial, and since all other partnership allocations are recognized under this paragraph, the allocation of the adjusted basis of the lease to DG is, under paragraph (b)(4)(v) of this section, recognized as being in accordance with the partners' interests in partnership capital under section 613A(c)(7)(D).

(iii) Assume the same facts as in (i) except that all distributions, including those made upon liquidation of the partnership, will be made equally between DG and JC, and no partner is obligated to restore the deficit balance in his capital account to the partnership following the liquidation of his interest for distribution to partners with positive capital account balances. Since liquidation proceeds will be distributed equally between DG and JC irrespective of their capital account balances, and since no partner is required to restore the deficit balance in his capital account to the partnership upon liquidation (in accordance with paragraph (b)(2)(ii)(b)(3) of this section), the allocations of income, gain, loss, and deduction provided in the partnership agreement do not have economic effect and must be reallocated in accordance with the partners' interests in the partnership under paragraph (b)(3) of this section. Under these facts all partnership income, gain, loss, and deduction (and item thereof) will be reallocated equally between JC and DG. Furthermore, the allocation of the $100,000 adjusted tax basis of the lease of DG is not, under paragraph (b)(4)(v) of this section, deemed to be in accordance with the partners' interests in partnership capital under section 613A(c)(7)(D), and such basis must be reallocated in accordance with the partners' interests in partnership capital or income as determined under section 613A(c)(7)(D). The results in this example would be the same if JC's initial cash contribution were $1,000,000 (instead of $100,000), but in such case the partners should consider whether, and to what extent, the provisions of paragraph (b)(1) of s 1.721-1, and principles related thereto, may be applicable.

(iv) Assume the same facts as in (i) and that for the partnership's first taxable year the simulated depletion deduction with respect to the lease is $10,000. Since DG properly was allocated the entire depletable basis of the lease (such allocation having been recognized as being in accordance with DG's interest in partnership capital with respect to such lease), under paragraph (b)(2)(iv)(k)(1) of this section the partnership's $10,000 simulated depletion deduction is allocated to DG and will reduce his capital account accordingly. If (prior to any additional simulated depletion deductions) the lease is sold for $100,000, paragraph (b)(4)(v) of this section requires that the first $90,000 (i.e., the partnership's simulated adjusted basis in the lease) out of the $100,000 amount realized on such sale be allocated to DG (but does not directly affect his capital account). The partnership agreement allocates the remaining $10,000 amount realized equally between JC and DG (but such allocation does not directly affect their capital accounts). This allocation of the $10,000 portion of amount realized that exceeds the partnership's simulated adjusted basis in the lease will be treated as being in accordance with the partners' allocable shares of such amount realized under section 613A(c)(7)(D) because such allocation will not result in capital account adjustments (under paragraph (b)(2)(iv)(k) of this section) the economic effect of which is insubstantial, and all other partnership allocations are recognized under this paragraph. Under paragraph (b)(2)(iv)(k) of this section,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

the partners' capital accounts are adjusted upward by the partnership's simulated gain of $10,000 ($100,000 sales price less $90,000 simulated adjusted basis) in proportion to such partners' allocable shares of the $10,000 portion of the total amount realized that exceeds the partnership's $90,000 simulated adjusted basis ($5,000 to JC and $5,000 to DG). If the lease is sold for $50,000, under paragraph (b)(4)(v) of this section the entire $50,000 amount realized on the sale of the lease will be allocated to DG (but will not directly affect his capital account). Under paragraph (b)(2)(iv)(k) of this section the partners' capital accounts will be adjusted downward by the partnership's $40,000 simulated loss ($50,000 sales price less $90,000 simulated adjusted basis) in proportion to the partners' allocable shares of the total amount realized from the property that represents recovery of the partnership's simulated adjusted basis therein. Accordingly, DG's capital account will be reduced by such $40,000.

**(c) Contributed property--(1) In general.** Where property has actually been contributed by a partner to a partnership (so as to become partnership property as among the partners and not merely property subject to the claims of partnership creditors), section 704(c) and this paragraph provide rules for determining a partner's distributive share of depreciation, depletion, or gain or loss with respect to such contributed property. These rules do not apply to property, only the use of which is permitted the partnership by the partner who owns it. Section 704(c) and this paragraph provide certain alternatives in determining the partners' distributive shares of such items in order to account for precontribution appreciation or diminution in value of the property contributed. When the partnership agreement is silent as to the treatment of such items with respect to contributed property (and if such property is not an undivided interest as described in section 704(c)(3)), depreciation, depletion, or gain or loss with respect to such property shall be treated in the same manner as though such items arose with respect to property purchased by the partnership. The application of this provision may be illustrated by the following examples:

**Example (1).** A and B form an equal partnership. A contributes $1,000 cash and B contributes inventory with an adjusted basis to him of $800 and a fair market value of $1,000. Under section 723, the basis of the inventory to the partnership is also $800. During the year, the inventory is sold for $1,100. There is no provision in the partnership agreement for treatment of items with respect to contributed property. Under section 704(c)(1), the $300 profit on the sale of the inventory is treated as if it were gain on property that had been purchased by the partnership and subsequently sold. Therefore, each partner's distributive share of such profit on the inventory is $150.

**Example (2).** C and D form an equal partnership. C contributes machinery worth $10,000 with an adjusted basis to him of $4,000. D contributes $10,000 cash. Under the provisions of section 722, the basis of C's partnership interest is $4,000 and the basis of D's interest is $10,000. There is no provision in the partnership agreement relating to contributed property. If the contributed property depreciates at an annual rate of 10 percent, the partnership will have an annual depreciation deduction of $400, which will result in a reduction of $200 in each partner's distributive share of partnership income. Thus, at the end of the first year, the adjusted basis of the contributed property will be $3,600. If the partnership has no other taxable income or loss for that year, each partner will have a deduction of $200, representing his distributive share of partnership loss for the year. C's adjusted basis for his interest will be $3,800 ($4,000, the original basis of his interest, reduced by $200); D's adjusted basis will be $9,800 ($10,000, reduced by $200).

**Example (3).** Assume that the property in example (2) of this subparagraph is sold at the beginning of the second year of partnership operation for $9,000. The partnership gain will be $5,400 ($9,000, the amount realized, less the adjusted basis of $3,600). Each partner's share of the $5,400 gain will be $2,700. If the partnership has no other taxable income or loss for that year, each partner will have a gain from the partnership of $2,700, representing his distributive share of gain from the sale of property used in the partnership business. C's adjusted basis for his interest will then be $6,500 (the basis of $3,800, increased by the gain of $2,700). D's adjusted basis will be $12,500 (the basis of $9,800, increased by the gain of $2,700). If the partnership is then terminated, and its assets consisting of $19,000 in cash are distributed to the partners

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

pro rata in liquidation of their entire interests, C will have a capital gain of $3,000 ($9,500, the amount received, less $6,500, the adjusted basis of his interest). D will have a capital loss of $3,000 (D's adjusted basis, $12,500, reduced by the amount received $9,500).

**(2) Effect of partnership agreement. (i)** If the partners so provide in the partnership agreement, depreciation, depletion, or gain or loss with respect to contributed property may be allocated among the partners in a manner which takes into account all or any portion of the difference between the adjusted basis and the fair market value of contributed property at the time of contribution. The allocation may apply to all contributed property or to specific items. The appreciation or diminution in value represented by the difference between the adjusted basis and the fair market value of contributed property at the time of contribution may thus be attributed to the contributing partner upon a subsequent sale or exchange of the property by the partnership. Such appreciation or diminution also may be used in allocating the allowable depreciation or depletion with respect to such property among the contributing partner and the noncontributing partners. In any case, however, the total depreciation, depletion, or gain or loss allocated to the partners is limited to a "ceiling" which cannot exceed the amount of gain or loss realized by the partnership or the depreciation or depletion allowable to it. The application of this subdivision may be illustrated by the following examples:

**Example (1).** Assume that partners C and D, in examples (2) and (3) of subparagraph (1) of this paragraph, agree under section 704(c)(2) to attribute to C, the contributor of the machinery, the potential gain of $6,000 represented by the difference between its adjusted basis of $4,000 and its fair market value of $10,000. With his contribution of $10,000 cash, D has, in effect, purchased an undivided one-half interest in the property for $5,000. Since the property depreciates at an annual rate of 10 percent, D would have been entitled to a depreciation deduction of $500 per year. However, since under the "ceiling" approach the partnership is allowed only $400 per year (10 percent of $4,000), no more than $400 may be allocated between the partners, i.e., the partnership cannot allocate $500 of depreciation to D and thereby treat C as if C had received an additional $100 of income. Therefore, the partners allocate the $400 deduction for depreciation entirely to D and none to C, the contributor. At the end of the first year, the adjusted basis of the contributed property will be $3,600. Since the $400 deduction is allocated entirely to D, if the partnership has no other taxable income or loss, C will have no income or loss, and D will have a deduction of $400. C's basis for his interest will remain $4,000. D's adjusted basis for his interest will be $9,600 ($10,000, the original basis of his interest, reduced by the deduction of $400).

**Example (2).** Assume that the partners in example (1) of this subdivision also agree under section 704(c)(2) that, upon a sale of the contributed property, the portion of the proceeds attributable to the excess of the fair market value of the property at date of contribution (less accumulated depreciation on such value) over its basis at date of contribution (less accumulated depreciation on such basis) shall result in gain to the contributing partner only. If the property is sold at the beginning of the second year of partnership operation for $9,000, the partnership gain of $5,400 ($9,000, the amount realized, less the adjusted basis of $3,600) must be allocated to the partners under the terms of the agreement. The fair market value of the property as depreciated is $9,000 ($10,000, the value on contribution, less $1,000, the accumulated depreciation on such value). Under section 704(c)(2) and the terms of the partnership agreement, the $5,400 difference between $9,000, the fair market value as depreciated, and $3,600, the adjusted basis of the property, represents the portion of the gain to be allocated to C. None of this gain is allocated to D. (If the property were sold for more than $9,000, the portion of the gain in excess of $5,400 would be allocated equally between the partners in accordance with their agreement for sharing gains. If the property were sold for less than $9,000, the entire gain would be allocated to C and nothing to D.) If the partnership and partners engaged in no other transactions that year, C will report a gain of $5,400, and D, no income or loss. C's adjusted basis for his interest will then be $9,400 ($4,000, his original basis, increased by the gain of $5,400). D's adjusted basis will be $9,000 ($10,000, his original basis, less $400 depreciation deduction in the first partnership year). If the partnership is then terminated, and its assets consisting of $19,000 in cash are distributed to the partners pro rata in liquidation of their interests, C will have a capital gain of $100 ($9,500, the amount received, less

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD    Document 107-13    05/27/11    Page 54 of 62

$9,400, the adjusted basis of his interest). D will have a capital loss of $100 (the excess of D's adjusted basis, $9,600, over the amount received, $9,500).

**(ii)** For the effect of an agreement under section 704(c)(2) on undivided interests in property contributed to the partnership where the partners' interests in the capital and profits of the partnership do not correspond with such undivided interests, see subparagraph (3)(ii) of this paragraph.

**(3) Undivided interests. (i)** Section 704(c)(3) provides a special rule for the allocation of depreciation, depletion, or gain or loss with respect to undivided interests in property contributed by the partners to a partnership where the partnership agreement does not provide otherwise. This provision applies only to property contributed to a partnership by all of its partners and only where the relative undivided interests of the partners in the property prior to the contribution are in the same ratio as their interests in the capital and in the profits of the partnership (except for depreciation, depletion, or gain or loss with respect to the contributed undivided interest) after the contribution. Where these conditions are met, depreciation, depletion, or gain or loss with respect to the undivided interests in contributed property shall be determined in the same manner as though such undivided interests continued to be held by the partners outside the partnership. The rule stated in section 704(c)(3) applies only to the case where persons actually contribute undivided interests to a partnership. The provisions of this subdivision may be illustrated by the following examples:

**Example (1).** A and B are tenants in common owning undivided one-half interests in improved real estate consisting of land on which a factory is situated. They each contribute their respective undivided interests in the real estate to a partnership in which the profits are to be divided equally and, because the partners have equal shares in the capital, the assets will be divided equally on dissolution. A's basis for his undivided one-half interest is $4,000, of which $1,000 is allocable to the land and $3,000 to the factory. B's basis for his undivided one-half interest is $10,000, of which $3,000 is allocable to the land and $7,000 to the factory. The partnership agreement contains no provisions as to the allocation of depreciation or gain or loss on disposition of the property by the partnership. The factory depreciates at a rate of 5 percent a year. The annual partnership allowance for depreciation of $500 (5 percent of $10,000) will be allocated between the partners by allowing A a deduction of $150 (5 percent of $3,000, his basis for his undivided interest in the factory), and by allowing B a deduction of $350 (5 percent of $7,000, his basis for his undivided interest in the factory). At the end of the first year of partnership operation, A's adjusted basis for his undivided interest in the factory is $2,850 ($3,000 less $150), and B's adjusted basis is $6,650 ($7,000 less $350).

**Example (2).** If, in example (1) of this subdivision, the partnership at the end of the first year's operation sells the factory and land for $12,000, each partner's share of the gain or loss would be determined as follows: Since the undivided interests in the factory and the land are to be treated as though held by the partners outside the partnership, A's share of the proceeds of the sale is $6,000. His adjusted basis in the contributed property is $3,850 ($1,000 for the land and $2,850 for the factory). Therefore, his gain from the sale is $2,150. Since B's share of the proceeds is also $6,000, and his adjusted basis in the contributed property is $9,650 ($3,000 for the land and $6,650 for the factory), his loss is $3,650.

**Example (3).** Assume the same facts as in examples (1) and (2) of this subdivision, except that A and B do not enter into a partnership agreement. Assume further that they are found to be a partnership for income tax purposes because of their joint business activity, but that the factory and the land are not actually contributed by them to the partnership. Although A and B have permitted the partnership to use such properties, they continue to own the factory and the land in their individual capacities (as tenants in common), and the same tax consequences result as in examples (1) and (2) of this subdivision.

**(ii)** The allocation illustrated in subdivision (i) of this subparagraph will not be affected by the contribution, either at the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

time of the original contribution or subsequent thereto, of additional property not held as undivided interests if the partners' respective interests in the capital and in the profits of the partnership (except for depreciation, depletion, or gain or loss with respect to the contributed undivided interests) remain the same as their undivided interests in the property previously contributed to the partnership. If the partners' interests in the capital and profits of the partnership are changed from their undivided interests in the property previously contributed to the partnership, the method of allocation of depreciation, depletion, or gain or loss with respect to such property no longer applies. Such a change of the partner's interests in capital and profits may result from a modification of the agreement, or from a change in a partner's respective interest in capital either as a result of a further contribution or as a result of a distribution. (However, drawings made throughout the year against profits, and loans will be disregarded.) Where such a change takes place, the partners may agree under section 704(c)(2) that depreciation, depletion, or gain or loss with respect to the property formerly held as undivided interests shall continue to be allocated in the same manner as prior to the change. These provisions may be illustrated by the following examples:

**Example (1).** C and D are tenants in common, each owning an undivided one-half interest in certain unimproved land. Each contributes his respective undivided interest in the land to a partnership in which each has an equal interest in capital and profits. C's basis for his one-half interest is $4,000; D's basis is $10,000. The fair market value of the land is $20,000. Subsequently, C contributes $5,000 cash to his share of partnership capital. As a result of C's additional contribution, he now has a 60-percent interest in partnership capital and D, a 40-percent interest, although profits and losses still are to be shared equally. Since the interests of the partners in the capital and profits of the partnership no longer correspond to their undivided interests in the land, the method of allocation prescribed by section 704(c)(3) no longer applies. Therefore, if the land is sold for $12,000, the partnership will have a loss of $2,000 ($14,000 partnership basis minus $12,000). Since the partnership agreement contains no special allocation for gain or loss with respect to contributed property, the $2,000 loss is allocated as if such property had been purchased by the partnership, i.e., $1,000 to each partner.

**Example (2).** Assume in example (1) of this subdivision that the partners agree that, because of C's additional contribution of $5,000 cash, he is to have a 60-percent interest in partnership capital. Profits and losses still are to be shared equally, except that gain or loss with respect to the land is, under section 704(c)(2), to continue to be allocated in the same manner as it had been allocated under section 704(c)(3) prior to the additional contribution. The land is sold for $12,000. C's share of the proceeds is $6,000. His basis for the land is $4,000. Therefore, he has a $2,000 gain. D's loss is $4,000 ($10,000 basis less $6,000 proceeds).

**(d) Limitation on allowance of losses. (1)** A partner's distributive share of partnership loss will be allowed only to the extent of the adjusted basis (before reduction by current year's losses) of such partner's interest in the partnership at the end of the partnership taxable year in which such loss occurred. A partner's share of loss in excess of his adjusted basis at the end of the partnership taxable year will not be allowed for that year. However, any loss so disallowed shall be allowed as a deduction at the end of the first succeeding partnership taxable year, and subsequent partnership taxable years, to the extent that the partner's adjusted basis for his partnership interest at the end of any such year exceeds zero (before reduction by such loss for such year).

**(2)** In computing the adjusted basis of a partner's interest for the purpose of ascertaining the extent to which a partner's distributive share of partnership loss shall be allowed as a deduction for the taxable year, the basis shall first be increased under section 705(a)(1) and decreased under section 705(a)(2), except for losses of the taxable year and losses previously disallowed. If the partner's distributive share of the aggregate of items of loss specified in section 702(a)(1), (2), (3), (8), and (9) exceeds the basis of the partner's interest computed under the preceding sentence, the limitation on losses under section 704(d) must be allocated to his distributive share of each such loss. This allocation shall be determined by taking

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

the proportion that each loss bears to the total of all such losses. For purposes of the preceding sentence, the total losses for the taxable year shall be the sum of his distributive share of losses for the current year and his losses disallowed and carried forward from prior years.

**(3)** For the treatment of certain liabilities of the partner or partnership, see section 752 and s 1.752-1.

**(4)** The provisions of this paragraph may be illustrated by the following examples:

**Example (1).** At the end of the partnership taxable year 1955, partnership AB has a loss of $20,000. Partner A's distributive share of this loss is $10,000. At the end of such year, A's adjusted basis for his interest in the partnership (not taking into account his distributive share of the loss) is $6,000. Under section 704(d), A's distributive share of partnership loss is allowed to him (in his taxable year within or with which the partnership taxable year ends) only to the extent of his adjusted basis of $6,000. The $6,000 loss allowed for 1955 decreases the adjusted basis of A's interest to zero. Assume that, at the end of partnership taxable year 1956, A's share of partnership income has increased the adjusted basis of A's interest in the partnership to $3,000 (not taking into account the $4,000 loss disallowed in 1955). Of the $4,000 loss disallowed for the partnership taxable year 1955, $3,000 is allowed A for the partnership taxable year 1956, thus again decreasing the adjusted basis of his interest to zero. If, at the end of partnership taxable year 1957, A has an adjusted basis of his interest of at least $1,000 (not taking into account the disallowed loss of $1,000), he will be allowed the $1,000 loss previously disallowed.

**Example (2).** At the end of partnership taxable year 1955, partnership CD has a loss of $20,000. Partner C's distributive share of this loss is $10,000. The adjusted basis of his interest in the partnership (not taking into account his distributive share of such loss) is $6,000. Therefore, $4,000 of the loss is disallowed. At the end of partnership taxable year 1956, the partnership has no taxable income or loss, but owes $8,000 to a bank for money borrowed. Since C's share of this liability is $4,000, the basis of his partnership interest is increased from zero to $4,000. (See sections 752 and 722, and ss 1.752-1 and 1.722-1.) C is allowed the $4,000 loss, disallowed for the preceding year under section 704(d), for his taxable year within or with which partnership taxable year 1956 ends.

**Example (3).** At the end of partnership taxable year 1955, partner C has the following distributive share of partnership items described in section 702(a): Long-term capital loss, $4,000; short-term capital loss, $2,000; income as described in section 702(a)(9), $4,000. Partner C's adjusted basis for his partnership interest at the end of 1955, before adjustment for any of the above items, is $1,000. As adjusted under section 705(a)(1)(A), C's basis is increased from $1,000 to $5,000 at the end of the year. C's total distributive share of partnership loss is $6,000. Since without regard to losses, C has a basis of only $5,000, C is allowed only $5,000/$6,000 of each loss, that is, $3,333 of his long-term capital loss, and $1,667 of his short-term capital loss. C must carry forward to succeeding taxable years $667 as a long-term capital loss and $333 as a short-term capital loss.

**(e) Family partnerships--(1) In general--(i) Introduction.** The production of income by a partnership is attributable to the capital or services, or both, contributed by the partners. The provisions of subchapter K, chapter 1 of the Code, are to be read in the light of their relationship to section 61, which requires, inter alia, that income be taxed to the person who earns it through his own labor and skill and the utilization of his own capital.

**(ii) Recognition of donee as partner.** With respect to partnerships in which capital is a material income-producing factor, section 704(e)(1) provides that a person shall be recognized as a partner for income tax purposes if he owns a capital interest in such a partnership whether or not such interest is derived by purchase or gift from any other person. If a capital interest in a partnership in which capital is a material income-producing factor is created by gift, section 704(e)(2) provides that the distributive share of the donee under the partnership agreement shall be includible in his gross income,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

except to the extent that such distributive share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the portion of such distributive share attributable to donated capital is proportionately greater than the share of the donor attributable to the donor's capital. For rules of allocation in such cases, see subparagraph (3) of this paragraph.

**(iii) Requirement of complete transfer to donee.** A donee or purchaser of a capital interest in a partnership is not recognized as a partner under the principles of section 704(e)(1) unless such interest is acquired in a bona fide transaction, not a mere sham for tax avoidance or evasion purposes, and the donee or purchaser is the real owner of such interest. To be recognized, a transfer must vest dominion and control of the partnership interest in the transferee. The existence of such dominion and control in the donee is to be determined from all the facts and circumstances. A transfer is not recognized if the transferor retains such incidents of ownership that the transferee has not acquired full and complete ownership of the partnership interest. Transactions between members of a family will be closely scrutinized, and the circumstances, not only at the time of the purported transfer but also during the periods preceding and following it, will be taken into consideration in determining the bona fides or lack of bona fides of the purported gift or sale. A partnership may be recognized for income tax purposes as to some partners but not as to others.

**(iv) Capital as a material income-producing factor.** For purposes of section 704(e)(1), the determination as to whether capital is a material income-producing factor must be made by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business conducted by the partnership. In general, capital is not a material income-producing factor where the income of the business consists principally of fees, commissions, or other compensation for personal services performed by members or employees of the partnership. On the other hand, capital is ordinarily a material income-producing factor if the operation of the business requires substantial inventories or a substantial investment in plant, machinery, or other equipment.

**(v) Capital interest in a partnership.** For purposes of section 704(e), a capital interest in a partnership means an interest in the assets of the partnership, which is distributable to the owner of the capital interest upon his withdrawal from the partnership or upon liquidation of the partnership. The mere right to participate in the earnings and profits of a partnership is not a capital interest in the partnership.

**(2) Basic tests as to ownership--(i) In general.** Whether an alleged partner who is a donee of a capital interest in a partnership is the real owner of such capital interest, and whether the donee has dominion and control over such interest, must be ascertained from all the facts and circumstances of the particular case. Isolated facts are not determinative; the reality of the donee's ownership is to be determined in the light of the transaction as a whole. The execution of legally sufficient and irrevocable deeds or other instruments of gift under State law is a factor to be taken into account but is not determinative of ownership by the donee for the purposes of section 704(e). The reality of the transfer and of the donee's ownership of the property attributed to him are to be ascertained from the conduct of the parties with respect to the alleged gift and not by any mechanical or formal test. Some of the more important factors to be considered in determining whether the donee has acquired ownership of the capital interest in a partnership are indicated in subdivisions (ii) to (x), inclusive, of this subparagraph.

**(ii) Retained controls.** The donor may have retained such controls of the interest which he has purported to transfer to the donee that the donor should be treated as remaining the substantial owner of the interest. Controls of particular significance include, for example, the following:

(a) Retention of control of the distribution of amounts of income or restrictions on the distributions of amounts of income

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(other than amounts retained in the partnership annually with the consent of the partners, including the donee partner, for the reasonable needs of the business). If there is a partnership agreement providing for a managing partner or partners, then amounts of income may be retained in the partnership without the acquiescence of all the partners if such amounts are retained for the reasonable needs of the business.

(b) Limitation of the right of the donee to liquidate or sell his interest in the partnership at his discretion without financial detriment.

(c) Retention of control of assets essential to the business (for example, through retention of assets leased to the alleged partnership).

(d) Retention of management powers inconsistent with normal relationships among partners. Retention by the donor of control of business management or of voting control, such as is common in ordinary business relationships, is not by itself to be considered as inconsistent with normal relationships among partners, provided the donee is free to liquidate his interest at his discretion without financial detriment. The donee shall not be considered free to liquidate his interest unless, considering all the facts, it is evident that the donee is independent of the donor and has such maturity and understanding of his rights as to be capable of deciding to exercise, and capable of exercising, his right to withdraw his capital interest from the partnership.

The existence of some of the indicated controls, though amounting to less than substantial ownership retained by the donor, may be considered along with other facts and circumstances as tending to show the lack of reality of the partnership interest of the donee.

**(iii) Indirect controls.** Controls inconsistent with ownership by the donee may be exercised indirectly as well as directly, for example, through a separate business organization, estate, trust, individual, or other partnership. Where such indirect controls exist, the reality of the donee's interest will be determined as if such controls were exercisable directly.

**(iv) Participation in management.** Substantial participation by the donee in the control and management of the business (including participation in the major policy decisions affecting the business) is strong evidence of a donee partner's exercise of dominion and control over his interest. Such participation presupposes sufficient maturity and experience on the part of the donee to deal with the business problems of the partnership.

**(v) Income distributions.** The actual distribution to a donee partner of the entire amount or a major portion of his distributive share of the business income for the sole benefit and use of the donee is substantial evidence of the reality of the donee's interest, provided the donor has not retained controls inconsistent with real ownership by the donee. Amounts distributed are not considered to be used for the donee's sole benefit if, for example, they are deposited, loaned, or invested in such manner that the donor controls or can control the use or enjoyment of such funds.

**(vi) Conduct of partnership business.** In determining the reality of the donee's ownership of a capital interest in a partnership, consideration shall be given to whether the donee is actually treated as a partner in the operation of the business. Whether or not the donee has been held out publicly as a partner in the conduct of the business, in relations with customers, or with creditors or other sources of financing, is of primary significance. Other factors of significance in this connection include:

(a) Compliance with local partnership, fictitious names, and business registration statutes.

(b) Control of business bank accounts.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(c) Recognition of the donee's rights in distributions of partnership property and profits.

(d) Recognition of the donee's interest in insurance policies, leases, and other business contracts and in litigation affecting business.

(e) The existence of written agreements, records, or memoranda, contemporaneous with the taxable year or years concerned, establishing the nature of the partnership agreement and the rights and liabilities of the respective partners.

(f) Filing of partnership tax returns as required by law.

However, despite formal compliance with the above factors, other circumstances may indicate that the donor has retained substantial ownership of the interest purportedly transferred to the donee.

**(vii) Trustees as partners.** A trustee may be recognized as a partner for income tax purposes under the principles relating to family partnerships generally as applied to the particular facts of the trust-partnership arrangement. A trustee who is unrelated to and independent of the grantor, and who participates as a partner and receives distribution of the income distributable to the trust, will ordinarily be recognized as the legal owner of the partnership interest which he holds in trust unless the grantor has retained controls inconsistent with such ownership. However, if the grantor is the trustee, or if the trustee is amenable to the will of the grantor, the provisions of the trust instrument (particularly as to whether the trustee is subject to the responsibilities of a fiduciary), the provisions of the partnership agreement, and the conduct of the parties must all be taken into account in determining whether the trustee in a fiduciary capacity has become the real owner of the partnership interest. Where the grantor (or person amenable to his will) is the trustee, the trust may be recognized as a partner only if the grantor (or such other person) in his participation in the affairs of the partnership actively represents and protects the interests of the beneficiaries in accordance with the obligations of a fiduciary and does not subordinate such interests to the interests of the grantor. Furthermore, if the grantor (or person amenable to his will) is the trustee, the following factors will be given particular consideration:

(a) Whether the trust is recognized as a partner in business dealings with customers and creditors, and

(b) Whether, if any amount of the partnership income is not properly retained for the reasonable needs of the business, the trust's share of such amount is distributed to the trust annually and paid to the beneficiaries or reinvested with regard solely to the interests of the beneficiaries.

**(viii) Interests (not held in trust) of minor children.** Except where a minor child is shown to be competent to manage his own property and participate in the partnership activities in accordance with his interest in the property, a minor child generally will not be recognized as a member of a partnership unless control of the property is exercised by another person as fiduciary for the sole benefit of the child, and unless there is such judicial supervision of the conduct of the fiduciary as is required by law. The use of the child's property or income for support for which a parent is legally responsible will be considered a use for the parent's benefit. "Judicial supervision of the conduct of the fiduciary" includes filing of such accountings and reports as are required by law of the fiduciary who participates in the affairs of the partnership on behalf of the minor. A minor child will be considered as competent to manage his own property if he actually has sufficient maturity and experience to be treated by disinterested persons as competent to enter business dealings and otherwise to conduct his affairs on a basis of equality with adult persons, notwithstanding legal disabilities of the minor under State law.

**(ix) Donees as limited partners.** The recognition of a donee's interest in a limited partnership will depend, as in the case of other donated interests, on whether the transfer of property is real and on whether the donee has acquired dominion

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

and control over the interest purportedly transferred to him. To be recognized for Federal income tax purposes, a limited partnership must be organized and conducted in accordance with the requirements of the applicable State limited-partnership law. The absence of services and participation in management by a donee in a limited partnership is immaterial if the limited partnership meets all the other requirements prescribed in this paragraph. If the limited partner's right to transfer or liquidate his interest is subject to substantial restrictions (for example, where the interest of the limited partner is not assignable in a real sense or where such interest may be required to be left in the business for a long term of years), or if the general partner retains any other control which substantially limits any of the rights which would ordinarily be exercisable by unrelated limited partners in normal business relationships, such restrictions on the right to transfer or liquidate, or retention of other control, will be considered strong evidence as to the lack of reality of ownership by the donee.

**(x) Motive.** If the reality of the transfer of interest is satisfactorily established, the motives for the transaction are generally immaterial. However, the presence or absence of a tax-avoidance motive is one of many factors to be considered in determining the reality of the ownership of a capital interest acquired by gift.

**(3) Allocation of family partnership income--(i) In general.** (a) Where a capital interest in a partnership in which capital is a material income-producing factor is created by gift, the donee's distributive share shall be includible in his gross income, except to the extent that such share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the portion of such distributive share attributable to donated capital is proportionately greater than the distributive share attributable to the donor's capital. For the purpose of section 704, a capital interest in a partnership purchased by one member of a family from another shall be considered to be created by gift from the seller, and the fair market value of the purchased interest shall be considered to be donated capital. The "family" of any individual, for the purpose of the preceding sentence, shall include only his spouse, ancestors, and lineal descendants, and any trust for the primary benefit of such persons.

(b) To the extent that the partnership agreement does not allocate the partnership income in accordance with (a) of this subdivision, the distributive shares of the partnership income of the donor and donee shall be reallocated by making a reasonable allowance for the services of the donor and by attributing the balance of such income (other than a reasonable allowance for the services, if any, rendered by the donee) to the partnership capital of the donor and donee. The portion of income, if any, thus attributable to partnership capital for the taxable year shall be allocated between the donor and donee in accordance with their respective interests in partnership capital.

(c) In determining a reasonable allowance for services rendered by the partners, consideration shall be given to all the facts and circumstances of the business, including the fact that some of the partners may have greater managerial responsibility than others. There shall also be considered the amount that would ordinarily be paid in order to obtain comparable services from a person not having an interest in the partnership.

(d) The distributive share of partnership income, as determined under (b) of this subdivision, of a partner who rendered services to the partnership before entering the Armed Forces of the United States shall not be diminished because of absence due to military service. Such distributive share shall be adjusted to reflect increases or decreases in the capital interest of the absent partner. However, the partners may by agreement allocate a smaller share to the absent partner due to his absence.

**(ii) Special rules.** (a) The provisions of subdivision (i) of this subparagraph, relating to allocation of family partnership income, are applicable where the interest in the partnership is created by gift, indirectly or directly. Where the partnership interest is created indirectly, the term "donor" may include persons other than the nominal transferor. This rule may

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD     Document 107-13     05/27/11     Page 61 of 62

**26** C.F.R. s **1.704-1**

be illustrated by the following examples:

**Example (1).** A father gives property to his son who shortly thereafter conveys the property to a partnership consisting of the father and the son. The partnership interest of the son may be considered created by gift and the father may be considered the donor of the son's partnership interest.

**Example (2).** A father, the owner of a business conducted as a sole proprietorship, transfers the business to a partnership consisting of his wife and himself. The wife subsequently conveys her interest to their son. In such case, the father, as well as the mother, may be considered the donor of the son's partnership interest.

**Example (3).** A father makes a gift to his son of stock in the family corporation. The corporation is subsequently liquidated. The son later contributes the property received in the liquidation of the corporation to a partnership consisting of his father and himself. In such case, for purposes of section 704, the son's partnership interest may be considered created by gift and the father may be considered the donor of his son's partnership interest.

(b) The allocation rules set forth in section 704(e) and subdivision (i) of this subparagraph apply in any case in which the transfer or creation of the partnership interest has any of the substantial characteristics of a gift. Thus, allocation may be required where transfer of a partnership interest is made between members of a family (including collaterals) under a purported purchase agreement, if the characteristics of a gift are ascertained from the terms of the purchase agreement, the terms of any loan or credit arrangements made to finance the purchase, or from other relevant data.

(c) In the case of a limited partnership, for the purpose of the allocation provisions of subdivision (i) of this subparagraph, consideration shall be given to the fact that a general partner, unlike a limited partner, risks his credit in the partnership business.

**(4) Purchased interest--(i) In general.** If a purported purchase of a capital interest in a partnership does not meet the requirements of subdivision (ii) of this subparagraph, the ownership by the transferee of such capital interest will be recognized only if it qualifies under the requirements applicable to a transfer of a partnership interest by gifts. In a case not qualifying under subdivision (ii) of this subparagraph, if payment of any part of the purchase price is made out of partnership earnings, the transaction may be regarded in the same light as a purported gift subject to deferred enjoyment of income. Such a transaction may be lacking in reality either as a gift or as a bona fide purchase.

**(ii) Tests as to reality of purchased interests.** A purchase of a capital interest in a partnership, either directly or by means of a loan or credit extended by a member of the family, will be recognized as bona fide if:

(a) It can be shown that the purchase has the usual characteristics of an arm's-length transaction, considering all relevant factors, including the terms of the purchase agreement (as to price, due date of payment, rate of interest, and security, if any) and the terms of any loan or credit arrangement collateral to the purchase agreement; the credit standing of the purchaser (apart from relationship to the seller) and the capacity of the purchaser to incur a legally binding obligation; or

(b) It can be shown, in the absence of characteristics of an arm's-length transaction, that the purchase was genuinely intended to promote the success of the business by securing participation of the purchaser in the business or by adding his credit to that of the other participants.

However, if the alleged purchase price or loan has not been paid or the obligation otherwise discharged, the factors indicated in (a) and (b) of this subdivision shall be taken into account only as an aid in determining whether a bona fide purchase or loan obligation existed.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:05-cv-00944-BAJ-EWD     Document 107-13     05/27/11     Page 62 of 62

**26** C.F.R. s **1.704-1**

[T.D. 6500, 25 FR 11814, Nov. 26, 1960, as amended by T.D. 6771, 29 FR 15571, Nov. 20, 1964; T.D. 8365, 50 FR 53423, Dec. 31, 1985; T.D. 8065, 51 FR 10826, March 31, 1986; T.D. 8099, 51 FR 32062, 32068, Sept. 9, 1986; 52 FR 10223, March 31, 1987; T.D. 8237, 53 FR 53173, Dec. 30, 1988; T.D. 8385, 56 FR 66983, Dec. 27, 1991; T.D. 8385, 57 FR 6073, Feb. 20, 1992; T.D. 8385, 57 FR 11430, April 3, 1992]

26 C. F. R. s 1.704-1

**26** CFR s **1.704-1**

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.